**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and | ) | |
| INTELLECTUAL VENTURES II LLC, | ) | Civil Action No. 1:14-cv-00220-MRH |
| | ) | |
| Plaintiffs, | ) | U.S. District Judge Mark R. Hornak |
| | ) | |
| v. | ) | **ELECTRONICALLY FILED** |
| | ) | |
| ERIE FAMILY LIFE INSURANCE COMPANY; | ) | |
| ERIE INDEMNITY COMPANY; | ) | |
| ERIE INSURANCE COMPANY; | ) | |
| ERIE INSURANCE EXCHANGE; | ) | |
| ERIE INSURANCE PROPERTY & CASUALTY | ) | |
| COMPANY; and | ) | |
| FLAGSHIP CITY INSURANCE COMPANY, | ) | |
| | | |
| Defendants. | | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .............................................................................................................. 1

FACTS ............................................................................................................................. 2

ARGUMENT .................................................................................................................... 4

I.     THE '581 AND '434 PATENTS ARE INVALID BECAUSE THEY CLAIM PATENT-INELIGIBLE SUBJECT MATTER. ........................................................................................................ 4

     A.     Abstract Ideas Are Not Eligible for Patent Protection, Even When They Are Limited to Computer Software Implementations. ...................................................... 4

           1.     The scope of patent-eligible subject matter under 35 U.S.C. § 101 is limited by the Supreme Court's recent *Alice Corp.* decision ...................... 4

           2.     *Alice Corp.* requires a two-step analysis. ............................................... 6

           3.     Subject matter eligibility is properly resolved on the pleadings. ................ 7

     B.     The Patents-in-Suit Are Invalid Under *Alice Corp.*'s Heightened Standard for Assessing Patentable Subject Matter Under § 101. ....................................... 7

           1.     The '581 patent is invalid under *Alice Corp.* ......................................... 7

               i.     Background of the '581 patent ........................................................ 7

               ii.     *Alice Corp.* step 1: the '581 patent claims are directed to the abstract idea of collecting information about a device or its user. ...................................................................................... 9

               iii.     *Alice Corp.* step 2: the remaining limitations of the '581 patent claims add nothing inventive to the abstract idea of collecting information. ...................................................................... 9

           2.     The '434 patent is invalid under *Alice Corp.* ....................................... 13

               i.     Background of the '434 patent ...................................................... 13

               ii.     *Alice Corp.* step 1: the '434 patent claims are directed to the abstract idea of creating an index and using it to search a database. ................................................................................. 13

               iii.     *Alice Corp.* step 2: the remaining limitations of the '434 patent claims add nothing inventive to the abstract idea of creating and using a database index. ................................................................ 14

II.     IV'S INFRINGEMENT CLAIMS SHOULD BE DISMISSED FOR THEIR FAILURE TO SET FORTH SUFFICIENT FACTS TO STATE A CLAIM. .............................................................. 18

     A.     IV's Direct Infringement Claims Should Be Dismissed Under the *Twombly/Iqbal* Standard. .............................................................................................. 19

     B.     IV's Claims of Induced and Contributory Infringement Should Also Be Dismissed. ................................................................................................ 21

III.    IN THE ALTERNATIVE, THE COURT SHOULD COMPEL IV TO PROVIDE A MORE DEFINITE
        STATEMENT. ................................................................................................................23

CONCLUSION...................................................................................................................24

APPENDIX A ....................................................................................................................A1

APPENDIX B ....................................................................................................................A2

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page(s)

CASES

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)................................................................6, 9–10, 14

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
  800 F. Supp. 2d 613 (D. Del. 2011).......................................................................11

*Alice Corp. v. CLS Bank International*,
  134 S. Ct. 2347 (2014)................................................................................... *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  No. 1:10-cv-00910 (E.D. Va. Oct. 24, 2014).................................................A1, A2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................18,  22, 23

*Bay Industries, Inc. v. Tru-Arx Manufacturing, LLC*,
  2006 WL 3469599 (E.D. Wis. Nov. 29, 2006)......................................................24

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................18, 22, 23

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010)................................................................................. *passim*

*Black v. JP Morgan Chase & Co.*,
  2011 WL 4102802 (W.D. Pa. Aug. 10, 2011) .......................................................18

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014).......................................................5, 7, 11, 12

*buySAFE, Inc. v. Google Inc.*,
  No. 1:11-cv-01282 (D. Del. July 29, 2013) ...........................................................A2

*Cardpool, Inc. v. Plastic Jungle, Inc.*,
  No. 3:12-cv-04182 (N.D. Cal. Jan. 22, 2013) .......................................................A2

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
  No. 6:12-cv-00674 (E.D. Tex. Jan. 21, 2014).......................................................A2

*CLS Bank International v. Alice Corp.*,
  717 F.3d 1269 (Fed. Cir. 2013)..............................................................................12

*CMG Financial Services Inc. v. Pacific Trust Bank FSB*,
No. 2:11-cv-10344 (C.D. Cal. Aug. 29, 2014) ..........................................A1

*Cogent Medicine Inc. v. Elsevier Inc.*,
No. 5:13-cv-04479 (N.D. Cal. Sept. 27, 2014) ...................................A1, A2

*Comcast IP Holdings I, LLC v. Sprint Communications Co.*,
-- F. Supp. 2d. --, 2014 WL 3542055 (D. Del. July 16, 2014) ..................10, A1

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
2013 WL 3964909 (D.N.J. July 31, 2013)........................................6, A2

*CyberFone Systems, LLC v. Cellco Partnership*,
885 F. Supp. 2d 710 (D. Del. 2012)...............................................6

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*,
558 F. App'x 988 (Fed. Cir. 2014) .............................................11, 14

*DealerTrack, Inc. v. Huber*,
657 F. Supp. 2d 1152 (C.D. Cal. July 7, 2009)....................................15

*DietGoal Innovations LLC v. Bravo Media LLC*,
-- F. Supp. 2d --, 2014 WL 3582914 (S.D.N.Y. July 8, 2014) ..................14, A1

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)................................................5, 16

*DSU Medical Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006)...............................................21–22

*Eclipse IP LLC v. McKinley Equipment Corp.*,
No. 8:14-cv-00742 (C.D. Cal. Sept. 4, 2014) ...................................A1, A2

*Eidos Communications, LLC v. SkypeTechnologies SA*,
686 F. Supp. 2d 465 (D. Del. 2010)..............................................19

*Enfish, LLC v. Microsoft Corp.*,
No. 2:12-cv-07360 (C.D. Cal. Nov. 3, 2014) ..........................14, 15, 16, A1

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*,
No. 8:11-cv-02826 (M.D. Fla. Sept. 11, 2014)....................................A1

*Fifth Market, Inc. v. CME Group, Inc.*,
2009 WL 5966836 (D. Del. May 14, 2009)......................................19–20

*Gametek LLC v. Zynga, Inc.*,
No. 3:13-cv-02546 (N.D. Cal. Apr. 25, 2014) ....................................A2

iv

*Genetic Technologies Ltd. v. Bristol-Myers Squibb Co.*,
    No. 1:12-cv-00394 (D. Del. Oct. 30, 2014) ...................................................................A1, A2

*Genetic Technologies Ltd. v. Laboratory Corp. of America Holdings*,
    No. 1:12-cv-01736 (D. Del. Sept. 3, 2014) ...................................................................A1, A2

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ...................................................................21

*Glory Licensing LLC v. Toys R Us, Inc.*,
    2011 WL 1870591 (D.N.J. May 16, 2011) ...................................................................7, A2

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ...................................................................5, 6, 9

*Hand Held Products, Inc. v. Amazon.com, Inc.*,
    2013 WL 507149 (D. Del. Feb. 6, 2013) ...................................................................23

*In re Bill of Lading Transmission & Processing System Patent Litigation*,
    681 F.3d 1323 (Fed. Cir. 2012) ...................................................................22

*Intellectual Ventures I LLC v. Old Republic General Insurance Group, Inc.*,
    No. 2:14-cv-01130 (W.D. Pa. Aug. 22, 2014) ...................................................................2

*International Business Machines Corp. v. Intellectual Ventures I LLC*,
    IPR2014-01516 (P.T.A.B. Sept. 17, 2014) ...................................................................1

*International Business Machines Corp. v. Intellectual Ventures II LLC*,
    IPR2015-00092 (P.T.A.B. Oct. 17, 2014) ...................................................................1

*International Business Machines Corp. v. Intellectual Ventures II LLC*,
    IPR2015-00089 (P.T.A.B. Oct. 17, 2014) ...................................................................1

*Internet Patents Corp. v. General Automobile Insurance Services, Inc.*,
    No. 3:12-cv-05036 (N.D. Cal. Sept. 24, 2013) ...................................................................A2

*Irori Technologies, Inc. v. Luminex Corp.*,
    2014 WL 769435 (S.D. Cal. Feb. 25, 2014) ...................................................................22

*KBA-Giori, North America, Inc. v. Muhlbauer, Inc.*,
    No. 2:08-cv-00034 (E.D. Va. July 24, 2008) ...................................................................24

*Loyalty Conversion Systems Corp. v. American Airlines, Inc.*,
    No. 2:13-cv-00655 (E.D. Tex. Sept. 3, 2014) ...................................................................A1, A2

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
    No. 1:13-cv-03599 (S.D.N.Y. Nov. 22, 2013) ...................................................................A2

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
    132 S. Ct. 1289 (2012) ................................................................................ *passim*

*McRo, Inc. v. Namco Bandai Games America, Inc.*,
    No. 2:12-cv-10322 (C.D. Cal. Sept. 22, 2014) ...............................A1, A2

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007)................................................................19

*MTV Networks v. Curry*,
    867 F. Supp. 202 (S.D.N.Y. 1994)..........................................................24

*MySpace, Inc. v. GraphOn Corp.*,
    672 F.3d 1250 (Fed. Cir. 2012)................................................................15

*OIP Technologies, Inc. v. Amazon.com, Inc.*,
    No. 3:12-cv-01233 (N.D. Cal. Sept. 11, 2012) .......................................A2

*Open Text S.A. v. Alfresco Software LTD*,
    No. 3:13-cv-04843 (N.D. Cal. Sept. 19, 2014) ..............................A1, A2

*Parker v. Flook*,
    437 U. S. 584 (1978)..........................................................................9, 17

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) .........................................................5

*Prism Technologies, LLC v. AT&T Mobility, LLC*,
    2012 WL 3867971 (D. Neb. Sept. 6, 2012) ............................................20

*Rubber-Tip Pencil Co. v. Howard*,
    87 U.S. (20 Wall.) 498 (1874) ...................................................................6

*Schaedler v. Reading Eagle Publication, Inc.*,
    370 F.2d 795 (3d Cir. 1967)....................................................................23

*Sinclair-Allison, Inc. v. Fifth Ave. Physician Services, LLC*,
    No. 5:12-cv-00360 (W.D. Okla. Dec. 19, 2012)......................................A2

*St. Clair Intellectual Property Consultants, Inc. v. Apple Inc.*,
    2011 WL 4571812 (D. Del. Sept. 30, 2011) ...........................................20

*Stephenson v. Game Show Network, LLC*,
    933 F. Supp. 2d 674 (D. Del. 2013)........................................................23

*Tuxis Technologies LLC v. Amazon.com Inc.*,
    No. 1:13-cv-01771 (D. Del. Sept. 3, 2014)...................................A1, A2

*UbiComm, LLC v. Zappos IP, Inc.*,
    No. 1:13-cv-01029 (D. Del. Nov. 13, 2013) .........................................A2

*Uniloc USA, Inc. v. Rackspace Hosting, Inc.*,
    No. 6:12-cv-00375 (E.D. Tex. Mar. 27, 2013) ....................................A2

*Vacation Exchange, LLC v. Wyndham Exchange*,
    No. 2:12-cv-04229 (D.D.C. Sept. 19, 2012) .......................................A2

*Via Vadis, LLC v. Skype, Inc.*,
    2012 WL 261367 (D. Del. Jan. 27, 2012) ......................................19, 20

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009) ..............................................................21

*Walker Digital LLC v. Google Inc.*,
    No. 1:11-cv-00318 (D. Del. Sept. 3, 2014) .........................................A1

*Wolf v. Capstone Photography, Inc.*,
    No. 2:13-cv-09573 (C.D. Cal. Oct. 28, 2014) ..........................14, A1, A2

**FEDERAL STATUTES**

35 U.S.C. § 100 ............................................................................................4

35 U.S.C. § 101 ...................................................................................*passim*

35 U.S.C. § 102 .......................................................................................1, 4

35 U.S.C. § 103 .......................................................................................1, 4

35 U.S.C. § 112 .......................................................................................1, 4

35 U.S.C. § 271 ................................................................................4, 21, 23

**RULES**

Fed. R. Civ. P. 12 ...............................................................................*passim*

Fed. R. Civ. P. 26 ......................................................................................24

Fed. R. Civ. P. 84 ......................................................................................20

Fed. R. Civ. P. Form 18 ............................................................................20

# INTRODUCTION[1]

Some types of subject matter are categorically ineligible for patent protection under 35 U.S.C. § 101, and any patent claiming such subject matter is invalid as a matter of law.  In its recent *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014), decision, the Supreme Court confirmed that abstract concepts are not eligible for patent protection.  The Court further held that the implementation of an abstract concept using conventional computing technology is also ineligible.  In the ensuing months since the Supreme Court's *Alice Corp.* decision, the Federal Circuit and district courts have dismissed many infringement lawsuits on this basis.

This authority mandates that Plaintiffs Intellectual Ventures I LLC's and Intellectual Ventures II LLC's (collectively, "IV's") infringement claims against Highmark Inc. et al. ("Highmark") and Erie Indemnity Company et al. ("Erie") (collectively, "Defendants") be dismissed with respect to at least two of the four asserted patents.  U.S. Patent Nos. 6,519,581 ("'581 patent") and 6,510,434 ("'434 patent") claim nothing more than abstract concepts combined with conventional computing technology.[2]  The '581 patent claims the abstract concept of collecting information from a user or a device.  The '434 patent claims the abstract

---

[1]     Identical motions have been filed on the same date under separate captions in *Intellectual Ventures I LLC v. Highmark Inc.*, No. 2:14-cv-01131 (W.D. Pa.) ("Highmark Matter") and *Intellectual Ventures I LLC v. Erie Indemnity Co.*, No. 1:14-cv-00220 (W.D. Pa.) ("Erie Matter").

[2]     Defendants believe that all four of IV's patents are invalid.  In this motion, however, Defendants ask the Court to adjudicate the invalidity issue under 35 U.S.C. § 101 for only two of the patents, because the other two patents—U.S. Patent Nos. 6,546,002 ("'002 patent") (asserted against all three defendants) and 7,757,298 ("'298 patent") (asserted only against Erie)—are already subject to invalidity proceedings before the Patent and Trademark Office.  *See Int'l Bus. Machs. Corp. v. Intellectual Ventures I LLC*, IPR2014-01516 (P.T.A.B. Sept. 17, 2014); *Int'l Bus. Machs. Corp. v. Intellectual Ventures II LLC*, IPR2015-00092 (P.T.A.B. Oct. 17, 2014); *Int'l Bus. Machs. Corp. v. Intellectual Ventures II LLC*, IPR2015-00089 (P.T.A.B. Oct. 17, 2014).  If the present case progresses beyond the pleadings stage, Defendants will contest the validity of each asserted patent under at least 35 U.S.C. §§ 101, 102, 103, and/or 112.

concept of creating an index and using it to search a database, using conventional computing technology (e.g., metadata). These concepts are implemented using general-purpose computers, and both sets of claims are therefore facially invalid.

IV's complaints also suffer from additional fatal defects that extend beyond the '581 and '434 patents, however. IV's claims of **direct** infringement as to **all** of the asserted patents should be dismissed because IV fails to identify any of Defendants' products or services that allegedly infringe the patents-in-suit. IV's claims of **indirect** infringement should likewise be dismissed because IV's complaints set forth **no** factual allegations that that Defendants engaged in any activity to induce or contribute to infringement by others.

## FACTS

IV is the nation's largest non-practicing entity, having amassed a portfolio of approximately 70,000 patents and patent applications. IV uses this extensive patent portfolio solely for the purpose of extracting royalties from companies that, unlike IV, produce products and services. In furtherance of this business model, IV has filed more than sixty patent infringement suits against various companies in disparate industries since December 2010.

IV's latest litigation campaign focuses on the insurance industry, against which it has asserted patents relating to software for searching and using data in computer systems and databases. *See* Erie Matter, Dkt. 1 [Compl.]; Highmark Matter, Dkt. 1 [Compl.]; *see also Intellectual Ventures I LLC v. Old Republic Gen. Ins. Grp., Inc.*, No. 2:14-cv-01130 (W.D. Pa.), Dkt. 1 [Compl.]. In each of its complaints against the three groups of insurance companies currently pending before this Court, IV has employed the same boilerplate language and made the same vague allegations of infringement. The complaints are virtually identical with respect

to the three patents asserted against all three defendants, differing only in trivial respects as

shown in the table below (with differences emphasized in bold italics).

| Claim | Highmark Complaint | Erie Complaint | Old Republic Complaint |
|---|---|---|---|
| '581 Patent Claim | "computer systems that use the patented systems and methods for configuration management," including Highmark's "implementation and use of its back-end configuration management and distribution software and services."  Dkt. 1, ¶ 28. | "computer systems that use the patented systems and methods for configuration management," including Erie's "implementation and use of its back-end configuration management and distribution software and services."  Dkt. 1, ¶ 30. | "computer systems that use the patented systems and methods for configuration management," including Old Republic's "implementation and use of its back-end configuration management and distribution software and services."  Dkt. 1, ¶ 29. |
| '002 Patent Claim | "computer systems that use the patented systems and methods for displaying user specific resources on a mobile interface," including Highmark's "implementation and use of its *HM QuickQuote* application."  Dkt. 1, ¶ 32. | "computer systems that use the patented systems and methods for displaying user-specific resources on a mobile interface," including Erie's "implementation and use of its *ERIEmobile* [sic] application."  Dkt. 1, ¶ 34. | "computer systems that use the patented systems and methods for displaying user-specific resources on a mobile interface," including Old Republic's "implementation and use of its *OR Mobile* application."  Dkt. 1, ¶ 33. |
| '434 Patent Claim | "computer systems that use the patented systems and methods for searching databases with metafiles," including Highmark's "implementation and use of database services and systems that return information based on the content of metafiles." Dkt. 1, ¶ 36. | "computer systems that use the patented systems and methods for searching databases with metafiles," including Erie's "implementation and use of database services and systems that return information based on the content of metafiles." Dkt. 1, ¶ 38. | "computer systems that use the patented systems and methods for searching databases with metafiles," including Old Republic's "implementation and use of database services and systems that return information based on the content of metafiles." Dkt. 1, ¶ 37. |
| '298 Patent Claim | N/A | "computer systems that use the patented systems and methods for identifying and characterizing errant electronic files," including Erie's "implementation and use of software and services that search and identify potentially malicious information." Dkt. 1, ¶ 42. | N/A |

Although IV's complaints appear to primarily assert claims for direct infringement, IV also refers in passing to indirect infringement.  IV alleges that Defendants will continue to infringe each patent and that IV will be irreparably harmed unless the Court enters an injunction enjoining Defendants from, among other things, "contributory infringement and/or inducing infringement" of each patent.  *See, e.g.*, Erie Matter, Dkt. 1, ¶¶ 32, 36, 40, 44; *see also id.* Prayer for Relief.  Yet nowhere in the complaints does IV set forth factual allegations that Erie or Highmark engaged in any activity to induce or contribute to infringement by others, as is required for indirect infringement under 35 U.S.C. §§ 271(b) and 271(c).

## ARGUMENT

I.   THE '581 AND '434 PATENTS ARE INVALID BECAUSE THEY CLAIM PATENT-INELIGIBLE SUBJECT MATTER.

    A.   Abstract Ideas Are Not Eligible for Patent Protection, Even When They Are Limited to Computer Software Implementations.

        1.   The scope of patent-eligible subject matter under 35 U.S.C. § 101 is limited by the Supreme Court's recent *Alice Corp.* decision.

Under Section 101 of the Patent Act, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.[3]  A "process" is defined as a "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material."  *Id.* § 100(b).

While Congress intended these terms to be "expansive," the Supreme Court has recognized that "laws of nature, physical phenomena, and abstract ideas" are not patent eligible. *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010).  Such concepts constitute "'the basic tools of

---

[3]   Claims must also be novel, nonobvious, and described with particularity.  *See* 35 U.S.C. §§ 102, 103, 112.  While related, these standards do not substitute for the inquiry into patent eligibility under § 101.  *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1303–04 (2012).

scientific and technological work,'" monopolization of which "might tend to impede innovation more than it would tend to promote it." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)); *see also Bilski*, 130 S. Ct. at 3225 ("The concepts covered by these exceptions are 'part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none.'" (alteration in original) (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948))).

In its recent *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014), decision, the Supreme Court raised the bar for establishing subject matter eligibility for computer-implemented inventions, unanimously affirming the judgment of the Federal Circuit invalidating claims directed toward computer-based schemes to manage "settlement risk" in financial transactions. *Id.* at 2352. The Court confirmed that, in light of "the ubiquity of computers," limiting a claim covering an abstract concept to a "wholly generic computer implementation" is insufficient to transform the idea into a patent-eligible invention. *Id.* at 2358. The decision therefore serves as a clear mandate for district courts to invalidate patents that merely claim fundamental practices implemented on a computer.

The Federal Circuit and district courts alike have taken this mandate seriously, despite the presumption of validity that attaches to issued patents and the clear and convincing standard for invalidating such patents. To date, in ***every case*** in which the Federal Circuit addressed § 101 on the merits since *Alice Corp.*, the court has invalidated the patent at issue. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005 (Fed. Cir. 2014); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014). And of the twenty-two district court cases decided after *Alice Corp.* in which

§ 101 was addressed on the merits, sixteen invalidated claims of the asserted patents.  *See* App'x A.

### 2.    *Alice Corp.* requires a two-step analysis.

*Alice Corp*. articulates a two-step framework for distinguishing patents that claim ineligible abstract ideas from those that claim eligible applications of those ideas.  In step one, the court must determine whether the claims at issue are directed to a patent-ineligible abstract concept.  While it is well established that inventions employing ideas are patentable, the underlying ideas themselves are not.  *See Benson*, 409 U.S. at 71 ("[O]ne may not patent an idea."); *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. (20 Wall.) 498, 507 (1874) ("An idea of itself is not patentable, but a new device by which it may be made practically useful is.").

If the claim is directed to an abstract idea, the court proceeds to step two.  In step two of the analysis, the court must search for an "inventive concept" in the claim outside of the underlying abstract idea—i.e., "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"[4]  *Alice Corp.*, 134 S. Ct. at 2355 (alteration in original) (quoting *Mayo*, 132 S. Ct. at 1305).  A patentee cannot circumvent the prohibition on patenting abstract ideas by limiting the idea to "a particular technological environment," nor by adding "insignificant postsolution activity," *Bilski*, 561 U.S. at 610–11 (internal quotation marks omitted), or "well-

---

[4]     In performing this analysis, courts need not analyze each and every asserted claim with the same degree of precision.  "Where the claims, as here, are substantially similar and linked to the same abstract idea, the Court is free to dispose of the additional claims in a less detailed fashion." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 2013 WL 3964909, at *5 (D.N.J. July 31, 2013); *see also Bilski*, 130 S. Ct. at 3231 (determining that eleven claims in a patent application were invalid after only analyzing two claims in detail); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344–45 (Fed. Cir. 2013) (invalidating systems claims that were similar to method claims already held to be invalid); *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 710 (D. Del. 2012) (invalidating all twenty-four claims of a patent after analyzing only the first claim), *aff'd sub nom. Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988 (Fed. Cir. 2014).

understood, routine, conventional" features, *Mayo*, 132 S. Ct. at 1299. Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice Corp.*, 134 S. Ct. at 2358.

### 3. Subject matter eligibility is properly resolved on the pleadings.

Subject matter eligibility under § 101 is a question of law, which may be resolved on a motion to dismiss under Rule 12(b)(6). *See Glory Licensing LLC v. Toys R Us, Inc.*, 2011 WL 1870591, at *4 (D.N.J. May 16, 2011) ("Because the [patents-in-suit] are addressed to abstract ideas, they are invalid pursuant to 35 U.S.C. § 101 . . . . Accordingly, this infringement action must be dismissed for failure to state a claim."); *see also buySAFE*, 765 F.3d 1350 (affirming district court's finding of invalidity under § 101 at pleading stage). Such dismissals have become commonplace after *Alice Corp.* In September and October 2014 alone, ten cases were decided in which a district court granted a Rule 12(b)(6) or Rule 12(c) motion on the basis of § 101, representing a grant rate of 91%, in contrast to the 35% grant rate for such motions prior to *Alice Corp.* *See* App'x B. Courts in the Third Circuit have similarly invalidated numerous patents based on § 101 early in a case, granting 78% of all such motions filed since 2011. *See id.*

These decisions appropriately avoid wasteful litigation and excessive discovery costs incurred adjudicating facially invalid patents. In such circumstances, protracted discovery is not needed to resolve the issue of validity, nor is expensive and time-consuming claim construction.

### B. The Patents-in-Suit Are Invalid Under *Alice Corp.*'s Heightened Standard for Assessing Patentable Subject Matter Under § 101.

#### 1. The '581 patent is invalid under *Alice Corp.*

##### i. Background of the '581 patent

The '581 patent, titled "Collection of Information Regarding a Device or a User of a Device Across a Communication Link," claims priority to an application filed on January 31,

1998, and issued on February 11, 2003.  The patent describes and purports to claim the idea of

remotely "collecting information regarding a device or a user of a device," so as to, for example,

"analyze system performance, identify existing problems, or identify potential problems" with

the device.  '581 patent, 1:13–22.  The patent contemplates broad and trivial uses of this idea,

such as collecting information about "the hobbies or personal interests of the user."  *Id.* 4:17–20.

The invention implements this idea by using one or more pieces of software called

"discovery agents"—which reside on the computer system—to collect information about a

device or its user.  *Id.* 3:5–15; 4:8–32.  Once collected, other software called "discovery rules"—

which may or may not reside on the same computer system—dictate whether some action should

be performed based on that information.  *Id.* 1:65–2:6; 4:33–53.  For example, a discovery agent

may collect information about the available disk space on a user's computer.  The discovery rule

can then use that collected data to determine whether the available disk space is running low, and

can generate a warning to the user.  *Id.* 4:64–5:11.

The '581 patent describes that the alleged invention is embodied entirely in conventional

computing components, such as "***any*** type of computer, including a ***general purpose computer***."

*Id.* 10:13–14 (emphases added).  The computer includes "a client and a server," *id.* 4:8–10, as

well as "a storage mechanism" that "can be used to store various tables and other configuration

information," *id.* 5:13–16.  Also connected to the computer is a "communication link," which

"can be ***any*** type of communication link using ***any*** type of communication medium."  *Id.* 5:19–

21 (emphases added).  The patent also specifies that a discovery rule may be as simple as a

conventional algorithm, which may comprise "mathematical equations, or other comparisons or

evaluations."  *Id.* 3:18–21; 4:47–50.  In short, the discovery agents and discovery rules are mere

"code sequences"—i.e., ordinary computer software.  *Id.* 3:22–25.

ii.      ***Alice Corp.* step 1: the '581 patent claims are directed to the abstract idea of collecting information about a device or its user.**

The '581 patent claims the abstract concept of collecting information about a device or its user, and thus fails the first step of *Alice Corp.*  The idea of collecting information is unpatentable even if it uses "mathematical equations, or other comparisons or evaluations of the collected data" embodied by a discovery rule to perform some task based on the collected information.  *Id.* 3:18–21; 4:47–50; *see, e.g.*, *Parker v. Flook*, 437 U. S. 584 (1978) (holding that a computer method for calculating an updated alarm limit based on measurements of a process variable was ineligible for patent protection); *Benson*, 409 U.S. 63 (holding that an algorithm for programming a general-purpose digital computer to convert signals from binary-coded decimal form into pure binary form was a mathematical formula and therefore not patent eligible); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (holding that computer-implemented invention for "generating tasks [based on] rules . . . to be completed upon the occurrence of an event" is "an abstract concept").

iii.     ***Alice Corp.* step 2: the remaining limitations of the '581 patent claims add nothing inventive to the abstract idea of collecting information.**

The '581 patent also fails the second step of the *Alice Corp.* test.  The patent purports to claim the idea of collecting information through the use of discovery agents and rules.  The agents and rules, however, are nothing more than "code sequences" (i.e., software) that collect and operate on data.  They are not tied to any specific hardware that was not already well known at the time of filing.  In fact, the patent itself indicates that the invention may be implemented using "any type of computer, including a general purpose computer."  '581 patent, 10:13–14.  More specifically, the limitations of each claim do not meaningfully limit the scope of the underlying abstract idea.  *See Accenture*, 728 F.3d at 1338, 1346 (invalidating patent claims

reciting a system for generating tasks to be performed in an insurance organization based on "a set of rules that are applied to" information related to an insurance transaction stored in a database, and noting that "generalized software components arranged to implement an abstract concept on a computer . . . does not transform a claim reciting only an abstract concept into a patent-eligible system or method").[5]

     ***Representative Independent Claims.***   The patent contains only five independent claims, all of which are nearly identical.   Representative claim 1 recites a method of collecting information using this system:

> A method of collecting information, the method comprising:
>
> > transmitting a discovery rule across a communication link to a computer system, wherein the discovery rule is to be applied to data about the computer system or a user to generate information, and wherein the data is collected by a discovery agent located in the computer system, and
>
> receiving the information from the computer system.

'581 patent, claim 1.

     The claim merely specifies that a discovery rule, transmitted across a communication link to a computer system, is to be "applied to data" so as "to generate information" that will be "collected" by a discovery agent and ultimately "receiv[ed]" from the computer system.  *Id.*  The claim does not specify how the discovery rule is actually "applied," nor does it specify how information is generated, and in what form.   The lack of specificity alone is fatal to the claim, as "simply appending conventional steps, specified at a high level of generality," cannot make the underlying idea patentable.  *Mayo*, 132 S. Ct. at 1300.

---

[5]     Although the specification implies that the discovery rules decide whether to perform some (mundane) action based on the collected data, this particular aspect of the invention is not recited in any of the claims.  But even if it were, "[a] decision is a basic mental process upon which everyone relies," and "is a basic tool of scientific and technological work, and is therefore a patent ineligible abstract idea."  *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*, -- F. Supp. 2d. --, 2014 WL 3542055, at *4 (D. Del. July 16, 2014).

The fact that the claim recites a "communication link" used to transmit information does not give rise to an inventive concept, as "[n]early every computer will include a 'communications'" component.  *Alice Corp.*, 134 S. Ct. at 2360.  The patent provides no specificity with respect to the communication link, stating only that it "can be *any* type of communication link using *any* type of communication medium."  '581 patent, 5:19–21 (emphases added).  But, as the Federal Circuit has held, "a computer [that] receives and sends . . . information over a network—with no further specification—is not even arguably inventive."  *buySAFE*, 765 F.3d at 1355; *see also Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 993 (Fed. Cir. 2014) (finding that "sending information, in whole or in part, gathered from one source to different destinations . . . effects no meaningful transformation").  Claim 1 recites nothing more than collecting data using a computer, which is insufficient under *Alice Corp.* and its progeny.

The additional independent claims of the '581 patent are similarly invalid for the same reasons as articulated above.  Claim 11, for example, differs from claim 1 only in that it is written from the perspective of the computer system that receives a discovery rule rather than a system that sends the rule, and specifies that the discovery agent is activated "without requiring action by the user."  '581 patent, claim 11.  But the fact that claim 11 requires an automated system for collecting and processing data does not make it patent-eligible subject matter.  *See Alice Corp.*, 134 S. Ct. at 2359 (invalidating patent requiring issuance of "automated instructions"); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 800 F. Supp. 2d 613, 616, 621 (D. Del. 2011) (invalidating patent directed toward an "automated method for generating tasks to be performed in an insurance organization"), *aff'd*, 728 F.3d 1336.  Independent claim 20 is similar to claim 1, but specifies that the information-collection process

is initiated by a "user request," and that the system provides the user with a response based on the collected information.  '581 patent, claim 20.  These limitations do not add any substantial features.  *See buySAFE*, 765 F.3d at 1355 (invalidating patent where "a computer receives a request for a guarantee and transmits an offer of guarantee in return").  Finally, claims 29 and 39 recite a "computer readable medium" for performing the steps of claims 1 and 11, respectively.  Merely re-framing claims "in the guise of a device" does "not overcome the Supreme Court's warning to avoid permitting a 'competent draftsman' to endow abstract claims with patent-eligible status."  *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1288 (Fed. Cir. 2013) (en banc) (plurality opinion), *aff'd*, 134 S. Ct. 2347.

***Dependent Claims.***  The limitations of the dependent claims of the '581 patent likewise add nothing of patentable significance to the underlying idea.  The claims recite no additional hardware components, nor do they recite inventive methods for using conventional hardware.  Instead, for example, the claims simply limit the invention to particular uses,[6] specify automated data collection,[7] specify the origin of the discovery rules,[8] and specify that the data is collected when it is needed.[9]  These limitations do not meaningfully limit the breadth of the claims.

---

[6]   *See, e.g.*, '581 patent, claims 3, 5, 13, 15, 21–22, 31, 33, 41, 43 (requiring invention to be used for purpose of offering "assistance regarding the computer system").

[7]   *See, e.g.*, *id.* claims 2, 10, 19, 28, 30, 38, 47; *see also id.* claims 6, 24, 34 (requiring automated transmission of discovery rules).

[8]   *See, e.g.*, *id.* claims 4, 14, 23, 32, 42 (requiring that discovery rule be transmitted from "a remote individual"); *see also id.* claims 7, 16, 25, 35, 44 (requiring discovery rule and discovery agent to be "separate code sequences").

[9]   *See, e.g.*, *id.* claims 8, 17, 26, 36, 45 ("the discovery agent is activated to collect data when the discovery rule requires the data"); *id.* claims 9, 18, 27, 37, 46 ("the discovery agent is activated to collect the data according to a schedule"); *id.* claims 12, 40 ("receiving . . . the discovery rule is in response to the request").

## 2.   The '434 patent is invalid under *Alice Corp*.

### i.   Background of the '434 patent

The '434 patent, titled "System and method for retrieving information from a database using an index of XML tags and metafiles," was filed on December 29, 1999, and issued on January 21, 2003.  The '434 patent discloses and claims the idea of "locating information stored in a database," '434 patent, 4:10–11, so as to allow users to navigate the "ever-increasing amount of recorded and searchable information," *id.* 1:30–31.

Specifically, the system categorizes a document or record based on specific terms (e.g., "Pirates," "Nationals," "Giants," etc.), and creates an index that contains a "tag" corresponding to each pre-defined category (e.g., "Major League Baseball team") and groupings of categories, called "domains" (e.g., "professional sports teams").  Each tag is written in a well-known language called eXtensible Markup Language ("XML"), which describes relationships between the tagged data and the pre-defined categories.  The XML tags are stored in an index, and each tag may have a corresponding "metafile," which includes a list of related tags.  *Id.* 2:36–3:7.  The relevant tags are then combined to form a "key" that is used to search the database and identify relevant documents and records.  *Id.* 3:8–37.

The patent implements this idea using "software program modules that run on an operating system in conjunction with a computer."  *Id.* 4:55–58.  The patent states that the invention includes a "***conventional*** computer," *id.* 5:5–9 (emphasis added), and that a person skilled in the art would understand that the invention could work on any computer, *id.* 4:61–65.

### ii.   *Alice Corp.* step 1: the '434 patent claims are directed to the abstract idea of creating an index and using it to search a database.

The '434 patent claims the abstract idea of creating an index and using it to search a database, and thus fails the first step of the *Alice Corp.* test.  When confronted with similar

13

claims involving database creation, storage, and searching, the Federal Circuit has found them to be too abstract for patent protection.

In *Accenture*, for example, the court invalidated a patent directed toward a computer system comprising a database that "stores, retrieves and manipulates data" and its client counterpart that "transmits and receives data to/from the" database. *Accenture*, 728 F.3d at 1338. The court found that manipulation of data using a computer was insufficient to transform an abstract idea into a concrete application of that idea. *Id.* at 1345. More recent Federal Circuit cases confirm that "using categories to organize, store, and transmit information" is an abstract idea. *See Cyberfone*, 558 F. App'x at 992. District courts have come to the same conclusion. *See Enfish, LLC v. Microsoft Corp.*, No. 2:12-cv-07360, at 1–2, 11–12 (C.D. Cal. Nov. 3, 2014) (invalidating patent related to "an information management and database system" and "index structure . . . for searching"); *Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573 (C.D. Cal. Oct. 28, 2014) (finding invalid patent claiming a method for storing and accessing photographs in a database based on "identifying data"); *DietGoal Innovations LLC v. Bravo Media LLC*, -- F. Supp. 2d --, 2014 WL 3582914, at *16 (S.D.N.Y. July 8, 2014) (finding a patent claiming a database of food object organization to be "impermissibly abstract").

Thus, under *Alice Corp.* and its progeny, inventions directed toward locating and manipulating data using databases are clearly directed to an abstract idea.

       iii.      **Alice Corp. step 2: the remaining limitations of the '434 patent claims add nothing inventive to the abstract idea of creating and using a database index.**

The claims of the '434 patent also fail the second step of the *Alice Corp.* test. The patent takes the abstract idea of creating an index and using it to search a database, and implements this idea on a computer using XML tags. But the use of computer software is insufficient to give rise

to an inventive concept, as the Federal Circuit has repeatedly held.[10]  More specifically, the

limitations of each claim do not meaningfully limit the scope of the underlying abstract idea.

   ***Representative Independent Claims.***  Representative claim 1 of the '434 patent teaches

the creation of a database and index using a plurality of XML tags:

> A method for creating a database and an index to search the database, comprising
> the steps of:
>
>> creating the index by defining a plurality of XML tags including domain tags
>> and category tags;
>>
>> creating a first metafile that corresponds to a first domain tag; and
>>
>> creating the database by providing a plurality of records, each record having
>> an XML index component.

'434 patent, claim 1.

   The patent defines an "index" as a mere "guide that is used to locate information stored in

a database." *Id.* 4:14–15; *see also id.* 7:18–19.  But "indexing data stored in" a database "is not

an inventive concept." *See Enfish*, No. 2:12-cv-07360, at 15–16 (finding that "means for

indexing," whereby key phrases are extracted and stored in an index, is "purely conventional").

The fact that the invention uses the preexisting technology of XML tags to construct the index

does not convert the claims into patent-eligible subject matter.  The inventors did not purport to

have invented XML, which existed long before the filing date of the patent application, as the

patent itself acknowledges. *See* '434 patent, 8:67–9:4 (noting that "XML is a syntax for creating

---

[10]      The '434 patent does not purport to improve the underlying technology, but instead
comprises a combination of well-known and conventional components already present in "most
conventional computer systems." '434 patent, 5:61–64.  Similarly, the patent "does not specify
how the computer hardware and database are 'specially programmed' to perform the steps
claimed in the patent." *DealerTrack, Inc. v. Huber*, 657 F. Supp. 2d 1152, 1156 (C.D. Cal. July
7, 2009), *aff'd*, 674 F.3d 1315 (Fed. Cir. 2012).  The mere fact that the patent describes
algorithms for the claimed methods and systems is irrelevant, as IV "cannot avoid the strictures
of section 101 simply because its claimed method discloses very specific steps for allowing users
to create and modify database entries." *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1266
(Fed. Cir. 2012) (Mayer, J., dissenting, where majority failed to address § 101 on the merits).

15

a markup language that uses a set of tags" and comprises a "standard" that "is maintained by the World Wide Web Consortium"). The additional limitations of claim 1 are likewise insufficient to give rise to an inventive concept. The second limitation, which requires creating a metafile corresponding to a tag, simply describes the manipulation of data from one format (an XML tag) to another (a metafile), which the Federal Circuit has found to be inadequate. *See Digitech*, 758 F.3d at 1344, 1351 (finding that a process that "manipulate[s] existing information to generate additional information is not patent eligible"). The final step of claim 1, "creating the database by providing a plurality of records, each record having an XML index component," describes compiling and organizing data records to form a structured database index. However, "organizing . . . information into a new form" is likewise insufficient to survive § 101 scrutiny. *See id.* at 1351.

The other independent claims of the '434 patent also add nothing inventive to the abstract idea of creating and using a database index. Independent claim 7 is directed to a method of searching a database using an index, and is even broader than claim 1. It recites **no computer hardware or software**, nor does it specify that the tags comprise XML tags. Nevertheless, using an index of tags "to locate information is a basic concept that humans have long employed," and merely renders the database more efficient. *Enfish*, No. 2:12-cv-07360, at 14. But "[e]fficient location of data is an unremarkable feature of a data storage system, especially in the computing age." *Id.* After all, "[a]n index's purpose is to point to the location of information," and therefore this "concept is not sufficiently inventive enough to cabin the claims, because it would preclude inventors from performing a basic step to maximize the potential of indices." *Id.* at 19.

Independent claim 14 is directed to a computer-readable medium having instructions operable to do the same. But, as discussed above, re-framing claim 7 into a different format is

insufficient.  Independent claim 19 is directed to a method of using XML tags and metadata (stored in a metafile) to search a database.  Independent claim 25 is directed to the creation of a file that contains metadata relating to the contents of a database.  Independent claim 27 is directed to searching a database containing records that are related to trade names.  This modicum of specificity is insufficient—merely "limiting an abstract idea to one field of use" does "not make the concept patentable."  *Bilski*, 561 U.S. at 612 (citing *Flook*, 437 U.S. 584).  While the independent claims of the '434 patent differ from each other in various details, they all relate to the same underlying abstract idea: creating an index and using it to search a database.  None of the independent claims add anything inventive to this underlying abstract idea.

**Dependent Claims.**  The dependent claims of the '434 patent likewise do not describe patent-eligible subject matter.  The claims recite no additional hardware components, nor do they recite inventive methods for using conventional hardware.  Instead, for example, the claims only specify field-of-use limitations for the invention,[11] require that the computer system make basic determinations about the relationship between user search terms and database tags and records,[12] and describe the organizational structure of data in the metafiles or types of tags.[13]  These limitations do not meaningfully limit the breadth of the claims.

---

[11]    *See, e.g.*, '434 patent, claim 4 (domain tags must "identify products" that are marketed to a user); *id.* claim 13 (category tags must "include a brand tag, a cuisine tag, a payment option tag, and an amenity tag"); *id.* claim 18 (category tags must "indentif[y] a group of terms providing business information"); *id.* claim 26 (identifying tags "in response to a request for information about authorized service providers of the product associated with the trade name").

[12]    *See, e.g.*, *id.* claim 8 (parsing user search term to identify relevant tags); *id.* claims 9, 10–11, 15, 17, 24 (determining whether search terms are ambiguous, and if so, suggesting more appropriate terms or tags, and if not, using the corresponding tag); *id.* claims 16, 28 (matching first search term with first tag (claim 16) and creating key based on tag (claim 28)).

[13]    *See, e.g.*, *id.* claims 2–3, 5–6, 12, 20–21, 23.

For these reasons, the Court should dismiss IV's infringement claims with respect to the '581 and '434 patents, and invalidate all of the patents' claims under § 101.

## II.   IV'S INFRINGEMENT CLAIMS SHOULD BE DISMISSED FOR THEIR FAILURE TO SET FORTH SUFFICIENT FACTS TO STATE A CLAIM.

IV's complaints also fail because their infringement allegations with respect to each patent are so vague that Defendants cannot discern what theories of infringement are asserted and which products are accused.

To fulfill the pleading requirements of Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (finding that a "naked assertion" of wrongdoing without "factual enhancement" does not state a claim). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If, as is the case here, a complaint "contains only conclusory statements" of wrongdoing, with no facts alleged that create the "'reasonable inference that the defendant is liable for the misconduct alleged,'" the claim must be dismissed. *Black v. JP Morgan Chase & Co.*, 2011 WL 4102802, at *2, *43 (W.D. Pa. Aug. 10, 2011) (quoting *Iqbal*, 556 U.S. at 678), *adopted*, 2011 WL 4089379 (W.D. Pa. Sept. 14, 2011).

IV's direct infringement claims, which fail to specify which of Defendants' products or services allegedly infringe or how they do so, do not meet the requirements of a sufficient pleading set forth by the Supreme Court, and therefore should be dismissed. Similarly, IV's

conclusory claims of induced and contributory infringement are grossly insufficient, and likewise should be dismissed.

> **A.      IV's Direct Infringement Claims Should Be Dismissed Under the _Twombly_/_Iqbal_ Standard.**

Third Circuit law, rather than the law of the Federal Circuit, governs motions to dismiss patent infringement claims under Federal Rule of Civil Procedure 12(b)(6). *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007). In the Third Circuit, even identifying broad categories of products in the complaint has been found to be insufficient to meet a plaintiff's pleading requirements. *See, e.g.*, *Via Vadis, LLC v. Skype, Inc.*, 2012 WL 261367, at *1–3 (D. Del. Jan. 27, 2012) (granting motion to dismiss where plaintiff alleged that "Defendants have used and continue to use Via Vadis' patented technology by providing the SKYPE peer-to-peer VOIP communications systems, methods, products and services"); *Eidos Commc'ns, LLC v. Skype Techs. SA*, 686 F. Supp. 2d 465, 466–67 (D. Del. 2010) (dismissing complaint that accused "communication system products and/or methodologies that infringe one or more claims," and stating that plaintiffs "were obligated to specify, at a minimum, a general class of products or a general identification of the alleged infringing methods"). Instead, courts have required that defendants be given "fair notice" of the claims being asserted against them, requiring that the

plaintiff "allege, in general terms, an infringing product." *Fifth Mkt., Inc. v. CME Grp., Inc.*, 2009 WL 5966836, at *1 (D. Del. May 14, 2009).[14]

Here, IV does not even identify broad categories of products or services. Instead, IV's complaints fail to identify ***any*** product or service that allegedly infringes, with the single exception of mobile applications alleged to infringe the '002 patent.[15]  IV's allegations are therefore insufficient to withstand a Rule 12(b)(6) challenge because "there are simply no factual allegations advising Defendants how or why their products infringe on Plaintiff's patents." *Via Vadis*, 2012 WL 261367 at *2; *see also Prism Techs., LLC v. AT&T Mobility, LLC*, 2012 WL 3867971, at *5 (D. Neb. Sept. 6, 2012) (holding that plaintiff's complaint did not rise to the level of specificity required by the Federal Rules despite naming two example products because the

---

[14]      Some courts have found that the pleading requirements may be satisfied by utilizing the standard set forth in Form 18 of Rule 84, which offers an example of a patent infringement complaint that identifies an allegedly infringing product at the level of specificity of "electric motors." Fed. R. Civ. P. Form 18.  But IV has not even met this extremely general level of specificity.  In its direct infringement allegations, IV merely identifies the Defendants' "computer systems that use the patented systems and methods."  This reference to potentially all the computer systems that Defendants own and operate does not meet the standard set by Form 18.  *Compare Prism Techs., LLC v. AT&T Mobility, LLC*, 2012 WL 3867971, at *5 (D. Neb. Sept. 6, 2012) (finding the term "wireless products . . . considerably more generic than the term 'electronic motor' as identified in Form 18," and finding that the complaint therefore "does not satisfy Form 18 standards"), *with St. Clair Intellectual Prop. Consultants, Inc. v. Apple Inc.*, 2011 WL 4571812, at *2–3 (D. Del. Sept. 30, 2011) (finding a category of "smartphones and tablets," along with an identification of ***specific model numbers***, to be sufficient under Form 18).

[15]      IV's claims as to all patents are similarly deficient in their generality.  IV accuses: Defendants' "computer systems that use the patented systems and methods for configuration management" of infringing the '581 patent; Defendants' "computer systems that use the patented systems and methods for displaying user-specific resources on a mobile device" of infringing the '002 patent; Defendants' "computer systems that use the patented systems and methods for searching databases with metafiles" of infringing the '434 patent; and Erie's "computer systems that use the patented systems and methods for identifying and characterizing errant electronic files" of infringing the '298 patent.  IV provides one non-limiting example for each patent, but these examples merely parrot back patent claim language and are likewise deficient for the reasons mentioned above.

allegations were "so vague that it encompasses essentially [defendant's] entire business, leaving [defendant] with no notice as to how it allegedly infringes").

**B.    IV's Claims of Induced and Contributory Infringement Should Also Be Dismissed.**

IV's claims of indirect infringement are further deficient.  IV's induced and contributory infringement claims are limited to a single sentence for each patent.  IV merely requests an order "preliminarily and permanently enjoining Defendants from . . . further infringement, contributory infringement and/or inducing infringement," without any supporting factual allegations.  *See, e.g.*, Erie Matter, Dkt. 1, ¶ 32.

IV's threadbare claims of induced and contributory infringement are clearly insufficient to state a claim upon which relief can be granted, as they fail to allege the additional elements necessary to prove induced and contributory infringement.  Induced infringement requires four specific elements, none of which have been alleged by IV: (1) that the defendant knew of the asserted patents; (2) that the defendant knew that the induced actions constituted infringement of the patents-in-suit by a third party; (3) that the defendant specifically intended to encourage this third-party infringement; and (4) that, as a result, a third party directly infringed the patents-in-suit.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) (holding that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement"); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (inducement requires that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent"); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[T]he intent requirement for inducement requires more than just intent to cause the acts that produce direct

infringement.  Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement.").

Thus, to state a claim for induced infringement under *Iqbal* and *Twombly*, a plaintiff must set forth facts showing that the defendant had specific intent to encourage some third party to infringe and that the defendant knew that the induced actions would constitute infringement.  *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (stating that complaints for induced infringement "must contain facts plausibly showing that [the alleged infringers] specifically intended their customers to infringe the [asserted] patent and knew that the customer's acts constituted infringement.").

IV's isolated allegation is devoid of factual content and fails to even assert that the elements of induced infringement are met.  Courts have held similar bald assertions to be insufficient.  In *Irori Technologies, Inc. v. Luminex Corp.*, 2014 WL 769435 (S.D. Cal. Feb. 25, 2014), for example, the court dismissed plaintiff's induced infringement claims, which appeared only in a request for injunction in the prayer for relief.  *Id.* at *3–6.  The plaintiff in *Irori* provided even more support than IV has done here, proffering additional exhibits demonstrating defendant's alleged infringement and identifying its websites.  *Id.*  The court held that despite this additional information, the plaintiff failed to plausibly show that the defendant intended its customers to infringe the patent and that the defendant knew its customers engaged in infringing acts.  *Id.*  IV's claims for induced infringement should be dismissed for the same reasons.

IV's claims of contributory infringement are likewise insufficient.  At a minimum, "[t]o state a claim for contributory infringement, . . . a plaintiff must, among other things, plead ***facts*** that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."  *Bill of Lading*, 681 F.3d at 1337 (emphasis added).  Moreover, a plaintiff must

plead facts to show that the defendant ***knew*** that its product was "especially made or especially adapted" for infringement.  *See Hand Held Prods., Inc. v. Amazon.com, Inc.*, 2013 WL 507149, at *3 (D. Del. Feb. 6, 2013) (quoting 35 U.S.C. § 271(c)).  IV has failed to do that here.

The complaints contain no statement or allegation that any accused systems and services constitute a material part of a claimed invention and have no substantial non-infringing uses, nor do the complaints allege that Defendants knew the systems and services they offer are especially made or adapted for infringement.  IV also fails to identify any third-party infringement to which Defendants allegedly contributed and fails to plead any facts showing how any unmentioned third parties allegedly infringe any of the asserted patents.  These failures are fatal under *Iqbal* and *Twombly*.  *See Stephenson v. Game Show Network, LLC*, 933 F. Supp. 2d 674, 681 (D. Del. 2013) (dismissing contributory infringement claim where plaintiff failed to allege that defendant knew its product was especially designed for use to infringe).  Accordingly, IV's claims of contributory infringement should likewise be dismissed.

### III.   IN THE ALTERNATIVE, THE COURT SHOULD COMPEL IV TO PROVIDE A MORE DEFINITE STATEMENT.

Should this Court find that IV's complaint does not warrant dismissal, Defendants respectfully request that the Court compel IV to provide a more definite statement, identifying with specificity the products or services that IV alleges infringe its patents and how, as well as the factual bases for its indirect infringement claims.  "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  A plaintiff must provide enough detail so that the defendant can understand the claims and determine its defenses for framing a responsive pleading.  *See Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967).

The complaint as written fails to place Defendants on notice of which computer services and systems are alleged to infringe the asserted patents and renders Defendants unable to reasonably perform their disclosure obligations under Rule 26(a)(1) or to properly mount their defense. *See KBA-Giori, N. Am., Inc. v. Muhlbauer, Inc.*, No. 2:08-cv-00034, at 8 (E.D. Va. July 24, 2008) (granting motion for more definite statement where the court was "unable to determine with any level of specificity what products or class of products produced by [defendant] fit within [plaintiff's] description of 'imaging and print inspection equipment and associated methods'"). Defendants should not be required to bear the burden of scrutinizing product lines and processes that IV does not even accuse of infringement. *Bay Indus., Inc. v. Tru-Arx Mfg., LLC*, 2006 WL 3469599, at *2 (E.D. Wis. Nov. 29, 2006) (granting defendant's motion for a more definite statement after noting that the plaintiff's deficient pleading constituted "an unreasonable burden on defendant," who "should not have to guess which of its products infringe nor guess how its products might fall within plaintiff's interpretation of the claims of the patent"); *MTV Networks v. Curry*, 867 F. Supp. 202, 208 (S.D.N.Y. 1994) ("Given the broad range of defenses involved in opposing [the counterclaims, the counterclaim-defendant] is entitled to a clarification of [the] pleadings.").

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss IV's infringement claims with respect to the '581 and '434 patents under § 101 and invalidate all of the claims of those patents. Defendants also request that the Court dismiss under Rule 12(b)(6) IV's direct and indirect infringement claims with respect to all patents for failing to state a proper claim, or, in the alternative, require IV to provide a more definite statement with respect to these claims pursuant to Rule 12(e).

Dated: November 5, 2014           Respectfully submitted,

By:  */s/ Gregory H. Lantier*
      John G. Ebken (PA I.D. 91031)
      Alexander W. Saksen (PA I.D. 86049)
      GORDON & REES LLP
      707 Grant Street, Suite 3800
      Pittsburgh, PA 15219
      Tel.: (412) 577-7400
      Fax: (412) 347-5461
      Email: jebken@gordonrees.com
      Email: asaksen@gordonrees.com

James L. Quarles III
(*pro hac vice motion to be filed*)
DC I.D. 359079
Email: james.quarles@wilmerhale.com
Gregory H. Lantier
(*pro hac vice*)
DC I.D. 492043
Email: gregory.lantier@wilmerhale.com
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania, Ave NW
Washington DC, 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363

David C. Marcus
(*pro hac vice*)
CA I.D. 158704
Email: david.marcus@wilmerhale.com
WILMER CUTLER PICKERING HALE AND
DORR LLP
350 South Grand Ave, Suite 2100
Los Angeles, CA 90071
Tel.: (213) 443-5300
Fax: (213) 443-5400

Monica Grewal
(*pro hac vice*)
MA I.D. 659449

Email: monica.grewal@wilmerhale.com
WILMER CUTLER PICKERING HALE AND
DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000

*Counsel for Defendants Erie Indemnity
Company, Erie Insurance Exchange, Erie
Insurance Property & Casualty Company,
Erie Insurance Company, Flagship City
Insurance Company, and Erie Family Life
Insurance Company*

## APPENDIX A

The table below sets forth cases in which a district court invalidated claims based on the merits of 35 U.S.C. § 101 after *Alice Corp.*

| No. | Claim(s) Invalidated |
|-----|----------------------|
| 1 | *Enfish, LLC v. Microsoft Corp.*, No. 2:12-cv-07360 (C.D. Cal. Nov. 3, 2014) |
| 2 | *Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, No. 1:12-cv-00394 (D. Del. Oct. 30, 2014) |
| 3 | *Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573 (C.D. Cal. Oct. 28, 2014) |
| 4 | *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, No. 1:10-cv-00910 (E.D. Va. Oct. 24, 2014) |
| 5 | *Cogent Med. Inc. v. Elsevier Inc.*, No. 5:13-cv-04479 (N.D. Cal. Sept. 30, 2014) |
| 6 | *McRo, Inc. v. Namco Bandai Games Am., Inc.*, No. 2:12-cv-10322 (C.D. Cal. Sept. 22, 2014) |
| 7 | *Open Text S.A. v. Alfresco Software LTD*, No. 3:13-cv-04843 (N.D. Cal. Sept. 19, 2014) |
| 8 | *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-cv-02826 (M.D. Fla. Sept. 11, 2014) |
| 9 | *Eclipse IP LLC v. McKinley Equip. Corp.*, No. 8:14-cv-00742 (C.D. Cal. Sept. 4, 2014) |
| 10 | *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-cv-00655 (E.D. Tex. Sept. 3, 2014) |
| 11 | *Tuxis Techs. LLC v. Amazon.com Inc.*, No. 1:13-cv-01771 (D. Del. Sept. 3, 2014) |
| 12 | *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 1:12-cv-01736 (D. Del. Sept. 3, 2014) |
| 13 | *Walker Digital LLC v. Google Inc.*, No. 1:11-cv-00318 (D. Del. Sept. 3, 2014) |
| 14 | *CMG Fin. Servs. Inc. v. Pac. Trust Bank FSB*, No. 2:11-cv-10344 (C.D. Cal. Aug. 29, 2014) |
| 15 | *Comcast IP Holdings I LLC v. Sprint Commc'ns Co.*, No. 1:12-cv-00205 (D. Del. July 16, 2014) |
| 16 | *DietGoal Innovations LLC v. Bravo Media LLC*, No. 1:13-cv-08391 (S.D.N.Y. July 8, 2014) |

**APPENDIX B**

The table below sets forth cases in which a district court granted or granted in part a

motion to dismiss or a motion for judgment on the pleadings under 35 U.S.C. § 101 since 2011.

| No. | Granted/Granted in Part |
|---|---|
| 1 | *Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, No. 1:12-cv-00394 (D. Del. Oct. 30, 2014) |
| 2 | *Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573 (C.D. Cal. Oct. 28, 2014) |
| 3 | *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, No. 1:10-cv-00910 (E.D. Va. Oct. 24, 2014) |
| 4 | *Cogent Med. Inc. v. Elsevier Inc.*, No. 5:13-cv-04479 (N.D. Cal. Sept. 27, 2014) |
| 5 | *McRo, Inc. v. Namco Bandai Games Am., Inc.*, No. 2:12-cv-10322 (C.D. Cal. Sept. 22, 2014) |
| 6 | *Open Text S.A. v. Alfresco Software Ltd.*, No. 3:13-cv-04843 (N.D. Cal. Sept. 19, 2014) |
| 7 | *Eclipse IP LLC v. McKinley Equip. Corp.*, No. 8:14-cv-00742 (C.D. Cal. Sept. 4, 2014) |
| 8 | *Tuxis Techs. LLC v. Amazon.com Inc.*, No. 1:13-cv-01771 (D. Del. Sept. 3, 2014) |
| 9 | *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 1:12-cv-01736 (D. Del. Sept. 3, 2014) |
| 10 | *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-cv-00655 (E.D. Tex. Sept. 3, 2014) |
| 11 | *Gametek LLC v. Zynga, Inc.*, No. 3:13-cv-02546 (N.D. Cal. Apr. 25, 2014) |
| 12 | *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-00674 (E.D. Tex. Jan. 21, 2014) |
| 13 | *Lumen View Tech. LLC v. Findthebest.com, Inc.*, No. 1:13-cv-03599 (S.D.N.Y. Nov. 22, 2013) |
| 14 | *UbiComm, LLC v. Zappos IP, Inc.*, No. 1:13-cv-01029 (D. Del. Nov. 13, 2013) |
| 15 | *Internet Patents Corp. v. Gen. Auto. Ins. Servs., Inc.*, No. 3:12-cv-05036 (N.D. Cal. Sept. 24, 2013) |
| 16 | *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, No. 3:12-cv-02501 (D.N.J. July 31, 2013) |
| 17 | *buySAFE, Inc. v. Google Inc.*, No. 1:11-cv-01282 (D. Del. July 29, 2013) |
| 18 | *Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, No. 6:12-cv-00375 (E.D. Tex. Mar. 27, 2013) |
| 19 | *Cardpool, Inc. v. Plastic Jungle, Inc.*, No. 3:12-cv-04182 (N.D. Cal. Jan. 22, 2013) |
| 20 | *Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs., LLC*, No. 5:12-cv-00360 (W.D. Okla. Dec. 19, 2012) |
| 21 | *Vacation Exch., LLC v. Wyndham Exch.*, No. 2:12-cv-04229 (D.D.C. Sept. 19, 2012) |
| 22 | *OIP Techs., Inc. v. Amazon.com, Inc.*, No. 3:12-cv-01233 (N.D. Cal. Sept. 11, 2012) |
| 23 | *Glory Licensing LLC v. Toys R Us, Inc.*, No. 2:09-cv-04252 (D.N.J. May 16, 2011) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 5, 2014, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

counsel or parties of record electronically by CM/ECF.


Dated:  November 5, 2014          <u>By:  /s/ Gregory H. Lantier</u>
                                  Gregory H. Lantier