IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

————————————————————————

INTELLECTUAL VENTURES I LLC, et al.,
                    Plaintiffs,
                                              Civil Action
        vs                                    No. 14-220

ERIE INDEMNITY COMPANY, et al,,
                    Defendants.

————————————————————————

        Transcript of proceedings held on November 7, 2014,
United States District Court, Pittsburgh, Pennsylvania, before
the Honorable Mark R. Hornak, U.S. District Court Judge.

APPEARANCES:

For the Plaintiff:          HENRY M. SNEATH, Esq.
                            CHRISTIAN J. HURT, Esq.
                            KIRK A. VOSS, Esq.
                            DEREK T. GILLILAND, Esq.
                            EDWARD K. CHIN, Esq.

For the Defendants:         DAVID C. MARCUS, Esq.
                            GREGORY H. LANTIER, Esq.
                            JOHN G. EBKEN, Esq.
                            LESLIE PAULSON, Esq.
                            ARTHUR H. STROYD, JR., Esq.
                            RUSSELL CASS, Esq.
                            VERNON WINTERS, Esq.

Court Reporter:             Shirley Ann Hall, RDR, CRR
                            6260 U.S. Courthouse
                            Pittsburgh, PA 15219
                            (412) 765-0408

Proceedings recorded by digital stenography; transcript
produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2         (Telephonic status conference.)
 3              THE COURT:  Good morning, everyone.
 4              This is Mark Hornak in Pittsburgh.  Present with me
 5    in the conference room is one of my law clerks, Miss Bethany
 6    Lipman, and our court reporter today is Miss Shirley Hall.
 7              Miss Hall, we're here on simultaneous telephone
 8    status conferences in the following civil actions:  First on
 9    the Erie docket, 14-220; next on the Pittsburgh docket,
10    14-1130; and finally on the Pittsburgh docket, 14-1131.
11              I'm advised that on the phone we have for the
12    Plaintiff Mr. Sneath who is here in Pittsburgh; Mr. Hurt in
13    Irving, Texas; Mr. Gilliland of Daingerfield, Texas; Mr. Chin
14    also in Irving; Mr. Voss of Irving.
15              We have Mr. Marcus in Los Angeles; is that correct,
16    sir?
17              MR. MARCUS:  Yes, Your Honor.
18              THE COURT:  Mr. Ebken, who is here in Pittsburgh; we
19    have — is it Mr. or Ms. Perlson, Paulson —
20              MS. PAULSON:  Yes, Your Honor.  It is Paulson.  I
21    apologize.
22              THE COURT:  That's okay.  Which firm are you at?
23              MS. PAULSON:  WilmerHale.
24              THE COURT:  Which office?
25              MS. PAULSON:  In the Boston office, Your Honor.
```

1          THE COURT:  Mr. Marcus, you are in Los Angeles right

2    now?

3          MR. MARCUS:  Yes, I am, Your Honor.  It's already a

4    nice day here.

5          THE COURT:  I'll try and do a little better of being

6    attentive to the time differences.

7          Is there anybody who is on the call that I've not

8    identified by name?

9          MR. LANTIER:  Yes, Your Honor, this is Greg Lantier

10   from WilmerHale.

11         THE COURT:  Okay.  Mr. Lantier, which office are you

12   in?

13         MR. LANTIER:  The Washington D.C. office, Your Honor.

14         THE COURT:  We've covered all of Route 95.

15         Anybody else?

16         MR. STROYD:  Your Honor, Art Stroyd on behalf of

17   Old Republic.

18         THE COURT:  Good morning, Mr. Stroyd.  Good to hear

19   from you, sir.

20         MR. STROYD:  Yes, indeed.

21         And I believe also on the call is Vernon Winters with

22   Sidley Austin, and they're from the San Francisco office; and

23   Russell Cass, also Sidley Austin, in their Chicago office.

24         MR. WINTERS:  We're in the San Francisco office.

25         THE COURT:  Good morning, Mr. Winters and Mr. Cass.

1          Mr. Winters, I apologize also for the early time of

2   this call.  We'll do better the next time around.

3          MR. WINTERS:  Your Honor, thank you; this time is

4   fine.

5          THE COURT:  Anybody on the call that I have not

6   mentioned?

7          Okay.  Well, thank you, everyone.  So that both I can

8   retain what remains of my sanity and Ms. Hall also, if anyone

9   speaks, if you could identify yourself by name first so that we

10  can make sure the record is accurate.

11         We're here today because in the Erie case, 14-220,

12  Intellectual Ventures versus the Erie family of companies, at

13  ECF Docket 36 there was a filing by the Defendants requesting a

14  status conference and indicating that they thought it was a

15  good idea.  I then entered an order after checking to see if

16  anybody had any big concerns so that we did the status

17  conference at the same time in all three cases.  So that's what

18  brings us here.

19         So in fairness, Mr. Ebken, you or one of your

20  delegates or colleagues, perhaps more accurately, what do you

21  think we ought to be talking about today?  And how can the

22  Court be helpful?

23         MR. EBKEN:  Sure.  And, Mr. Lantier, would you like

24  to take the lead on addressing Mr. Hornak's question --

25  Judge Hornak's questions?

1          MR. LANTIER:  Sure, I would be happy to.  This is

2    Greg Lantier from WilmerHale, as indicated, on behalf of the

3    Erie and Highmark sets of Defendants.

4          Your Honor, I think there are two issues for today

5    that we tried to preface in the motion that we filed.  One is

6    that there was a motion to dismiss on the basis of 35 USC

7    Section 101 filed in the Old Republic matter a couple of weeks

8    ago.  We have the day before yesterday filed our own motion to

9    dismiss, which with respect to two of the patents raises the 35

10   USC 101 issue and also raises some additional bases on which we

11   believe some or all of the complaints filed by Intellectual

12   Ventures should be dismissed.  So we were hoping or wondering

13   if Your Honor would entertain coordination in terms of any type

14   of hearing as to those motions as they do raise common issues.

15         The second --

16         THE COURT:  Let's stop right there for one second,

17   Mr. Lantier.  Is there anybody on the call on behalf of any

18   party anywhere in any of these three cases that thinks that the

19   Court should not take up any motions to dismiss, cross motions

20   that might be filed, briefing, argument in each of these three

21   cases at the same time?

22         That is -- and, Mr. Lantier, as you probably know

23   from looking on the Web site or perhaps from speaking with

24   Mr. Ebken or others, I routinely have oral argument on any case

25   dispositive motion, any motion for the award of attorney's

1  fees, or any motion involving the disqualification of counsel

2  or a law firm; and it certainly appears that I would set oral

3  argument in this case.  So assuming that I have oral argument,

4  is there anyone on the call on behalf of any client that thinks

5  that I shouldn't take these up all at the same time?

6          MR. GILLILAND:  Your Honor, this is Derek Gilliland

7  with Intellectual Ventures.

8          On behalf of Intellectual Ventures — and I'm not

9  speaking out because I do not think you should take them up at

10  the same time, just for one point of clarification.  We have

11  not filed our responsive briefing to any of the motions to

12  dismiss that have been filed and, in addition to coordination

13  of the hearing, we would be in favor of just coordinating the

14  briefing schedule as well.

15          THE COURT:  And, Mr. Gilliland, you're certainly

16  singing out of the songbook that I like to follow.  I think

17  it's easier when there are similar matters and similar issues

18  if we can have coordinated briefing —— we'll figure it out here

19  at the courthouse.  But just when there are so many counsel and

20  parties, so that you can all know who's supposed to be doing

21  what to whom, that's certainly a matter I think that would be a

22  good idea.

23          So subject to sort of that grace note that we do what

24  we can to coordinate briefing and have oral argument all on the

25  same day and make sure everyone has their fair say, bite it off

1    all at one time, does anyone think that doing that would

2    materially prejudice the interests of their clients?

3              MR. LANTIER:  The answer, Your Honor — this is

4    Greg Lantier, Your Honor.

5              From our perspective, obviously no, given the motion

6    we filed, but I did want to just clarify one point.

7              THE COURT:  Sure.

8              MR. LANTIER:  In terms of the coordination of

9    briefing, I think that the Defendants would want to at least

10   for now hold open the possibility of filing separate reply

11   briefs because their respective motions raise different

12   grounds —

13             THE COURT:  No, no.  What I took Mr. Gilliland as

14   implicit in his suggestion is that we'll pick a date that all

15   of the response briefs to motions to dismiss will be due by and

16   then we'll pick a date that any reply brief that anybody is

17   going to file will be due by, and that way everyone just has to

18   mark two dates on their calendar rather than six.

19             Was that implicit in your thought, Mr. Gilliland?

20             MR. GILLILAND:  Your Honor, this is Mr. Gilliland.

21             And, yes, that's what I meant, was coordination of

22   the dates, not combining of the briefs.

23             THE COURT:  And, Mr. Lantier, does that work for you?

24             MR. LANTIER:  Yes, Your Honor.

25             THE COURT:  With that little amendatory observation,

1    does anyone think if we follow that procedurally it creates a

2    prejudice to any of their clients?

3              (No response.)

4              THE COURT:  Five seconds of silence is good for the

5    Court to conclude that there are no objections, and that's

6    exactly how we'll treat that topic and I'll enter an order that

7    confirms that for everyone.  But substantively that's what

8    we're going to do on that point.

9              Mr. Lantier, you had a second item on your list.

10             MR. LANTIER:  Yes, Your Honor.  And this is a bit

11   more long term, but in the same line of thought.  These cases

12   are not -- they can't be consolidated with each other for all

13   purposes because 35 USC Section 299, which was part of the

14   recent America Invents Act, would preclude consolidating them

15   for trial purposes.  But I think that consistent with our

16   experience and perhaps Your Honor's experience in other cases

17   where the same patents are being asserted, they sometimes are

18   treated along together for at least pretrial discovery

19   purposes.

20             So, for example, there wouldn't be two Markman

21   hearings, there would be one Markman hearing; and the fact

22   discovery deadline would be at the same time for each of the

23   cases, et cetera.  And from the perspective of Erie and

24   Highmark, we believe that that would be an efficient way for

25   Your Honor to handle these related cases here.

1              THE COURT:  Okay.  And before we hear from one of the

2      fleet of lawyers for Intellectual Ventures, Mr. Stroyd on

3      behalf of Old Republic or Mr. Winters or Mr. Cass, obviously

4      preserving the congressional dictates of the Americans —

5      America Invents Act, what does Old Republic think about

6      Mr. Lantier's suggestion in that regard?

7              MR. WINTERS:  Your Honor, this is Vern Winters of

8      Sidley for Old Republic.

9              The parties have discussed this as a philosophical or

10     matter of principle, and I think we're in general agreement —

11     and that if I'm wrong about this, my colleagues can speak up —

12     but in general agreement it would be appropriate for the Court

13     in terms of scheduling dates in the case to observe the same

14     schedule in each of the three.  And, in particular, I think the

15     parties are in agreement that one Markman makes sense for all

16     on this call, including the Court.

17             THE COURT:  Okay.  And who — Mr. Sneath, I'll let

18     you tell the Court who I should look to as the lead

19     spokesperson this morning for Intellectual Ventures.

20             MR. SNEATH:  Mr. Gilliland on that issue.

21             Mr. Gilliland.

22             THE COURT:  Mr. Gilliland, what do you think about

23     that?

24             MR. GILLILAND:  Your Honor, thank you.  And as

25     Mr. Winters had said, there has been some conversations between

1   the parties, and we are in agreement for consolidation for all

2   pretrial purposes.  We think that's the most efficient way to

3   handle it.

4              THE COURT:  Okay.  Let's try the five second test

5   again.  If I enter an order that consolidates these proceedings

6   for pretrial discovery and Markman purposes only and confirm in

7   that that if we set conferences and those sorts of things, it

8   will be a single order entered and then we'll see who shows up,

9   and we'll talk about anything that comes up, but we won't have

10  separate dates for motions and briefing varying among the

11  cases, we won't have separate dates for status conferences or

12  those things, unless the parties indicate to the Court that we

13  really should, but that would be on an ad hoc basis, but

14  otherwise we would run the proceedings together at the pretrial

15  through Markman stage at least, does anyone believe that doing

16  that is either contrary to the law or would materially

17  prejudice their clients' interests even if it was consistent

18  with the law?

19             MR. WINTERS:  Your Honor, this is Vern Winters at

20  Sidley Austin for Old Republic.

21             The answer is no to both of the Court's questions,

22  with the following caveat.  The cases have a certain

23  configuration now and as sometimes happens in patent cases, the

24  scope of the case, any individual case, can expand; and I think

25  that it's well for all of us to recognize that it may be

1     possible if any particular case expands, whether that's against
2     Erie, Highmark or Old Republic, we may need to revisit this
3     issue at that juncture.  I don't know that necessarily will
4     happen.  I think Mr. Gilliland knows more about that than
5     anyone else on the call.  If that happens —

6            THE COURT:  In viewing that as the most interlocutory
7     form of any interlocutory order and one if at any point, either
8     just for sound case management purposes or something comes up
9     that could cause consolidation of a specific event or matter to
10    cause some either unanticipated or particular prejudice, then
11    the Court views it as its obligation to reconsider that matter.
12    So it is not in the speak now or forever hold your peace
13    category.

14            Does that cover the concern that you think might
15    potentially be out there Mr. Cass?

16            MR. WINTERS:  Thank you, Your Honor.  I think it is
17    mostly a matter of good order and thinking about theoretical
18    possibilities, but yes.

19            THE COURT:  Okay.  Mr. Winters, since to counsels'
20    credit you've all talked about this, it sounds as though many
21    of you on the call have worked on other cases with one another,
22    could the Court impose on you, sir, to consult with whoever
23    else you think you need to consult with and draft a proposed
24    order that would implement this early stage consolidation, file
25    it on all three cases — and it will probably be the last one

1   that anyone will have to file on all three numbers —— or cause

2   it to be filed and then I'll enter it because it will come in

3   as having been concurred in by all the parties.

4            Can you take that task on, Mr. Winters?

5            MR. WINTERS:  Your Honor, we will.

6            THE COURT:  Okay.  Now, just as a little tip off of

7   how it works visually on our docket, once that order is

8   entered, so that —— and I'm not sure how it's handled in other

9   courts.  I suspect it's not real different.  What will happen

10  is once that order is entered, the order that I'll issue will

11  say that all —— that the cases are consolidated for these

12  purposes at the lowest of the docket numbers.  The higher

13  numbers will be shown as administratively closed on the docket.

14           That is no disposition of anything on the merits.  It

15  simply allows the parties to file any papers at what will be

16  the lowest docket number, which is the practice within the

17  court, and they will be treated as being filed for all three

18  cases.  So that's the optics of what you'll see once that

19  happens, but it allows you to avoid duplicative filing; and

20  everything will be treated when it's filed at that designated

21  docket number as being applicable to all the cases, unless a

22  filing party in their papers specifically says, Judge, we have

23  three arguments.  They only apply in this regard.  And then the

24  readers on the other side of the case will know that.  But that

25  goes more to the substance of the papers rather than the

1    mechanics of the filing.

2          So, Mr. Winters, whenever that comes in, if it uses

3    the word consent or joint, it will be entered in very short

4    order.

5          MR. WINTERS:  Thank you, Your Honor.

6          THE COURT:  Mr. Lantier, you're two for two.

7    Anything else on your agenda?

8          MR. LANTIER:  We didn't have anything else on our

9    agenda, Your Honor.  Thanks for holding the hearing this

10   morning.

11         THE COURT:  No problem at all.

12         Now let's turn to our folks on the Plaintiff's side

13   of the case.  Mr. Gilliland, we'll start with you first, but

14   you're free to lateral to someone else.  Do you have a date in

15   mind that you would like me to put in the order that says that

16   the response briefing to the motions to dismiss in each of the

17   three cases is due on X?  What would you like X to be?

18         MR. GILLILAND:  Well, Your Honor, we — let's say we

19   got the briefing from Erie and Highmark yesterday or the day

20   before — I'm looking at my calendar here.  I think under the

21   local rules that would put it about around December 2nd; so

22   if we could make our responsive briefing due at the end of that

23   week, December 5?  And I'm kind of winging this, so — but I

24   think that should work and we could get them all done at the

25   same time then unless somebody has a large objection to it.  I

1  think our response — wait a minute, I'm looking at the wrong

2  date.  Hold on.  I had my calendar on the wrong date — I'm

3  thinking one, two — I'm thinking it's due December — or,

4  excuse me, November — we've already got an agreement with —

5  wait.  I'm getting too many notes passed to me real quick.  My

6  apologies, Your Honor.

7          THE COURT:  No problem.

8          MR. GILLILAND:  Let's say Wednesday, November 26.

9  That will give us a couple days, based on the standard

10  calendar, that that should be more than enough time to get the

11  responsive briefing in.

12          THE COURT:  Does anyone think that's not a good date

13  for the responses to the motions to be due, and then the next

14  date we'll pick is date Y, which is the date for any reply

15  briefs?  So for the defense side, the moving parties' side,

16  does that create any heartburn if we give the Plaintiffs until

17  Wednesday, November 26th, to respond?

18      (No response.)

19          THE COURT:  Okay.  Then that will — we'll put that

20  in my text order.  And, Mr. Lantier, we'll start with you, but

21  anybody else on the moving parties' side can weigh in.  What do

22  you think about when you'd like your reply briefs due?  And as

23  far as I'm concerned, having spent 30 years doing what everyone

24  else on this call does, the 27th, 28th and 29th and

25  30th of November don't count because you're supposed to be

1   with your families eating turkey, watching football or being

2   stuck in an airport moving around the country.  So start your

3   clock on Monday, December 1st.

4            MR. LANTIER:  Your Honor, I haven't conferred with

5   Mr. Winters or his colleagues on this, so I will want to allow

6   them to speak up as well; but I think if the reply briefs could

7   be due perhaps on Friday, December 12th, that would -- that

8   provides a little bit of extra time to file it.  And if

9   Your Honor thinks that's too long, certainly we're happy to

10  follow Your Honor's direction.

11           THE COURT:  No, I think it's too short.  I think you

12  ought to make them due on Tuesday, the 16th of December,

13  because I am not going to summon lawyers into court between

14  December 19th -- between Monday, December 22nd, and Monday,

15  January 5th, unless someone -- and I don't think it's the

16  case in this case -- is looking for a temporary restraining

17  order.  I'm not going to make any lawyers come into Federal

18  Court.

19           If you could file the replies -- file them as early

20  as you want; but if you could file them by Tuesday the 16th,

21  then unless -- if someone tells me they think they're going to

22  have troubles because of a trial schedule somewhere else, we'd

23  probably set argument for sometime the week of January 5th or

24  later in the week of January 19th.

25           I have a criminal trial the 12th that I think will

1  last about a week.  But if you could get the replies in by the

2  16th, that gives me plenty of reading time, and then we would

3  tentatively look at an argument date the week of January 5th.

4  What's everyone think about that?  Let's hear from the moving

5  party's side first.  How does that schedule work for you?

6          MR. LANTIER:  Your Honor, this is Mr. Lantier again,

7  and that is a good schedule from our perspective.  The one

8  thing that I would mention is Your Honor referred to the week

9  of January 19th.  That is the one week in January that would

10  not work for us, but the week of January 5th is good.

11          THE COURT:  Okay.  What about the –– and,

12  Mr. Lantier, remind me; you represent Erie?

13          MR. LANTIER:  Your Honor, we represent Erie and

14  Highmark along with Mr. Ebken and his firm, Gordon & Rees.

15          THE COURT:  Mr. Winters, what do you think about

16  arguments sometime the week of January 5th?

17          MR. WINTERS:  That sounds good and will work.

18          THE COURT:  Mr. Gilliland, I'll keep coming back to

19  you until you tell me not to.  From the Plaintiffs' side, what

20  do you think about argument the week of January 5th?

21          MR. GILLILAND:  Your Honor, unfortunately for me that

22  is the week of my –– well, fortunately I guess I should say, if

23  my wife would ever read this, but that is the week of my

24  20th anniversary.  Otherwise, that week would work, but –– so

25  I'd have to beg off if at all possible, if we could find

1   another week.

2          THE COURT:  We will.  We'll get a day for you folks.

3   I don't think we'll need a whole day.  We'll get you a day in

4   January.  What I'll do is take a look at a couple dates and

5   then once the case is consolidated so I only have to enter one

6   order, I'll post several available dates that are not in the

7   week of the 19th and not in the week of the 5th of January,

8   and we'll get you folks in for argument so that we can take it

9   up then.

10          And I'll count for purposes of that conversation the

11   first week of February for these purposes will be in January,

12   and then we'll get you folks all set for the same date.  So if

13   we do Wednesday, November 26th, as the date for responses on

14   motions to dismiss in all three cases, not later than Tuesday,

15   December 16th for any replies that anyone wants to file in

16   support of their motion, I'll post some dates for argument,

17   we'll do them all in one shot here in Pittsburgh, and we'll

18   avoid the two weeks that have been identified by counsel.

19          Anyone see a problem with that plan of action?

20          MR. LANTIER:  No, Your Honor.

21          THE COURT:  Okay.  Well, then, that's what we'll do.

22   Mr. Gilliland, let me ask you two other questions, and again

23   you can lateral this to someone else if you think it's the

24   better way to go from your side of things.

25          I noted that when each of these cases were filed on

1   the civil docketing form, on the second page they were all

2   listed — each of the three cases was listed as a related case

3   to Civil Actions 14-832 and 13-740.  I suspect there might have

4   been a recusal or something somewhere in here that did not

5   cause them to go to the same judge, but they've all ended up

6   with me, which is fine, happy to have you — yes, sir?

7            MR. SNEATH:  Your Honor, this is Henry Sneath —- this

8   is Henry Sneath.

9            There was —- Judge Schwab recused himself.  I think

10  the related case —- at least the one that we listed was the

11  PNC.  You know, some of these were served against PNC and

12  Judge Schwab was assigned these three cases and he recused

13  himself and that's how they are with you.

14           THE COURT:  That's fine, that's how it works.  And

15  I — we put together a little chart here to see the overlap of

16  the patents, and it looks as though the '02 patent which is at

17  issue in 832 is also at issue in each of these three cases, and

18  the '298 patent which is claimed to be at issue in the Erie

19  case is also involved in each of those cases.

20           Mr. Sneath, are those cases still stayed because of

21  ongoing administrative proceedings or what's going on with

22  those two related cases or checked as related cases?

23           MR. SNEATH:  We were just talking about this this

24  morning.  Does somebody know?  I think the one might have been

25  stayed.  I'm not sure of the current status.  Does anybody else

1    know the answer to that?  I'm not sure I know right now.

2           MR. GILLILAND:  This is Derek Gilliland with the

3    Plaintiff; and we double checked after a conversation I had

4    with Mr. Sneath this morning.  I believe the PNC cases are all

5    stayed currently.

6           THE COURT:  Okay.

7           MR. LANTIER:  Your Honor, this is Greg Lantier.

8    We're involved in the PNC cases, representing PNC.

9           So this — the status is as follows:  There was a —

10   the first civil action was filed in May of 2013.  It involved

11   five patents including the '298 patent that is at issue in the

12   Erie case before Your Honor.  On behalf of PNC and another

13   financial services institution that was sued in a different

14   jurisdiction by Intellectual Ventures, we moved the Patent

15   Office to reconsider those patents, which they granted with

16   respect to all of the patents except '298.

17          As a result of the motions being filed, the parties

18   before the Patent Office, the parties Intellectual Ventures and

19   PNC, jointly asked Judge Schwab to stay the first civil action

20   until all of the Patent Office proceedings including any

21   appeals are resolved, which Judge Schwab did.

22          The second case was then filed in the middle of 2014,

23   in June of 2014.  And that involved the '002 patent before

24   Your Honor.  It also — the '298 patent was again asserted, but

25   again some different PNC related entities and two other patents

1   were included –– three other patents were included as well.

2   Judge Schwab decided to consolidate the second action with the

3   first action, and the result of that is that the stay that was

4   entered in the first action remains in place and will remain in

5   place until the final resolution of those covered business

6   method review proceedings before the Patent Office and the

7   Court of Appeals for the Federal Circuit.

8          THE COURT:  Okay.  And so the next question that I

9   could not figure out the answer to or the likely answer to on

10  my own is if these three cases are related to those two cases

11  and those two cases are stayed, apparently with some good

12  reason, why wouldn't or shouldn't that stay carry over to these

13  cases?  And I'm –– I suspect there's an answer, but I could not

14  readily figure it out.

15         MR. GILLILAND:  Your Honor, this is Derek Gilliland

16  on behalf of Intellectual Ventures.

17         And my understanding –– and Greg can correct me if

18  I'm wrong –– but the stay in the PNC case is primarily as a

19  result of either a business method review or interparty reviews

20  having been granted on patents at issue in that case.

21  Currently there are petitions for interparty review of the '298

22  and the '002 patents pending, but those petitions have not

23  reached the stage where the patent owner, Intellectual

24  Ventures, has had to file a response yet and they have not been

25  instituted yet.

 1            THE COURT:  And they're not at the guts of the reason

 2     the other case was stayed.

 3            MR. GILLILAND:  That's my understanding.

 4            MR. LANTIER:  Your Honor, if I may —

 5            THE COURT:  This is Mr. Lantier?

 6            MR. LANTIER:  Yes.  Was that Mr. Gilliland or

 7     Mr. Sneath?

 8            MR. GILLILAND:  This is Derek Gilliland.

 9            MR. LANTIER:  Sorry, thank you.

10            The original stay in the PNC case was, as

11     Mr. Gilliland said, based on the first set of patents that

12     Intellectual Ventures asserted being put into or petitioned for

13     review before the Patent Office.  One slight clarification is

14     that the stay was not — the stay was entered before — as is

15     the case here, the stay was entered before Intellectual

16     Ventures responded to the petitions.  And Intellectual Ventures

17     was a joint requester of the stay.  That's just a slight

18     factual clarification.

19            I think to your larger point, the '002 patent and the

20     '298 patent were not — those are — those are separate from

21     the — well, sorry.  Those patents were not directly the reason

22     for the stay of the PNC action.  However, I think that

23     depending on how Your Honor decides the motions to dismiss,

24     there may be a similar reason to stay this case in that with

25     respect to the '002 patent and the '298 patent at least there

1   are proceedings before the Patent Office currently which may

2   render those patents invalid.  And as Your Honor may be aware,

3   some of the provisions of the America Invents Act support

4   staying of civil actions to allow those expedited validity

5   reviews to take place in the Patent Office.  But I believe that

6   at this point it's premature and we would bring any motion to

7   stay to Your Honor's attention at the right time.

8            THE COURT:  Okay.  That makes sense.

9            Second question.  And, Mr. Gilliland, you can answer

10  this or Mr. Sneath —— and this is more curiosity.  I couldn't

11  help but notice we now have the appearances of ten —— count

12  them —— ten lawyers for the Plaintiffs in the cases.  Is there

13  something I ought to be aware coming down the pike that might

14  require that amount of cavalry or can someone help me have a

15  better understanding why that is?  Happy to have you all here,

16  but I'm just curious.

17           MR. GILLILAND:  Well, two parts.  This is

18  Mr. Gilliland.

19           And, Your Honor, two parts was, one, I was in

20  Pennsylvania not too long ago taking depositions and I

21  explained to them how nice the city is now and everybody wants

22  to see it.  And the second part of it is I've run into issues

23  before in cases where we get into depositions that of course to

24  properly question a witness an attorney should have an

25  appearance in the case, so as a —— an initial matter, we just

1    get — have anybody who might be involved in that process in

2    the case go ahead and file a notice of appearance so that any

3    of the team is available for depositions and other things as

4    the case moves forward.

5              THE COURT:  And there's a logic to that and again no

6    objection or problem on the Court's part.  It just was sort of

7    record setting in my limited experience.  I thought I would

8    check in on that.

9              Let me ask one other question before I see if anybody

10   else has anything to bring up.  If we held argument sometime

11   the week of February 2nd, 2015, is anyone aware right now

12   that that week is problematic?

13        (No response.)

14             THE COURT:  Okay, we'll probably set a date for

15   sometime that week and we'll have a better sense once we get

16   all the briefs in.

17             Let's start with Plaintiffs' counsel, is there anyone

18   on behalf of Intellectual Ventures that believes there's

19   something we ought to take up today that we haven't spent any

20   time on yet?

21             MR. GILLILAND:  Your Honor, this is Derek Gilliland

22   again on behalf of Intellectual Ventures, and I do not have and

23   am not aware of any additional things that we would like to

24   take up.

25             THE COURT:  Okay.  On behalf of the Erie/Highmark

1    parties?

2              MR. LANTIER:  Nothing further, Your Honor, thank you.

3              THE COURT:  Okay.  And on behalf of Old Republic?

4              MR. WINTERS:  Nothing further, Your Honor; this is

5    Vern Winters, thank you.

6              THE COURT:  Okay.  Miss Lipman, was there anything we

7    intended on speaking with counsel about that we've somehow left

8    off the list?

9              MS. LIPMAN, LAW CLERK:  No, Judge.

10             THE COURT:  Okay.  So we're going to enter a text

11   order that sets all of those response dates and a targeted date

12   for oral argument.  Because I sense we may have one or more

13   parties coming from out of town, I'll probably set the argument

14   for either late morning or very early afternoon so that

15   people's travel schedule out of town can be accommodated,

16   unless everyone from out of town is coming the night before, in

17   which case I'm happy to get you going early in the morning.

18             Would that make more sense, Mr. Sneath, what do you

19   think?

20             MR. SNEATH:  Well, all I have to do is take a brief

21   walk up the street, so I leave that more to the out of town

22   folks.  If it's a Monday, I guess you have to consider Sunday

23   travel for some.

24             THE COURT:  Right.

25             MR. SNEATH:  I'll let them speak.

1              THE COURT:  For the folks out of town, would it be

2    better if we set it for like nine-thirty or ten o'clock, that

3    would let D.C. people come in that morning if they wanted and

4    the West Coasters and Texans to come the night before and get a

5    decent flight out of here in the afternoon.  Does that make

6    more sense?

7              MR. LANTIER:  Your Honor, this is Greg Lantier.  I

8    think given the time of year, we'll probably all come the night

9    before, just because of the risk of travel delays and whatnot.

10   So I wouldn't -- unless others have a different view, I think

11   any time in the morning would be good for the parties.

12             THE COURT:  Okay.

13             MR. WINTERS:  This is Vern Winters.  We echo those

14   remarks.

15             THE COURT:  And, Mr. Gilliland, from Texas, does that

16   make sense from your end?

17             MR. GILLILAND:  That makes perfect sense, Your Honor.

18             THE COURT:  We'll set it for the first thing in the

19   morning and that way folks can get out of town.  Anyway, we'll

20   set that case management or that scheduling order.  It will be

21   a text order.  Then we'll wait to see being filed by

22   Mr. Winters something labeled consent or joint regarding

23   pretrial coordination of these cases.  That will lead to

24   another order that will be along the lines that I mentioned.

25   Otherwise, we'll just keep an eye on the docket as the briefing

1   comes in.

2            Now you've all seen this on the court's web site and

3   I know Mr. Sneath and Mr. Ebken as our lawyers here in

4   Pittsburgh are aware of this.  If there's a problem that comes

5   up along the way, that's what we're in business here for.  All

6   I would ask is that you folks talk amongst yourselves first to

7   identify what the problem is or if there's just something that

8   the Court needs to get involved in, what the agenda would be,

9   agree on that, pick one in your midst to call Miss Lipman and

10  say we need a telephone conference, and we'll do our best to

11  get you scheduled the same day to iron anything out that you

12  think I need to get involved in.

13           Ms. Hall has taken this all down.  She's not going

14  make a transcript unless you or your clients need one; and if

15  you do, just contact Ms. Hall directly and she'll be happy to

16  help you out.

17           Ms. Hall, is there anything you need for the record?

18           MRS. HALL, COURT REPORTER:  No, there is not, thank

19  you.

20           THE COURT:  Is there anyone on the call who has a

21  reason we cannot conclude the conference at this point?

22               (No response.)

23           THE COURT:  Well, everyone, thank you for your

24  preparation and consultation with one another.  That's what

25  makes the Court's job all the easier.  We'll get our orders

1    out.  We'll look for your motion.  And then we'll be working

2    together over the next couple of months at least, if not

3    longer.  If there is a turn of events that makes a stay of some

4    part of this case appropriate given the matters we've heard,

5    I'll rely on counsel to bring that to the Court's attention.

6    Otherwise, we'll just proceed ahead at this end.

7              Thank you all very much.

8              ALL COUNSEL:  Thank you, Your Honor.

9              (Concluded at 10:15 a.m.)

10                   C E R T I F I C A T E

11   I, Shirley Ann Hall, certify that the foregoing is a correct

12   transcript for the record of proceedings in the above-titled

13   matter.

14

15

16                         s/Shirley Ann Hall
                           Shirley Ann Hall, RDR, CRR
17                         Official Court Reporter

18

19

20

21

22

23

24

25