# EXHIBIT 1



UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERANTH, INC., <br><br> Plaintiff, <br><br> v. <br><br> GENESIS GAMING SOLUTIONS, INC., ET AL. <br><br> Defendants. | CASE NO. SACV 11-00189 AG (RNBx) <br><br> (Consolidated with SACV 13-00720 AG (RNBx)) <br><br> ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE '969 PATENT UNDER 35 U.S.C. § 101 |

## 1. **INTRODUCTION**

Plaintiff Ameranth, Inc. ("Plaintiff") alleges that Defendants California Commerce Club, Inc. ("Commerce"), Genesis Gaming Solutions, Inc. ("Genesis"), and IT Casino Solutions, LLC ("ITCS") (collectively, "Defendants") infringe three patents, including U.S. Patent No. 8,393,969 ("'969 Patent"), titled "Products and Processes for Operations Management of Casino, Leisure and Hospitality Industry." (Compl., SACV 13-00720, Dkt. No. 1; Compl., SACV 11-00189, Dkt. No. 1.) The '969 Patent claims computerized systems and methods for monitoring a physical casino poker game.

Commerce and Genesis filed a motion for Summary Judgment of Patent Invalidity of the '969 Patent ("Motion") on October 7, 2014. (Dkt. No. 72 (unless specified, docket entries in this Order refer to SACV 13-00720, the case in which Defendants filed the Motion).) ITCS joined in the Motion on October 13, 2014. (Dkt. No. 73.) Defendants ask the Court to rule that the asserted claims fail 35 U.S.C. § 101 because they are directed to the abstract idea of "a customer loyalty program directed to poker players," without adding "significantly more" to that abstract idea. (Dkt. No. 72 at 8, 13).

Plaintiff filed an opposition on October 20, 2014. (Dkt. No. 74.) Defendants filed a reply on October 27, 2014. (Dkt. No. 76.) The Motion is DENIED.

## 2. **BACKGROUND**

Plaintiff filed this case on February 2, 2011, asserting infringement of United States Patent Nos. 7,431,650 ("'650 Patent") and 7,878,909 ("'909 Patent"). (Compl., SACV 11-00189, Dkt. No. 1 at 8, 12.) On August 29, 2011, the Court granted the parties' stipulation to stay the case pending reexaminations of the '650 and '909 Patents. (SACV 11-00189, Dkt. No. 64.) On May 6, 2013, Plaintiff filed Case No. SACV 13-00720, asserting the '969 Patent, which issued on March 12, 2013. On August 9, 2013, the Court lifted the stay in SACV 11-00189 because the USPTO had completed its reexaminations of the '650 and '909 Patents. (SACV 11-00189, Dkt. No. 87.) On August 12,

2

2013, the Court ordered Case No. SACV 13-0720 consolidated into Case No. SACV 11-0189. (SACV 11-00189, Dkt. No. 88.)

The Court issued its Claim Construction Order on May 2, 2014. (SACV 11-00189, Dkt. No. 164.) On August 4, 2014, the Court granted in part and denied in part Commerce's motion for summary judgment of non-infringement of the '650 Patent. (SACV 11-00189, Dkt No. 197.) Genesis's motion for summary judgment of non-infringement of the '650 and '909 Patents is set for hearing on December 15, 2014. (Dkt. No. 210.) Trial is set for February 10, 2015. (Scheduling Order, Dkt. No. 90.)

## 3. LEGAL STANDARD

### 3.1 SUMMARY JUDGMENT

Summary judgment is appropriate where the record, read in the light most favorable to the non-moving party, shows that "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden initially is on the moving party to show the absence of a genuine issue of material fact or that the non-moving party will be unable to make a sufficient showing on an essential element of its case for which it bears the burden of proof. *Celotex*, 477 U.S. at 322-23. Only if the moving party meets its burden must the non-moving party produce evidence to rebut the moving party's claim. If the non-moving party establishes the presence of a genuine issue of material fact, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citing *Celotex*, 477 U.S. at 322).

**3.2  PATENTABLE SUBJECT MATTER**

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "[T]his provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The Supreme Court has "described the concern that drives this exclusionary principle as one of pre-emption." *Id.* That is, "[l]aws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work," and "monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws. . . . *see* U.S. Const., Art. I, § 8, cl. 8 (Congress 'shall have Power . . . To promote the Progress of Science and useful Arts')." *Id.* (some internal citations, quotations, and modifications omitted).

"Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more, thereby 'transform[ing]' them into a patent-eligible invention." *Id.* (citations omitted.) The Supreme Court has established a two-part test to make that distinction. "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, '[w]hat else is there in the claims before us?'" *Id.* at 2355 (quoting *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1296-97 (2012) (citation omitted)). "To answer that question, we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1297-98). "We have described step two of this analysis as a search for an 'inventive concept'—i.e., an element or combination of elements

4

that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294).

Judges of this Court have recognized that the two steps of the *Alice/Mayo* test "are easier to separate in recitation than in application." *Wolf v. Capstone Photography, Inc.*, Case No. CV 13-09573 CAS, Dkt. No. 49 at 17 (C.D. Cal. Oct. 28, 2014) (quoting *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-00742 GW, 2014 WL 4407592, at *2-3 (C.D. Cal. Sept. 4, 2014) ("Describing this as a two-step test may overstate the number of steps involved.")). But it is clear that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358.

Recitation of generic computer implementation does not transform an abstract idea because it is insufficient, for patent eligibility purposes, to either state an abstract idea "while adding the words 'apply it'" or to limit the use of an abstract idea "to a particular technological environment." *Id.* (quoting *Mayo*, 132 S.Ct. at 1294, *Bilski v. Kappos*, 561 U.S. 593, 610-611 (2010)). "Stating an abstract idea while adding the words 'apply it with a computer' simply combines those two steps, with the same deficient result. Thus, if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' that addition cannot impart patent eligibility." *Id.* (citations omitted).

## 4. ANALYSIS

Defendants assert that "[t]he '969 Patent is directed to the abstract concept of a customer loyalty program, and more specifically to computer automation of a player rewards system within a poker room." (Mot., Dkt. 72 at 1.)

### 4.1 THE SYSTEM CLAIMS

5

1 As to the system claims, the Motion falters at the first step of the *Alice* analysis: identifying
2 the abstract idea to which the claims are purportedly directed. Plaintiff points out that the
3 independent system claim, claim 27, does not include a customer loyalty or compensation system at
4 all. (Opp'n, Dkt. No. 74 at 13-14.) And of the eleven asserted claims that depend from claim 27,
5 only one requires a compensation system. That makes "a customer loyalty program" a poor
6 candidate for the abstract concept allegedly wrapped up in the claims. Claim 27 provides:

> 27. A computer system for monitoring a physical casino poker game comprising:
>     a. a system database;
>     b. software enabled to set up and maintain poker game types and tables associated with said poker game types, wherein said software is configured to provide real time table availability status in the system database;
>     c. software enabled to facilitate the receipt of a poker player check-in input including player identification information and the player's poker game type preference and identifying the particular player from the player check-in input utilizing a player database which includes information regarding previously registered players;
>     d. software enabled to determine table availability in real time for said particular player's poker game type preference;
>     e. software enabled to add said particular player to a waitlist for said poker game type preference if no matching table is currently available;
>     f. software enabled to display indicia identifying said particular player on a public waitlist display, said public display including the display of information comprising at least two different poker game types and waiting players for each game type and wherein said display is suitable for viewing by a multiplicity of players or prospective players throughout the poker room;

    g. software enabled to select said particular waiting player for an available table matching said waiting player's selected game type when it is available and then assigning said player to that available table;

    h. software enabled to receive check-out input regarding said particular player containing player identification information; wherein said software is configured to identify the particular player from the player check-out input information, to remove the player from the game and from the table, to update the table availability to reflect that a seat for the particular poker game type at said table is currently available;

    i. software enabled to calculate the total elapsed time between receiving the check-in input and the check-out input of the particular player, wherein said software is configured to store the calculated playing time of said particular player in at least one of the system database or the player database;

    j. wherein all of the said software is enabled to operate as a synchronized system.

There is nothing in claim 27 about a loyalty program. In their reply brief, Defendants respond to this absence by arguing that limitation "i" involves storing playing time, and "the purpose of calculating and storing the playing time is part and parcel to the customer loyalty program." (Reply, Dkt. 76 at 5.) Defendants cite no authority for the proposition that the abstract idea in step one of the *Alice/Mayo* test can be something that the claimed invention might be useful for, as opposed to what the claim itself covers. And Defendants do not show that calculating and storing playing time is only useful for a customer loyalty program.

Defendants then ask: "Alternatively, if claim 27 is not directed to a customer loyalty program, the court must still determine what is the abstract idea behind claim 27?", and suggest that another possible abstract idea candidate would be "monitoring a physical casino poker game," which is the language of the claims' preamble. (*Id.*) From the phrasing, it is unclear whether Defendants really intended to conclude that statement with a question mark. But whether intended as a question or not, the answer is "no," the Court must not so determine.

It is not the Court's role to develop winning theories for the parties. *See Data Distrib. Techs., LLC v. Brer Affiliates, Inc.*, Civ. No. 12-4878, 2014 WL 4162765, at *13 (D.N.J. Aug. 19, 2014) (declining to formulate for the plaintiff a plausible claim construction that would show an inventive concept sufficient to pass 35 U.S.C. § 101). Defendants bear several burdens here. "A patent shall be presumed valid." 35 U.S.C. § 282. Invalidity must be shown by "clear and convincing evidence." *See Wolf*, CV 13-09573 CAS at 9, n.1 (C.D. Cal. Oct. 28, 2014) (holding that the "clear and convincing" standard applies to § 101 determinations). And as the party moving for summary judgment, Defendants have the burden of establishing the absence of genuinely disputed issues of material fact. *Celotex*, 477 U.S. at 323. And Courts "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Defendants have not sustained their burdens, and the Court cannot be asked in the reply papers to sustain it for them.

Defendants argue that the "Opposition does not dispute that 'poker has been played in gambling houses, riverboats, speakeasies and casinos in the United States for the past three hundred years,'" and that "[t]he abstract concept of 'monitoring a physical casino poker game' thus predates the abstract concept of a 'customer loyalty program' for casinos." (Reply, Dkt. No. 76 at 5.) First, it is unclear what role Defendants believe the relative age of these abstract concepts plays in the § 101 analysis. Second, Defendant ignores that the claims do not purport to cover the game of poker itself: they require nothing about cards, bets, or the mechanics of play. While it might be undisputed that people have hosted and watched poker games for as long as they have been played, that does not establish that the type of monitoring and player management required by the claims is an idea of similarly hoary provenance.

Therefore, Defendants have not established even the first step of the *Alice/Mayo* test is satisfied for the system claims.

### 4.2 THE METHOD CLAIMS

Defendants theory is slightly better for the method claims. Independent claim 1 concludes with steps l and m, "transmitting the total elapsed time to a compensation system" and "calculating

an amount of compensation for the particular player based on the total elapsed time and storing the calculated compensation in at least one of a system database or the player database." But even so, it is hard to say that claim 1 is directed to "the abstract concept of a customer loyalty program, and more specifically to computer automation of a player rewards system within a poker room" when it includes key steps that are not related to the compensation system recited in the claim.  Claim 1 provides:

> 1. A computerized method for monitoring a physical casino poker game comprising:
> a. receiving a poker player check-in input containing player identification information and player poker game type preference;
> b. identifying a particular player in a player database from the player check-in input;
> c. determining the seating availability for said particular player's poker game type preference from a table availability database including game types in real time;
> d. adding said particular player to a waitlist for said poker game type preference if no matching table for said game type is currently available;
> e. displaying indicia identifying said particular player on a public waitlist display, said public display including the display of information comprising at least two different poker game types and waiting players for each game type and wherein said public display is suitable for viewing by a multiplicity of players or prospective players throughout the poker room;
> f. selecting a table for said particular waiting player matching said waiting player's selected game type when it is available and then assigning said player to that available table;
> g. receiving check-out input regarding said particular player containing player identification information;
> h. identifying the particular player from the player check-out input information;

         i. removing the player from the game and from the table;

         j. updating the table availability to reflect that a seat for the particular poker game type at said table is currently available;

         k. ascertaining the total elapsed time between receiving the check-in input and the check-out input of the player;

         l. transmitting the total elapsed time to a compensation system; and

         m. calculating an amount of compensation for the particular player based on the total elapsed time and storing the calculated compensation in at least one of a system database or the player database.

Steps that could be omitted while leaving intact a player reward system include at least steps c, d, e, and f, which cover determining seating availability, adding players to waitlists, putting player identifying information on a public waitlist display, and assigning a player to a table. Defendants have not persuasively explained why all this should be ignored when identifying the abstract idea to which the claim is directed.

And even assuming that those elements should be ignored in the first step, as to the second *Alice/Mayo* step, asking whether there is "significantly more" in the claims, Defendants have not shown why these other elements are insufficient. Put differently, one could implement many different player reward systems that do not infringe the claims. *See Eclipse IP*, 2014 WL 4407592 at *5 ("the question in the abstract idea context is whether there are other *ways* to use the abstract idea in the same field," which can show that the preemption concern is not implicated). Thus, Defendants have not shown how these claims implicate "the basic underlying concern that these patents tie up too much future use" of the abstract idea of a player reward system. *Mayo*, 132 S. Ct. at 1302.

### 4.3 THE ASSERTED PRIOR ART

Defendants argue that certain prior art shows that the abstract concept of "a customer loyalty program directed to poker players . . . was practiced prior to the date of the invention . . . ." (Mot., Dkt. No. 72 at 8.) Defendants cite one of Plaintiff's press releases stating that "in 2004 . . . Ameranth designed and developed a software program that automates previously performed manual task[s] associated with operating a poker room." (Mot., Dkt. No. 72 at 12 (citing Ex. 12, Dkt. No 72-16 at 303).) Of course, mere generic computer implementation fails to transform an abstract idea into a patent-eligible invention: transformation requires an "inventive concept . . . "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S.Ct. at 2355 (quoting *Mayo*, 132 S.Ct. at 1294).

But automation of manual tasks is not necessarily abstract. U.S. Patent No. 72 (1794) to Eli Whitney for a cotton gin is one familiar example of a solidly tangible automating machine. Of course, one could posit a way of drafting even a claim to a cotton gin in a way that renders it abstract: "a machine comprising metal and wood configured to remove cotton seeds from cotton fiber." Read most charitably, Defendants are arguing something like that—that the prior art shows that all of the steps in the claimed method were performed together previously, and the '969 Patent merely says "do that, on a computer," neatly fitting the *Alice* mold. But Defendants rely on multiple combinations of references to make that argument, and as couched by Defendants, those combinations seem more like an obviousness argument under 35 U.S.C. § 103 than a patent eligibility analysis under 35 U.S.C. § 101. And Defendants have not established the admissibility of the key evidence they rely upon for that argument.

#### 4.3.1 The Kessman Testimony is Inadmissible

The most analogous prior art appears to be the description of the paper-and-pencil system at a casino described by Marc Kessman, an inventor of the '969 Patent. In testimony in a previous case, Kessman stated that at some time before his invention, the Mohegan Sun casino tracked poker

11

1  players' time on cards that would be manually tabulated.  (Mot., Dkt. No. 72 at 9 (citing Kessman
2  Depo, Ex. 8, Dkt. No. 72-12 at 40:8-41:9).)  Defendants combine this purported practice with a
3  poker book's description of pre-invention poker room waitlist practice (discussed in Section 4.4.2),
4  and a patent describing player rewards system in the prior art.  (Mot., Dkt. No. 72 at 10-11.)

5  Kessman gave the testimony at issue at his deposition in *Ameranth, Inc. v. Kessman*, CV 08-851
6  JAP, 2009 WL 3156749 (D. Del.), which was not a patent case.  "Plaintiff objects to the Kessman
7  testimony because the cited testimony lacks foundation (Fed. R. Evid. 901, 902); is inadmissible
8  hearsay evidence (Fed. R. Evid. 801, 802), and the citations fail to state how the witness has personal
9  knowledge of the alleged facts asserted (Fed. R. Evid. 602)."  (Objections to Evidence Offered in
10  Supp. of Mot. ("Objection"), Dkt. No. 75 at 4.)  Plaintiff acknowledges that a deposition may be
11  used as substantive evidence in other litigation under FRE 804(b)(1) if Kessman was unavailable
12  under FRE 804(a), but argues that there has been no such showing in this case.  (*Id.*)

13  Defendants respond that Kessman is unavailable because he lives in New York and the
14  Court denied Defendants' *ex parte* application to allow his deposition after the discovery cut-off.
15  (Reply, Dkt. No. 76 at 3 n.4.)  But Defendants do not show that Kessman was not subject to
16  compulsory process during the discovery period.  And Defendants cite no authority for the
17  proposition that their own inability to meet the standard for *ex parte* relief transforms Kessman into
18  an unavailable witness.  Defendants served Kessman with a subpoena in October 2013, initiated a
19  request to depose him in January 2014, and then waited over six months to "review any documents
20  Mr. Kessman might produce" before again requesting his deposition in August 2014.  (SACV
21  11-00189 AG (RNBx), *Ex Parte* Application, Dkt. No. 201 at ¶¶ 7, 10.)  In short, that Defendants
22  did not seek to compel Kessman's deposition does not make him unavailable for purposes of
23  summary judgment.

24  Defendants also do not show, as required by FRE 804(b)(1)(B), that Plaintiff had "an
25  opportunity and similar motive to develop [the testimony] by direct, cross-, or redirect
26  examination."  The prior case was "a breach of contract and fraud action having nothing to do with
27  the patents in suit."  (Objection, Dkt. No. 75 at 5.)  "The 'similar motive' requirement is inherently
28  factual and depends, at least in part, on the operative facts and legal issues and on the context of the

1  proceeding." *U.S. v. Geiger*, 263 F.3d 1034, 1038 (2001); *see also Lohrmann v. Pittsburgh Corning Corp.*,
2  782 F.2d 1156, 1160-61 (4th Cir. 1986) (party who deposed witness in a first case involving a
3  different cause of action did not have the same motive to develop the testimony as the second case,
4  even though both cases involved the party's attempt to avoid liability for asbestos exposure).  Nor
5  do Defendants show that the Kessman deposition may be used due to exceptional circumstances
6  under Fed. R. Civ. P. 34(a)(4)(E) or that the use of the deposition is authorized because this is "a
7  later action involving the same subject matter between the same parties." Fed. R. Civ. P. 32(a)(8).
8  The Court therefore sustains Plaintiff's objection to the Kessman Declaration.

### 4.3.2   The Carson Book is Inadmissible

Another key item of evidence cited by Defendants is Carson, "The Complete Book of Hold 'Em Poker: A Comprehensive Guide to Playing and Winning" (2001) ("Carson").  Defendants use Carson to establish the fact that poker room waitlists were managed in a certain way before the invention. (Mot., Dkt. No. 72 at 11; Reply, Dkt. No. 76 at 16.)  While Carson appears to be prior art under 35 U.S.C. § 102, Plaintiff objects that the book is being used as expert opinion without a showing that the author is qualified expert, and that Defendants use the book to establish the truth of the matter asserted without establishing a hearsay exception.  (Objection, Dkt. no. 75 at 5-7.) Plaintiff argues prophylactically that Defendant has not qualified the book as a learned treatise under FRE 803(18).  (*Id.* at 6-7.)  Defendants do not respond to Plaintiff's objections to Carson.

Carson is hearsay, and no hearsay exception has been shown.  The Court sustains the objection to Carson on that basis.

### 4.3.3   Conclusion

Therefore, Defendants have not demonstrated that the claims simply cover generic computer implementation of the way poker rooms were managed before the invention.

### 4.4 THE CITED RECENT USPTO ACTIVITY IS IMMATERIAL

ITCS's Notice of Joinder points out that a USPTO examiner recently rejected one of Ameranth's pending patent applications because (1) it was not patentably distinct from the '969 Patent, and (2) it failed 35 U.S.C. § 101. (Dkt. No. 73-2 at 2-3, U.S. Pat. App. No. 13/759,203, August 21, 2014 Non-Final Rejection at ¶¶ 4-21).) In response to the rejection, Plaintiff revised the claims by changing several terms, such as: "processor" to "application software program server," "public display" to "public display device," associating each said server with a system database, and further limiting the claims to "poker" tournaments. (Dkt. No. 73-4, U.S. Pat. App. No. 13/759,203, September 2, 2014 Response to Office Action at 1-2.)

These changes are minor. But on November 5, 2014, the USPTO issued a notice of allowability. (Dkt. No. 80-1.) So, what started as a point for the Defendants has shifted to a point for the Plaintiff. But the back-and-forth at the USPTO on a related but unissued patent is of very limited relevance here. "The [PTO and court] take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions." *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988).

The patent actually before the Court, the '969 Patent, is presumed valid. While it is interesting that the USPTO, post-*Alice*, first rejected a continuation application with similar claims and then allowed it, the Court must ultimately draw its own conclusions about the patent eligibility of the '969 Patent.

//
//

**5.** **DISPOSITION**

An inability to articulate an abstract idea to which claims are directed may be a clue that those claims satisfy § 101. But the Court here expresses no opinion on the ultimate issue presented by the Motion. The Court holds only that Defendants have not satisfied their burden on summary judgment.

The Motion is DENIED.

IT IS SO ORDERED.

DATED: November 12, 2014

_____
Andrew J. Guilford
United States District Judge

15