# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) ) | Civil Action No. 1:14-cv-00220-MRH |
| | ) | FILING IN LEAD CASE |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | |
| | ) | Time: 9:00 a.m. |
| ERIE FAMILY LIFE INSURANCE COMPANY; | ) | Date: April 14, 2015 |
| ERIE INDEMNITY COMPANY; | ) | Place: Courtroom No. 6A |
| ERIE INSURANCE COMPANY; | ) | |
| ERIE INSURANCE EXCHANGE; | ) | The Honorable Mark R. Hornak |
| ERIE INSURANCE PROPERTY & CASUALTY | ) | |
| COMPANY; and | ) | ELECTRONICALLY FILED |
| FLAGSHIP CITY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) ) | |
| | ) | Civil Action No. 2:14-cv-01131-MRH |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | |
| | ) | |
| HIGHMARK INC.; | ) | |
| HM INSURANCE GROUP, INC.; | ) | |
| HM LIFE INSURANCE COMPANY; | ) | |
| HIGHMARK CASUALTY INSURANCE | ) | |
| COMPANY; and | ) | |
| HM CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

_____

# ERIE AND HIGHMARK DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS DUE TO LACK OF SUBJECT MATTER JURISDICTION

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     FACTS .............................................................................................................. 3

        A.      Procedural Background ........................................................................... 3

        B.      Summary of the '581 Patent Chain of Title ........................................... 3

                1.      Inventors to Aveo, Inc. ............................................................... 3

                2.      Aveo, Inc. to Sherwood Partners ............................................... 4

                3.      Sherwood Partners to AllAdvantage ........................................... 4

                4.      AllAdvantage to Alset ................................................................ 5

                5.      Alset to Expeditionary Sound .................................................... 6

                6.      Expeditionary Sound to Intellectual Ventures I LLC ................. 6

III.    ARGUMENT ..................................................................................................... 6

        A.      Legal Standards ..................................................................................... 7

        B.      The AllAdvantage Patent Assignment Did Not Convey Any Rights in the '581
                Patent Application .................................................................................. 8

                1.      The Language of the AllAdvantage Patent Assignment Is Unambiguous .. 8

                2.      The Phrase "Applications and Registrations Thereof" in the AllAdvantage
                        to Alset Patent Assignment Does Not Transfer Rights in the '581 Patent
                        Application .............................................................................. 10

                3.      The Transfer of all "Rights, Title And Interest" in "Said Patents" Does
                        Not Transfer Rights, Title and Interest in Continuations of Said Patents
                        Absent Express Language Stating Such Conveyance ............................... 12

        C.      Federal Law Does Not Automatically Transfer a Child Patent Application When
                the Parent Patent is Transferred ........................................................... 13

        D.      The Extrinsic Evidence Identified Does Not Support a Conclusion that IV Owns
                the '581 Patent .................................................................................... 14

                1.      Parol Evidence Is Irrelevant Where, As Here, the AllAdvantage Patent
                        Assignment Contains No Language That Is Reasonably Susceptible to an
                        Interpretation that It Transfers Ownership of the '581 Patent ................... 14

                2.      The Extrinsic Evidence Indicates that the Patent Assignment Did Not
                        Transfer Rights in the '581 Patent Application ......................................... 15

                3.      The Parol Evidence IV Has Identified Is Insufficient to Prove Ownership
                        of the '581 Patent .................................................................. 16

IV.     CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abbott Point of Care Inc. v. Epocal, Inc.*,
  666 F.3d 1299 (Fed. Cir. 2012)........................................................................7, 15

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010)................................................................................7

*Alpha One Transporter, Inc. v. Perkins Motor Transp., Inc.*,
  No. 13-CV-2662-H-DHB, 2014 WL 4537012 (S.D. Cal. Sept. 11, 2014)..............2, 11, 12, 19

*Alzheimers Inst. of Am., Inc. v. Avid Radiopharmaceuticals*,
  No. 2:10-cv-06908, 2011 WL 3875341 (E.D. Pa. Aug. 31, 2011) ........................18

*Bellehumeur v. Bonnett*,
  No. CV 00-863-RSWL CTX, 2006 WL 6635952 (C.D. Cal. Mar. 21, 2006), *aff'd*, 219
  F. App'x 991 (Fed. Cir. 2007) ...............................................................................14

*Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*,
  2012 WL 265838 (Fed. Cir. 2012).................................................................8, 10, 13

*E.I. Du Pont de Nemours & Co. v. Okuley*,
  2000 WL 1911430 (S.D.Ohio 2000)........................................................................13

*Euclid Chem. Co. v. Vector Corrosion Technologies, Inc.*,
  561 F.3d 1340 (Fed. Cir. 2009)........................................................................12, 19

*FURminator, Inc. v. Kim Laube & Co.*,
  758 F. Supp. 2d 797 (E.D. Mo. 2010).....................................................................12

*Gotha v. United States*,
  115 F.3d 176 (3d Cir. 1997).....................................................................................9

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
  No. 1:14-cv-00220 (W.D. Pa.)...................................................................................3

*Intellectual Ventures I LLC v. Highmark Inc.*,
  No. 2:14-cv-01131 (W.D. Pa.)...................................................................................3

*Intellectual Ventures I LLC v. Old Republic Gen. Ins. Grp., Inc.*,
  No. 2:14-cv-01130 (W.D. Pa.)...................................................................................3

*interState Net Bank v. NetB@nk, Inc.*,
  348 F. Supp. 2d 340 (D. N.J. 2004) ........................................................................10

*LG Display Co. v. AU Optronics Corp.*,
  686 F. Supp. 2d 429 (D. Del. 2010)................................................................7, 18

*Mayfair Wireless LLC v. Cellco P'ship*,
  No. CV 11-772-SLR-SRF, 2013 WL 4657507 (D. Del. Aug. 30, 2013) ................................19

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
  549 F.2d 884 (3d Cir. 1977)................................................................9

*Regents of the Univ. of N.M. v. Knight*,
  321 F. 3d 1111 (Fed. Cir. 2003)................................................................14

*Sunbeam Products, Inc. v. Wing Shing Products (BVI) Ltd.*,
  311 B.R. 378 (S.D.N.Y. 2004)................................................................19

*United Tactical Systems, LLC v. Real Action Paintball, Inc.*,
  2014 WL 6788310 (N.D. Cal. 2014) ................................18

*Univ. Patents, Inc. v. Kligman*,
  762 F. Supp. 1212 (E.D. Pa. 1991) ................................10

*VTRAN Media Techs., LLC v. Atl. Broadband Fin., LLC*,
  2008 U.S. Dist. LEXIS 91440 (E.D. Pa. Nov. 3, 2008)................................9

**STATE CASES**

*State v. Cont'l Ins. Co.*,
  55 Cal. 4th 186, 281 P.3d 1000 (Cal. 2012), *as modified* (Sept. 19, 2012) ................................16

*Winet v. Price*,
  6 Cal. Rptr. 2d 554 (Cal. App. 1992) ................................16

**FEDERAL STATUTES**

15 U.S.C. § 1060(a)(1) (2012) ................................10

35 U.S.C. § 261 ................................10

**STATE STATUTES**

Cal. Code of Civ. Pro. § 1625 ................................16

Cal. Code of Civ. Pro. § 1856(a) ................................16

## I.    INTRODUCTION

A plaintiff lacks standing to sue for patent infringement unless it can meet its burden of showing that it owns or is the exclusive licensee of the asserted patent.  In this case, plaintiffs Intellectual Ventures I and II LLC (collectively, "IV") are neither the owners nor exclusive licensees of one of the asserted patents, U.S. Patent No. 5,519,581 ("'581 patent").  The Court accordingly lacks subject matter jurisdiction to adjudicate the merits of the infringement allegations with respect to that patent and should dismiss the '581 patent from the case.

Documents recorded with the U.S. Patent and Trademark Office reveal that IV's ownership claim to the '581 patent depends on a series of six transfers.  The fourth transfer in that alleged chain, attached as Exhibit 1, is a patent assignment between AllAdvantage.com ("AllAdvantage") and Alset, Inc. ("Alset") ("AllAdvantage Patent Assignment").[1]  However, the unambiguous language of the AllAdvantage Patent Assignment is clear on its face that it does not convey any rights in the '581 patent.  To the contrary, the AllAdvantage Patent Assignment specifically identifies each patent and patent application that the document transfers, and although the '581 patent application was pending at the time of the Assignment, the '581 patent application is not among them.[2]  Determined to pursue infringement claims against the defendants nonetheless, IV now relies on the fact that the AllAdvantage Patent Assignment transfers rights to the parent of the '581, U.S. Patent No. 6,236,983 ("'983 patent"), to assert ownership of the '581 patent.  That is, IV argues that AllAdvantage's transfer of ownership as to the '983 patent effected a transfer as to all patents in the family.

---

[1]  All exhibits are attached to the Declaration of Leslie S. Pearlson.
[2]  The patent application that issued as the '581 patent, U.S. Application No. 09/844,858, was filed on April 27, 2001.  In January 2002, when the AllAdvantage Patent Assignment was executed, the '581 patent application was pending.  The '581 patent issued on February 11, 2003.

But this very argument has been rejected by numerous courts, including the Federal Circuit, which have held that each patent is a separate property right that is individually transferrable, such that the transfer of one issued patent in a patent family does not transfer ownership of other patents or applications in that family. *Alpha One Transporter, Inc. v. Perkins Motor Transp., Inc.*, No. 13-CV-2662-H-DHB, 2014 WL 4537012, at *3 (S.D. Cal. Sept. 11, 2014) (holding assignment of parent patent was not an assignment of continuation-in-part patent).

Further, IV's contention cannot be squared with the language and history of the assignment documents upon which it relies for its ownership claim. Prior assignments in the chain either explicitly conveyed title to the '581 patent or contained express language transferring all related applications to the '983 patent. But that express language was ***removed*** in the AllAdvantage Patent Assignment. Faced with this problem, IV argues that parol evidence demonstrates the parties' intent to transfer the '581 patent. However, parol evidence is not relevant to the Court's interpretation of the contract under governing California law, because there is no language in the AllAdvantage Patent Assignment that is "reasonably susceptible" to an interpretation that the '581 patent was transferred to Alset. Moreover, even if parol evidence were considered by the Court, taken as a whole, such evidence does not support IV's ownership claim.

Accordingly, defendants Erie Indemnity Co. et al. and Highmark Inc. et al. (collectively, "Defendants") respectfully request that the Court dismiss IV's patent infringement claims as to the '581 patent pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II.    FACTS

### A.    Procedural Background

On August 21 and 22, 2014, respectively, IV asserted the '581 patent against Defendants. *See Intellectual Ventures I LLC v. Erie Indemnity Co.*, No. 1:14-cv-00220 (W.D. Pa.) ("Erie Matter"), at Dkt. 1; *Intellectual Ventures I LLC v. Highmark Inc.*, No. 2:14-cv-01131 (W.D. Pa.) ("Highmark Matter"), at Dkt. 1.[3]  The '581 patent, titled "Collection of Information Regarding a Device or a User of a Device Across a Communication Link," purports to claim the idea of collecting information about a device or its user so as to, for example, analyze system performance or other potential problems with the device.  '581 patent, 1:13-22.

In both complaints, IV alleges that "Intellectual Ventures I is the owner and assignee of all right, title, and interest in and to the '581 . . . Patent[] and holds the right to sue and recover damages for infringement thereof, including past damages."  Highmark Matter, Dkt. 1 at ¶¶ 20, Erie Matter, Dkt. 1 at ¶¶ 22.  IV adds no further detail to its claims of ownership of the '581 patent in either of its complaints.

### B.    Summary of the '581 Patent Chain of Title

The assignment documents recorded with the U.S. Patent and Trademark Office show that IV's claim of ownership in the '581 patent is based on six alleged transfers, each of which are detailed below.

#### 1.    Inventors to Aveo, Inc.

On April 28 and 29, 1998, inventors William D. Hofmann and John C. Hurley assigned to Aveo, Inc. "the entire right, title, and interest" in the application that issued as the '983 patent.

---

[3]  IV has also asserted U.S. Patent Nos. 6,546,002, ("'002 patent") and 6,510,434 ("'434 patent") against Erie and Highmark, and U.S. Patent No. 7,757,298 against Erie.  Additionally, IV has asserted the '581, '434, and '002 patents against Old Republic General Insurance Group, Inc., et al. in a third action in this Court.  *See Intellectual Ventures I LLC v. Old Republic Gen. Ins. Grp., Inc.*, No. 2:14-cv-01130 (W.D. Pa.), at Dkt. 1.

Although the inventors' assignments do not expressly list the '581 patent application (which was not filed until April 27, 2001), the assignments do list the patent application number for the parent '983 patent, and include language assigning "all divisional applications, continuation applications, continued prosecution applications, continuation-in-part applications, substitute applications, renewal applications, reissue applications, reexaminations, extensions, and all other patent applications that have been or shall be filed in the United States and all foreign countries on any of said improvements."  Ex. 2, Inventors 1998 Assignment at 3.  Although the 1998 assignment of the '983 parent patent included the transfer of "the entire right, title and interest" in the application that became the '983 patent, and expressly included "continuation applications," the inventors believed it to be necessary to file a separate assignment to successfully transfer the application that issued as the '581 patent.  On April 25-27, 2001, the inventors filed an assignment explicitly for the '581 patent application, assigning "the entire right, title and interest" in the '581 application.  Ex. 3, Inventors 2001 Assignment.

### 2. Aveo, Inc. to Sherwood Partners

On May 24, 2002, Aveo executed a *nunc pro tunc* assignment to Sherwood Partners, effective April 10, 2001, assigning "the full and exclusive right, title and interest" in the '581 patent application and the '983 patent, identifying each by title, filing date, and application number.  Ex. 4, Aveo Nunc Pro Tunc at 7.

### 3. Sherwood Partners to AllAdvantage

On July 23, 2001, Sherwood Partners assigned to AllAdvantage a list of 18 patents and applications, which included the parent '983 patent, in an Asset Purchase Agreement.  Although not expressly listed by number, the '581 patent application was also assigned by the use of express language in the agreement assigning "any continuation, continuation-in-part, division,

- 4 -

reissue, reexamination, extension, renewal or substitute" of the listed patents.  Ex. 5, Sherwood

Asset Purchase Agreement at 7-8.

**4.**     **AllAdvantage to Alset**

The next assignment document in the chain of title—the assignment of interest crucial to

this motion—is the patent assignment between AllAdvantage and Alset, executed in Hayward,

California, on January 29, 2002.  Ex. 1, AllAdvantage Patent Assignment.  AllAdvantage was an

Internet startup company that advertised to Internet users by paying them a nominal fee to have

an advertising bar continually displayed on their browsers.  AllAdvantage has been dissolved and

is no longer operating.  Ex. 6, AllAdvantage Secretary of State Certificate of Standing.  Alset

was a computer and software development company incorporated in Delaware and appears to be

dissolved.  Ex. 7, Alset Delaware Standing Status.

Unlike the prior 2001 assignment from Sherwood to AllAdvantage, the 2002

AllAdvantage Patent Assignment does ***not*** state that it transfers continuation applications

relating to the identified patents and patent applications.  Instead, the AllAdvantage Patent

Assignment transfers "all right, including common law rights, title and interest in the United

States of America, Canada, the European Union, and all other countries and jurisdictions of the

world in and to said patents together with the goodwill and business symbolized by ***said patents***

***and applications*** and registrations thereof."  Ex. 1, AllAdvantage Patent Assignment at 5

(emphasis added).  Immediately preceding this language, the Patent Assignment lists the "said

patents," which are a list of 17 patents and applications.  *Id.* at 4-5.

- 5 -

The list of transferred patents includes the issued '983 patent and also three family members of the '983 patent.[4]  *Id.*  The list also includes two pending U.S. patent applications, unrelated to the '983 patent.  *Id.*  **However, the list of transferred patents and patent applications does not include the '581 patent application.**  *Id.*

### 5.      Alset to Expeditionary Sound

On February 7, 2005, Alset, Inc., purported to convey to Expeditionary Sound LLC "all of Assignor's right, title and interest in" the '581 and '983 patents, explicitly naming each by title, filing date, and patent number.  Ex. 8, Alset Transfer.

### 6.      Expeditionary Sound to Intellectual Ventures I LLC

On February 7, 2013, Expeditionary Sound LLC merged with Intellectual Ventures I LLC.  Ex. 9, Expeditionary Sound Merger.

## III.    ARGUMENT

The AllAdvantage Patent Assignment expressly enumerates the patents and applications that it purports to transfer, and the '581 patent application is not among them.  The AllAdvantage Patent Assignment is thus unambiguous—it does not assign Alset any rights to the '581 patent application.  The language to which IV points in an attempt to argue otherwise is insufficient to convey such rights.  *See infra* Part III.B.   Likewise, IV's arguments that this Court should find that IV owns the '581 patent notwithstanding the clear language in the AllAdvantage Patent Assignment, also fail.  First, federal law does ***not*** effect a transfer of ownership of a child application when rights in the parent patent are conveyed.  *See infra* Part III.C.  Second, California law, which applies to the interpretation of the language of the patent assignment,

---

[4]  Australian Patent No. 24774/99 ("Method and Apparatus for Collecting Information Regarding a Device or a User of a Device"), filed January 27, 1999; Canadian Patent Application No. 2,318,852 ("Information Collecting Agents and Rules"), filed January 27, 1999; and European Patent Office Application No. 99904362.3 ("Method and Apparatus for Collecting Information Regarding a Device or a User of a Device"), filed January 27, 1999.  All three foreign applications were titled "Collecting Information About a Computer or Its Users" in the Alladvantage Patent Assignment.  Ex. 1, AllAdvantage Patent Assignment.

prohibits consideration of parol evidence where, as here, the language of the assignment itself is clear. *See infra* Part III.D.1. Even if parol evidence was relevant, the extrinsic evidence on the whole supports the conclusion that the '581 patent application was intentionally omitted from the AllAdvantage Patent Assignment. *See infra* Part III.D.2.

### A.      Legal Standards

A plaintiff who brings suit for patent infringement "has the burden to show necessary ownership rights [in the asserted patent(s)] to support standing to sue." *Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012) (citing *Fieldturf, Inc. v. Southwest Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004)); *see also LG Display Co. v. AU Optronics Corp.*, 686 F. Supp. 2d 429, 451-52 (D. Del. 2010) ("The burden to establish standing rests on the party bringing suit." (citing *Sicom Sys. v. Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005))). If the plaintiff does not own the patent, "the suit must be dismissed, and the jurisdictional defect cannot be cured after the inception of the lawsuit." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366 (Fed. Cir. 2010) (citing *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (affirming dismissal of complaint and denial of motion to amend pleadings to substitute assignee as plaintiff when plaintiff-inventor assigned the patent prior to filing the action)).

There is a presumption that documents recorded at the Patent and Trademark Office are valid. As a result, Defendants bear the burden to demonstrate that an assignment is invalid. *Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*, 458 Fed. App'x 910, 912 (Fed. Cir. 2012) (nonprecidential) (citation omitted). However, that presumption does not overcome the words of the assignment document itself, or act to transfer a patent asset that was not transferred in the underlying document. *See id.* ("The recording of an assignment with the PTO is not a determination as to the validity of the assignment.") (citation omitted); *see also* 37 C.F.R. § 3.54

("The recording of a document pursuant to § 3.11 is not a determination by the Office of the validity of the document or the effect that document has on the title to an application, a patent, or a registration."); MPEP § 301 (9th ed. 2014) ("It should be noted that recording of the assignment is merely a ministerial act; it is not an Office determination of the validity of the assignment document or the effect of the assignment document on the ownership of the patent property.")

When considering a motion to dismiss pursuant to Rule 12(b)(1) made as a factual attack in which the defendant challenges the factual assertions made in the plaintiff's pleadings—such as is the case here—"no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). To resolve a factual attack to subject matter jurisdiction, the Court may "consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *VTRAN Media Techs., LLC v. Atl. Broadband Fin., LLC*, 2008 WL 4810299, at *2 (E.D. Pa. Nov. 3, 2008).

**B.     The AllAdvantage Patent Assignment Did Not Convey Any Rights in the '581 Patent Application**

The AllAdvantage Patent Assignment is clear on its face and transferred no rights in the '581 patent application to Alset. Therefore, no subsequent assignments in the chain can act to further transfer the '581 patent to IV. The arguments IV has raised to the contrary, *see* Ex. 10, Gilliland Email, do not survive examination.

**1.     The Language of the AllAdvantage Patent Assignment Is Unambiguous**

As set forth above, the operative language of the AllAdvantage Patent Assignment states:

- 8 -

Assignor, does hereby assign unto Assignee, all right, including common law rights, title and interest in the United States of America, Canada, the European Union, and all other countries and jurisdictions of the world in and to **said patents** together with the goodwill of the business symbolized by **said patents** and applications and registrations thereof.

Ex. 1, AllAdvantage Patent Assignment at 5 (emphasis added).

The phrase "said patents," which appears twice in the assignment language, refers to an immediately preceding list of 17 patents and patent applications. *Id.* at 4-5. Although other pending applications related to the '581 patent are on the transfer list, the '581 patent application itself is not included. *Id.*

In addition to transferring the specifically enumerated 17 patents and applications, the AllAdvantage Patent Assignment also purports to transfer "the goodwill of the business symbolized by said patents and applications and registrations thereof." *Id.*[5] But other than the 17 enumerated patents and patent applications, and the goodwill of the business they and their applications and registrations symbolize, the assignment contains no additional language that could be interpreted to transfer any other property, such as continuation applications. *Id.*

The failure to identify the '581 patent application or to state that continuation patents or related patent applications are part of the assets transferred is fatal to IV's ownership claim. *Dow Chemical Co.*, 458 Fed. App'x at 912-16 ("Because the patents in suit do not appear in

---

[5] This phrase is normally included in trademark (not patent) assignment documents, to make clear that the assignment of the trademark carries with it the business associated with the trademark. 15 U.S.C. § 1060(a)(1) (2012) ("A registered mark or a mark for which an application to register has been filed shall be assignable with the good will of the business in which the mark is used."); *interState Net Bank v. NetB@nk, Inc.*, 348 F. Supp. 2d 340, 348-49 (D. N.J. 2004) ("Since a trademark is but a symbol, it may be transferred or assigned only to represent the transfer of goodwill connected with a particular business . . . and cannot be transferred separately from the goodwill of the business. . . . A purported assignment of a trademark without goodwill is an invalid 'assignment in gross.'"). Patents do not have "registrations," though they do arise from "applications." As stated above, the U.S. Application No. 09/017,112 was the application that resulted in the parent '983 patent. U.S. Application No. 09/844,858 was the application that resulted in the '581 patent.

Schedule A, they were not transferred . . . ."); *Univ. Patents, Inc. v. Kligman*, 762 F. Supp. 1212, 1219 (E.D. Pa. 1991) (citing 35 U.S.C. § 261) ("An assignment . . . . must show a clear and unmistakable intent to transfer ownership.").

Indeed, the list of patents and patent applications contained in the AllAdvantage Patent Assignment demonstrates that AllAdvantage did not transfer unlisted family members of the enumerated patents and applications. While the list of 17 patents and patent applications does not include the '581 patent application, it ***does include*** three other patent applications that are related to the parent '983 patent. *See* Ex. 1, AllAdvantage Patent Assignment at 4-5 (citing Australian Patent No. 24774/99; Canadian Patent Application No. 2,318,852; and European Patent Office Application No. 99904362.3). The parties' inclusion of these other related applications on the enumerated list of transferred assets demonstrates that the drafters of the language of the AllAdvantage Patent Assignment did not rely on such language to transfer related applications. If it had, listing those patent applications would have been unnecessary and superfluous.

**2.     The Phrase "Applications and Registrations Thereof" in the AllAdvantage to Alset Patent Assignment Does Not Transfer Rights in the '581 Patent Application**

Notwithstanding the clear language of the assignment referenced above, IV points to two phrases to argue that the assignment did in fact transfer rights in the '581 patent application. IV first argues that the clause "by said patents and applications and registrations thereof" at the end of the assignment language transferred rights in applications of family members of the enumerated patents. Ex. 10, Gilliland Email. That interpretation cannot be reconciled with the words of the assignment clause for two reasons.

***First***, as a matter of syntax, the prepositional phrase "by said patents and applications and registrations thereof" modifies the word "symbolized" in the phrase "together with the goodwill of the business symbolized by said patents and applications and registrations thereof." This

phrase refers to the second type of asset transferred in the assignment—goodwill.  The prepositional phrase cannot reasonably be read to modify and expand the meaning of "in and to said patents," as IV now appears to contend.

Courts have found other patent assignments using far clearer assignment language to be insufficient to transfer rights to a child patent application.  *See, e.g.*, *Alpha One Transporter, Inc. v. Perkins Motor Transp., Inc.*, No. 13-CV-2662-H-DHB, 2014 WL 4537012, at *3 (S.D. Cal. Sept. 11, 2014) (holding assignment which purported to transfer "the full and exclusive right, title, and interest in and to said invention, in and to said application, and in and to any Letters Patent to be granted and issued thereon" to be insufficient to transfer a continuation in part); *see also, e.g.*, *Euclid Chem. Co. v. Vector Corrosion Technologies, Inc.*, 561 F.3d 1340, 1342 (Fed. Cir. 2009) (holding assignment that transferred a parent patent and four listed patent applications, and "any and all divisional applications, continuations, and continuations in part" of the parent patent did not unambiguously transfer a continuation application).  The language on which IV relies does not come close to the level of specificity required by Federal Circuit law to adequately transfer rights to an unnamed continuation application.

***Second***, even if the prepositional phrase "by said patents and applications and registrations thereof" were found to modify "in and to said patents," that language still would not support IV's position.  The word "thereof" is an adverb meaning "of that," "of . . . it," or "from that cause or particular."  Ex. 11, Merriam Webster's Collegiate Dictionary (11th ed. 2004).  The ***only*** patent application "thereof" the '983 patent is the '983 patent application, U.S. Application No. 09/017,112.  The '581 patent issued from a wholly separate patent application, U.S. Application No. 09/844,858.  *See FURminator, Inc. v. Kim Laube & Co.*, 758 F. Supp. 2d 797, 816 (E.D. Mo. 2010) ("By statutory and common law, each patent establishes an independent

and distinct property right" (citing *Kearns v. General Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996)); *See also Alpha One Transporter*, 2014 WL 4537012, at *3.  Thus, even the most generous reading of the assignment language does not save IV's claims on the '581 patent.

Thus, there is no way to interpret the phrase "said patents and applications . . . thereof" as transferring an ownership interest in the '581 patent application.

> **3.     The Transfer of all "Rights, Title And Interest" in "Said Patents" Does Not Transfer Rights, Title and Interest in Continuations of Said Patents Absent Express Language Stating Such Conveyance**

IV may also incorrectly assert that the language "all right, including common law rights, title and interest in the . . . said patents" had the effect of assigning the '581 patent application, as an attorney who was involved in prosecuting the patent application suggested that reading in her deposition.  Ex. 12, Benado Deposition at 112:4-18 (citing Ex. 1, AllAdvantage Patent Assignment at 5).  This reading, however, is similarly flawed.  Although Courts have found that an assignment using this language may transfer an unnamed patent application, that is *only* the case where the assignor explicitly assigns rights to the "*invention*."  When—as  here—rights to a specific *patent* are assigned, the assignment does not extend to any related patent applications or patents absent express language stating that such property rights are also part of the transfer. *Compare E.I. Du Pont de Nemours & Co. v. Okuley*, 2000 WL 1911430 (S.D. Ohio 2000) ("an assignment which conveys the entire right, title, and interest *in an invention* includes all alterations and improvements and all patents whatsoever, issued and extensions") (emphasis added), *with Dow Chemical*, 458 Fed. App'x at 912-16 (holding that language transferring "all of [Plaintiff's] right and title to and interest in the *Patent Rights*" to be limited to those patents found in enumerated list) (emphasis in original).

The assignment language is clear—AllAdvantage is transferring "the following [listed] *patents* and *patent applications*," not an "invention." Ex. 1, AllAdvantage Patent Assignment at

6.  Therefore, all "rights, title, and interest" is limited to all rights in that patent and does not include rights in the '581 patent or any other patent or patent application.

### C.   Federal Law Does Not Automatically Transfer a Child Patent Application When the Parent Patent is Transferred

IV has also argued that, under federal law, the transfer of a parent patent automatically transfers rights to children patent applications.  Ex. 10, Gilliland Email.  In support of this position, IV cites only the Manual of Patent Examining Procedure ("MPEP") § 306.  *Id.*  IV's argument fails for two reasons.

*First,* IV's argument incorrectly interprets the MPEP and has been squarely rejected by the Federal Circuit.  *Regents of the Univ. of N.M. v. Knight*, 321 F. 3d 1111, 1121 (Fed. Cir. 2003) ("MPEP § 306 refers to a PTO requirement for issuing a patent from a CIP application to an assignee; *it does not alter the legal ownership rights in patent applications and issued patents.*" (emphasis added)).  Indeed, one court appropriately characterized IV's argument as a "negligent misinterpret[ation]" of the law.  *Bellehumeur v. Bonnett*, No. cv- 00-863-RSWL CTX, 2006 WL 6635952, at *5 (C.D. Cal. Mar. 21, 2006), *aff'd*, 219 F. App'x 991 (Fed. Cir. 2007) (finding it to be "negligently misinterpret[ing] the laws" to suggest that MPEP §306 would have a legal effect of assigning a continuation application based on assignment of the parent patent)

MPEP § 306 is titled "Assignment of Division, Continuation, Substitute, and Continuation-in-Part in Relation to Parent *Application*."  It governs the transfer of parent patent *applications* and the ability to automatically transfer the children applications of a parent application.  By its own terms, the provision does not purport to set forth any information about the effect of a transfer of an issued parent *patent* on ownership of pending child applications.  In the January 2002 AllAdvantage Asset Purchase Agreement, the '983 patent was transferred to Alset, Inc. as an issued patent, and not an application.  Ex. 1, AllAdvantage Patent Assignment at

5 (listing U.S. Patent number 6,236,983 as "Issued").   Therefore, MPEP § 306 has no bearing on this assignment.

**Second,** the MPEP "does not have the force of law or the force of the rules in Title 37 of the Code of Federal Regulations."  MPEP Forward.  Rather, the MPEP is a publication used by Patent Examiners during examination of patent applications.  In the absence of citation to a statute, regulation, or precedential decision, IV has no meaningful legal support for its argument.

### D.   The Extrinsic Evidence Identified Does Not Support a Conclusion that IV Owns the '581 Patent

IV's final argument is that extrinsic evidence demonstrates that AllAdvantage and Alset's intent was to transfer the '581 patent application in the Patent Assignment.  *See* Ex. 10, Gilliland Email.

This argument fails at the outset.  State law governs the interpretation of patent assignments.  *Abbott Point of Care, Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012). Thus, the AllAdvantage Patent Assignment, which was executed in California and does not contain a choice of law provision, is to be interpreted under California law, which states that parol evidence cannot be introduced in the absence of specifically identified contractual language that is "reasonably susceptible" to multiple interpretations.  There is no such language in the AllAdvantage Patent Assignment.  Moreover, even if the Court were to examine parol evidence, there is no evidence demonstrating a clear intent to transfer the '581 patent to Alset.

### 1.   Parol Evidence Is Irrelevant Where, As Here, the AllAdvantage Patent Assignment Contains No Language That Is Reasonably Susceptible to an Interpretation that It Transfers Ownership of the '581 Patent

California law states, "[i]f contractual language is clear and explicit, it governs."  *State v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 195, (Cal. 2012), *as modified* (Sept. 19, 2012); *see also* Cal. Code of Civ. Pro. § 1856(a) ("Terms set forth in a writing intended by the parties as a final

expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement."); *see also* Cal. Code of Civ. Pro. § 1625 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.")  Here, the language of the assignment is clear—the parties' intent was to transfer the 17 specifically-enumerated patents and patent applications.

IV may not simply introduce parol evidence because it is dissatisfied with the express language of the AllAdvantage Patent Assignment.  "The test of whether parol evidence is admissible . . . is whether the evidence presented is relevant to prove a meaning to which the language is 'reasonably susceptible,' not to flatly contradict the express terms of the agreement." *Winet v. Price*, 6 Cal. Rptr. 2d 554, 557 (Cal. App. 1992) (internal citations omitted).  As set forth in detail in Parts III.B.2 and III.B.3 above, there is no language in the AllAdvantage Patent Assignment that is reasonably susceptible to an interpretation that it transferred ownership of the '581 patent application.  Accordingly, parol evidence cannot be introduced under California law to contradict the unambiguous absence of the '581 patent from the AllAdvantage Patent Assignment.

> ### 2. The Extrinsic Evidence Indicates that the Patent Assignment Did Not Transfer Rights in the '581 Patent Application

Although parol evidence should not be considered, the most powerful extrinsic evidence demonstrates the intention of the parties ***not*** to transfer rights in the '581 patent application to Alset, and the extrinsic evidence to which IV has pointed is insufficient to confer ownership of the '581 patent.

The most reliable extrinsic evidence for interpreting the language of the AllAdvantage Patent Assignment is the language used in the immediately preceding transfer in the chain of title, between Sherwood Partners and AllAdvantage.  That agreement contains a nearly identical list of enumerated patents, applications, and foreign counterparts to be transferred between parties.  *Compare* Ex. 1, AllAdvantage Patent Assignment at 5-6, *with* Ex. 5, Sherwood Asset Purchase Agreement at 7-8.  Neither list contains the '581 patent application.  In contrast to the language of the AllAdvantage Patent Assignment, however, the Sherwood Patent Assignment transfers not only the enumerated list of patents and patent applications, but also "(ii) ***any continuation, continuations-in-part, division, reissue, reexamination, extension, renewal or substitute of the patents and patent applications of subsection*** (i); [and] (iii) any patent or application claiming priority from any of the items listed under subsections (i) to (ii)."  Ex. 5, Sherwood Asset Purchase Agreement at 1.2.4 (emphasis added).  This clause, or anything similar to it, is notably ***absent*** from the AllAdvantage Patent Assignment executed six months later.  Ex. 1, AllAdvantage Patent Assignment.

As a party to the Sherwood Patent Assignment, AllAdvantage was certainly aware of the Sherwood Assignment language when drafting the AllAdvantage Patent Assignment to Alset.  The absence of language similar to paragraph 1.2.4 of the Sherwood Asset Purchase Agreement is strong extrinsic evidence that AllAdvantage did ***not*** intend to transfer continuations such as the '581 patent.

### 3.      The Parol Evidence IV Has Identified Is Insufficient to Prove Ownership of the '581 Patent

The extrinsic evidence identified by IV in its emails to Defendants and during prosecuting attorney Benado's deposition is insufficient to prove that the unambiguous language of the AllAdvantage Patent Assignment transferred rights to the '581 patent to Alset, Inc.

*First*, IV has argued that "[t]he extrinsic evidence in this case includes the fact that the assignment from AllAdvantage to Alset was filed with the USPTO as part of the '581 Patent's prosecution and demonstrates the parties' intent for that assignment to transfer ownership of the '581 Patent application."  Ex. 10, Gilliland Email.

Although a presumption of validity attaches to assignment documents recorded at the Patent and Trademark Office, the recording of an assignment is not a determination of patent ownership.  *Alzheimers Inst. of Am., Inc. v. Avid Radiopharmaceuticals, et al.*, No. 2:10-cv-06908, 2011 WL 3875341, at *9 (E.D. Pa. Aug. 31, 2011); s*ee also LG Display Co. v. AU Optronics Corp.*, 686 F. Supp. 2d 429, 451-52 (D. Del. 2010) ("The assignation on the face of a patent is 'not a conclusive indication' of patent ownership.") (citing *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1375 (Fed. Cir. 2007).  Recordation of assignment documents is ministerial, and the U.S. Patent and Trademark Office does not perform any review of assignment documents before recording them.  *United Tactical Systems, LLC v. Real Action Paintball, Inc., et al.*, 2014 WL 6788310 (N.D. Cal. 2014) ("As the USPTO explained, '[t]he mere act of recording [an assignment] document is a ministerial act,' and '[t]he Assignment Branch [of the USPTO] does not examine the substance of the transaction.'" Further noting that it would be a "'perverse result' if the use of 'recording—a ministerial act—[was transformed] into a mechanism for conclusively defeating allegations . . . challenging the legality of the assignment.'")(internal citations omitted); 37 C.F.R. § 3.54 ("The recording of a document pursuant to [37 C.F.R.] § 3.11 is not a determination by the Office of the validity of the document or the effect that document has on the title to an application, a patent, or a registration.").

- 17 -

Indeed, courts have frequently found that recorded patent assignments did not act to transfer a patent later asserted in litigation. *See, e.g.*, *Sunbeam Prods. v. Wing Shing Prods. (BV1) Ltd.*, 311 B.R. 378, 391 (S.D.N.Y. 2004); *Mayfair Wireless LLC v. Celico P'ship*, No. cv 11-772-SLR-SRF, 2013 WL 4657507, at *6-7 (D. Del. Aug. 30, 2013); *Alpha One v. Perkins*, 2014 WL 4537012 at *3-4; *Euclid v. Vector*, 561 F.3d at 1342. Accordingly, the mere fact that Alset recorded the AllAdvantage Patent Assignment with the Patent and Trademark Office is not proof of transfer of the '581 patent.

***Second***, IV also alleges that "[w]e have also been able to speak with one of the prosecuting attorneys, who was involved in the recordation of the assignment," who "confirmed that it was the parties' intent to transfer all patents, including the '581 Patent." Ex. 10, Gilliland Email. However, Ms. Benado, the prosecuting attorney with whom IV spoke, testified that she had ***no*** knowledge of either party's intent or not to transfer rights in the '581 patent and never spoke with either party about their intentions. Ex. 12, Benado Deposition at 120:23-121:5; 93:3-4 ("I'm unaware of the intention of the parties."). Therefore, she cannot have knowledge as to whether AllAdvantage intended to transfer rights in the '581 patent or whether Alset intended to purchase it.

Instead, Ms. Benado's belief that the parties intended to transfer rights in the '581 patent application appears to be based on the fact that she recorded the AllAdvantage Patent Assignment as part of a set of patent assignments she was asked to record in July 2002 (six months after the AllAdvantage Patent Assignment was executed). Ex. 12, Benado Deposition at 83:5-18; 96:16-97:9. As set forth above, mere recordation of a patent assignment has repeatedly been found insufficient to prove ownership.

IV has provided no further extrinsic evidence as support of AllAdvantage's intention to transfer rights in the '581 patent.  Indeed, it cannot, as no such evidence exists.  Therefore, even when considering extrinsic evidence, it is clear that the '581 patent was never transferred to Alset, and thus IV is not the holder of the patent.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the allegations concerning the '581 patent pursuant to Rule 12(b)(1).

Dated: February 27, 2015                    Respectfully submitted,

                              _s/ Alexander W. Saksen____
                              John G. Ebken (PA I.D. 91031)
                              Alexander W. Saksen (PA I.D. 86049)
                              GORDON & REES LLP
                              707 Grant Street, Suite 3800
                              Pittsburgh, PA 15219
                              Tel.: (412) 577-7400
                              Fax: (412) 347-5461
                              Email: jebken@gordonrees.com
                              Email: asaksen@gordonrees.com

                              Gregory H. Lantier
                              (*pro hac vice*)
                              DC I.D. 492043
                              WILMER CUTLER PICKERING HALE AND
                              DORR LLP
                              1875 Pennsylvania, Ave NW
                              Washington DC, 20006
                              Tel.: (202) 663-6000
                              Fax: (202) 663-6363
                              Email: gregory.lantier@wilmerhale.com

David C. Marcus
(*pro hac vice*)
CA I.D. 158704
WILMER CUTLER PICKERING HALE AND
DORR LLP
350 South Grand Ave, Suite 2100
Los Angeles, CA 90071
Tel.: (213) 443-5300
Fax: (213) 443-5400
Email: david.marcus@wilmerhale.com

Monica Grewal
(*pro hac vice*)
MA I.D. 659449
WILMER CUTLER PICKERING HALE AND
DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
Email: monica.grewal@wilmerhale.com

*Counsel for Defendants Erie et al. and
Highmark et al.*