# EXHIBIT 5



A 1962390

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME;

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**

**December 02, 2014**

THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE
RECORDS OF THIS OFFICE OF A DOCUMENT RECORDED ON
JULY 2, 2002.

By Authority of the

Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

**T. LAWRENCE**
**Certifying Officer**

07/12/02  FRI 10:54 FAX 2063822669          SPECKMAN LAW GROUP                    ☑002

*resub - 7.12.02*
*mailed out 7.3.02*

07-16-2002

||||||||||||||||||||||||||||||

102147958

CERTIFICATE OF FACSIMILE TRANSMISSION
I hereby certify that this correspondence is being transmitted herewith via
facsimile transmission to Telephone No. (703) 306-5995 on the date
indicated below and is addressed to: BOX ASSIGNMENTS,
Commissioner for Patents, Washington, D.C. 20231.
Date of Transmission: July 3, 2002

Selena Whitaker-Paquiet

*7.2.02*

Attorney Docket No.: 11250.1003con
PATENT APPLICATION

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of **William D. Hoffman** and **John C. Hurley**

Group Art Unit: 2183

Application No.    :    09/844,858

Filed             :    April 27, 2001

For               :    COLLECTION OF INFORMATION REGARDING A DEVICE
                        OR A USER OF A DEVICE ACROSS A COMMUNICATION LINK

## ASSIGNMENT TRANSMITTAL LETTER

TO THE COMMISSIONER FOR PATENTS:

1. Name of conveying party(ies):

   SHERWOOD PARTNERS, INC.
   1849 Sawtelle Boulevard, Suite 543
   Los Angeles, CA 90025

2. Name and address of receiving party(ies):

   ALLADVANTAGE.com
   4010 Point Eden Way
   Hayward, CA 94545

3. Nature of conveyance:
   [  ]   Assignment
   [  ]   Change of Name
   [X]   Other: Asset Purchase Agreement
         Execution date:  July 23, 2001

   *40E*

4. [X]   U.S. Application Serial No.: **09/844,858 filed April 27, 2001**

5. Applicant has granted power of attorney to or designated as domestic
   representative for this application:

11250.1003con                              1

**PATENT
REEL: 012901 FRAME: 0203**

| Name | Reg. No. |
|------|----------|
| Ann W. Speckman | 31,881 |
| Janet Sleath | 37,007 |
| Susan J. Friedman | 38,457 |
| Lisa N. Benado | 39,905 |

All of the law firm of SPECKMAN LAW GROUP, 1501 Western Avenue, Suite 100, Seattle, Washington 98101.  Please direct all correspondence concerning this Assignment to Lisa N. Benado, at the previously listed address.

6.    Total number patents or applications involved:  1.

7.    Total fee:  $40.00.
      [  ]    A check for $40.00 in payment of the assignment recording fee is enclosed.
      [  ]    The $40.00 fee for recording this assignment is included in the check for $00.00 submitted herewith.

8.    [X]    **Please charge our Deposit Account No. 19-3555 in the amount of $40.00.**
      [  ]    The Commissioner is hereby authorized to charge any additional fees, which may be required in connection with the filing of these papers, or credit any overpayment, to Account No. 19-3555.

9.    The information contained on this transmittal letter is true and correct to the best of the knowledge and belief of the person signing below.

Respectfully submitted,

By _____
Lisa N. Benado
Registration No.  39,905

Total number of pages comprising transmittal letter: 2

**Date:  July 2, 2002**

SPECKMAN LAW GROUP

20601

11250.1003con                                     2

**PATENT
REEL: 012901 FRAME: 0204**

7/12/02  FRI 10:55 FAX 2063822669          SPECKMAN LAW GROUP                         ☑004

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "*Agreement*") is made as of July 23, 2001 (the "*Effective Date*"), by and between Sherwood Partners, Inc., a California corporation ("*Seller*"), with principal offices located at 1849 Sawtelle Blvd., Suite 543, Los Angeles, CA 90025, and AllAdvantage.com, a California corporation ("*Buyer*"), with principal offices located at 4010 Point Eden Way, Hayward, CA 94545.

## RECITALS

A. By resolution of its board of directors ("*Board*"), memorialized in the minutes of the February 8, 2001, meeting of the Board attached hereto as Exhibit A, Aveo, Inc. ("*Assignor*"), with principal offices located at 5291 Patrick Henry Drive, Santa Clara, CA 95054, has transferred ownership of all its right, title and interest in and to all of its tangible and intangible assets ("*Assets*") to Seller, and in so doing has also designated Seller to act, pursuant to California law, as the Assignee for the Benefit of Creditors of Assignor. The General Assignment Agreement ("*General Assignment*") between Assignor and Seller ("*Assignee*") is attached hereto as Exhibit B.

B. Seller and Buyer have identified a subset of Assets that Buyer desires to purchase from Seller (the "*Required Assets*"). The Required Assets are listed in Section 1.2 below. After consummation of the Closing contemplated under this Agreement, Seller will liquidate any remaining Assets that are not Required Assets, and will undertake the winding down of Assignor, which shall ultimately include, but shall not be limited to, the distribution of net funds, after payment of fees and costs associated with the liquidation and winding down, to Assignor's creditors, which are generated from the sale of the Assets.

C. Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, the Required Assets, on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the above recitals and the mutual covenants hereinafter set forth, Buyer and Seller hereby agree as follows:

## 1. PURCHASE AND SALE OF REQUIRED ASSETS.

1.1     Agreement to Sell and Purchase Required Assets.  Subject to the terms and conditions of this Agreement, and in reliance on the representations, warranties and covenants set forth in this Agreement, Seller agrees to sell, assign, transfer and convey to Buyer at the Closing (as defined in Section 2.2 below), and Buyer agrees to purchase and acquire from Seller at the Closing, all of Seller's right, title and interest in and to all of the Required Assets, together with the goodwill of the business symbolized by the trademarks and service marks and applications and registrations thereof, included among the Required Assets. The Required Assets will be

21868/03400/DOCS/1174012.5

PATENT
REEL: 012901 FRAME: 0205

sold, assigned, transferred and conveyed to Buyer (subject to Section 1.3) on the Closing Date "as is" and subject to encumbrances including, mortgages, liens, licenses, rights of possession, security interests, restrictions, charges, title retention, conditional sale or other security arrangements of any nature whatsoever (collectively, "*Encumbrances*"). All Encumbrances of which Seller is presently aware are set forth in Exhibit C hereto. Notwithstanding such Encumbrances, if any, the intention of the parties is for Buyer to receive the Required Assets free and clear of the liens and claims that are known to attach thereto.

1.2   **Required Assets Defined.** As used in this Agreement, the term "*Required Assets*" means, collectively, all of the assets, rights, title, interest, and properties of Seller described in the following paragraphs of this Section 1.2, together with all of Sellers' right, title, and interest in and to all patents, patent applications, trademarks and service marks, trademark and service mark applications, and trademark and service mark registrations, together with the goodwill of the business symbolized by said trademarks and service marks and applications and registrations thereof, design rights, copyrights and moral rights that are embodied therein or used therein:

1.2.1   Trademarks and Service Marks

1.2.1.1 US Federal

| | | | |
|---|---|---|---|
| a. | AVEO | Registration #2352451; | Registered 5/23/00 |
| b. | MEGAPHONE | Registration #2173265; | Registered 7/14/98 |
| c. | INTELLIGRAMS | Registration #2335660; | Registered 3/28/00 |
| d. | DESIGN MARK | Registration #2354047; | Registered 5/30/00 |
| e. | DESIGN MARK | Registration #2360666; | Registered 6/20/00 |
| f. | MEGADIAL | Registration #2090565; | Registered 8/26/97 |
| g. | ATTUNE | Serial #76-169,448; | Filed 11/21/00 |
| h. | DESIGN MARK | Serial #76-108,058; | Filed 8/11/00 |
| i. | ATTUNE | Serial #75-429,325; | Filed 2/5/98 |

1.2.1.2 European Community Trademark Registrations

| | | | |
|---|---|---|---|
| a. | AVEO | Registration #881409; | Registered 12/10/99 |
| b. | ATTUNE | Registration #882886; | Registered 12/10/99 |
| c. | DESIGN MARK | Registration #881433; | Registered 12/10/99 |
| d. | MEGAPHONE | Registration #178327; | Registered 06/22/98 |
| e. | T-COMMERCE | Application #1701119; | Filed 6/9/00 |

- 2 -

### 1.2.1.3  Canadian

    a.  AVEO          Registration #TMA514,822;  Registered 8/19/99

    b.  ATTUNE       Registration #TMA514,821;  Registered 8/19/99

    c.  DESIGN MARK  Registration #TMA514,838;  Registered 8/19/99

    d.  T-COMMERCE  Application # 1062,532.      Filed 6/8/00

## 1.2.2   Domain Name Registrations

    **1.2.2.1**   Aveo.com

    **1.2.2.2**   Aveo.net

    **1.2.2.3**   Aveo-Attune.com

    **1.2.2.4**   Attune.com

    **1.2.2.5**   Attune.org

    **1.2.2.6**   AttuneNetwork.net

    **1.2.2.7**   AttuneNetwork.com

    **1.2.2.8**   AveoAttune.com

    **1.2.2.9**   AveoInc.com

    **1.2.2.10**  Cypressr.com

    **1.2.2.11**  CypressRts.com

    **1.2.2.12**  CypressResearch.com

## 1.2.3.  Software

    **1.2.3.1**   **AVEO ATTUNE**       **Proprietary**

    All Aveo Attune related software and Intelligrams developed by
Aveo, Inc. including (i) all source code, object code, program
descriptions, databases, interfaces, modifications, updates,
common modules and enhancements to the past and current
versions of such software, and all related documentation, and all
preceding versions and works in progress or development; (ii)
methodologies and processes required to create, operate or
maintain the programs; (iii) contents of the Aveo Attune
electronic repository; (iv) all digital certificates and digital code
signing identifications; (v) all sales & marketing materials—

- 3 -

21SEA/00608/DE/001/740633

PATENT
REEL: 012901 FRAME: 0207

brochures, plans, practices, and contracts—and all historical data, communications, and any and all trade secrets therein

### 1.2.3.2   MEGAPHONE          Proprietary

All Aveo Megaphone related software developed by Aveo, Inc. including (i) all source code, object code, program descriptions, databases, interfaces, modifications, updates, common modules and enhancements to the past and current versions of such software, and all related documentation, and all preceding versions and works in progress or development; (ii) methodologies and processes required to create, operate or maintain the programs; (iii) contents of the Aveo Attune electronic repository; (iv) all digital certificates and digital code signing identifications; (v) all sales & marketing materials—brochures, plans, practices, and contracts—and all historical data, communications, and any and all trade secrets therein

### 1.2.3.3   OBJECTSTORE          Third Party

Object Design, Inc.'s Standard Shrink-Wrap License for ObjectStore C++ Release 5.1.

### 1.2.3.4   BRIGHTWARE          Third-Party

License for the BrightWare's "*Assisted Answer*" software.

1.2.4   Patents   (i) All patents and patent applications, including but not limited to the patents and patent applications listed in the table below; (ii) any continuation, continuation-in-part, division, reissue, reexamination, extension, renewal or substitute of the patents and patent applications of subsection (i); (iii) any patent or application claiming priority from any of the items listed under subsections (i) to (ii); (iv) any foreign (non-U.S.) counterpart patent or patent application that claims priority to or from any of the items listed under subsections (i) to (iii); as well as related patent rights arising from subsections (i) to (iv).

| Title | Status | Serial number/ Patent number |
|---|---|---|
| Multi-Stage Data Filtering for Preserving User Privacy. | Pending | 08/985,389 |
| Multi-Stage Data Filtering for Preserving User Privacy. | Pending | 15377/99 |
| Multi-Stage Data Filtering for Preserving User Privacy. | Pending | 2312704 |

- 4 -

21368/00000/DOCS/1174942.5

2/02 FRI 10:56 FAX 2063822669 SPECKMAN LAW GROUP ⊠008

| | | |
|---|---|---|
| Multi-Stage Data Filtering for Preserving User Privacy. | Pending | 98969614.3 |
| Method and Apparatus for Attribute-Based Addressing. | Pending | 09/017,114 |
| Method and Apparatus for Attribute-Based Addressing. | Pending | 25623/99 |
| Method and Apparatus for Attribute-Based Addressing. | Pending | 999054729 |
| Collecting Information About a Computer or Its User | Pending | 24774/99 |
| Collecting Information About a Computer or Its User | Pending | 2318852 |
| Collecting Information About a Computer or Its User | Pending | 999043623 |
| Multi-Stage Data Filtering on a Single System | Pending | 09/198,337 |
| Multi-Stage Data Filtering on a Single System | Pending | 16231/99 |
| Multi-Stage Data Filtering on a Single System | Pending | 2312705 |
| Multi-Stage Data Filtering on a Single System | Pending | 98960689.2 |
| System, Method, and Article of Manufacture for Product Return of Software and Other Information. | Pending | 2,294,124 |
| System, Method, and Article of Manufacture for Product Return of Software and Other Information. | Pending | 98931419.0 |
| System, Method, and Article of Manufacture for Product Return of Software and Other Information. | Issued | 5,984,508 |
| Method and Apparatus for Collecting Information regarding a Device or a User of a Device. | Issued | 6,236,983 |

1.3.   **Asset Transfer: Passage of Title; Delivery.**

(a)    <u>Title Passage</u>.  Except as otherwise provided in this Section, upon the Closing, title to all of the Required Assets shall pass to Buyer; and Seller shall deliver

- 5 -

SF1 98/600400/DOCS/1174442.5

(electronically where possible) to Buyer possession of all of the Required Assets as provided in subsection 1.3(b), and shall further deliver to Buyer proper assignments, conveyances and bills of sale sufficient to convey to Buyer good and marketable title to all the Required Assets, subject to all Encumbrances, in accordance with Section 1.1 of this Agreement, as well as such other instruments of conveyance as counsel for Buyer may reasonably deem necessary (both at and after the Closing) to effect or evidence the transfers contemplated hereby and to perfect and record Buyer's title to the Required Assets.

(b)   **Delivery of Required Assets**.  The Required Assets and all documents to be delivered by Seller to Buyer pursuant to this Agreement shall be delivered by Seller to Buyer at such location as Buyer may request in writing.  All of the software and deliverables specified in Section 2.1 hereof to be delivered hereunder that can be delivered electronically to Buyer shall be delivered electronically to Buyer.  Buyer and Seller hereby agree to cooperate (both before and after the Closing) to obtain any available reduction or exemption from any sales, use or other taxes.

## 2.   PURCHASE PRICE; PAYMENTS.

2.1   **Purchase Price.**   In consideration of the sale, transfer, conveyance and assignment of all the Required Assets to Buyer at the Closing, Buyer shall pay $300,000 to Seller at the Closing.   Seller hereby acknowledges and confirms that Seller is currently holding $300,000 for and on behalf of Buyer and shall continue to hold these funds until the Closing, or in the event that the Closing does not occur by the Closing Date (as defined below) Seller shall promptly return the $300,000 to Buyer.

2.2   **Closing.**   The consummation of the purchase and sale of the Required Assets contemplated hereby will take place at a closing to be held at the offices of Sulmeyer, Kupetz, Baumann & Rothman, 300 South Grand Avenue, 14th Floor, Los Angeles, California 90071 (the *"Closing"*), on July ___, 2001 (the *"Closing Date"*), or at such other time or date, and at such place, or by such other means of exchanging documents, as may be agreed to by the parties hereto.  If the Closing does not occur on or prior to August ___, 2001, or such later date upon which Buyer and Seller may agree in writing, this Agreement shall terminate upon written notice of termination given by either party hereto that is not in default of its obligations hereunder, and thereupon this Agreement shall become null and void and no party hereto will have any further rights or obligations hereunder.

2.3   **Purchase Price Allocation.**   The Buyer and Seller agree to cooperate in allocating the purchase price to each of the Required Assets and agree not to take any position inconsistent therewith in any tax return, in any refund claim, in any litigation or otherwise, unless required to do so by a governmental authority.  Buyer and Seller shall each be responsible for the preparation of their own Section 1060 statements in forms in accordance with applicable tax laws, and each shall execute and deliver to the other such statements and forms as are reasonably requested by the other party.

- 6 -

### 3.   NO OBLIGATIONS ASSUMED.

3.1   **Liabilities and Obligations Not Assumed.**  Buyer shall not assume or become obligated in any way to pay any liabilities, debts or obligations of Seller or of Assignor whatsoever, including but not limited to any liabilities or obligations now or hereafter arising from Seller's or Assignor's business activities that took place prior to the Closing.  To the extent, however, Buyer acquires those licenses identified in Sections 1.2.3.3 and 1.2.3.4 it is expressly understood that neither Seller nor Assignor shall have any obligation whatsoever to cure any default under such licenses, or to make any future payments, or take any further acts thereunder.

3.2   **No Obligations to Third Parties.**  The execution and delivery of this Agreement shall not be deemed to confer any rights upon any person or entity other than the parties hereto, or make any person or entity a third party beneficiary of this Agreement, or to obligate the parties to any person or entity other than the parties to this Agreement.

### 4.   REPRESENTATIONS AND WARRANTIES OF BUYER.

Buyer hereby represents and warrants to Seller that all the following statements are true, accurate and correct:

4.1   **Corporate Organization.**  Buyer is a corporation duly organized, validly existing, and in good standing under the laws of the State of California.  Buyer has all necessary corporate power and authority to enter into this Agreement and all assignments or other documents that Buyer is required to execute and deliver hereunder (the "*Ancillary Documents*"), and holds all permits, licenses, orders and approvals of all federal, state and local governmental or regulatory bodies necessary and required therefor.

4.2   **Power and Authority.**  Buyer has all requisite power and authority to execute and deliver this Agreement and the Ancillary Documents and to perform its obligations hereunder and thereunder.  The execution, delivery and performance by Buyer of this Agreement and the Ancillary Documents, and the consummation of all the transactions contemplated hereby and thereby, have been duly and validly authorized by Buyer by all necessary corporate action of Buyer's Board of Directors.  This Agreement and the Ancillary Documents, when executed and delivered by Buyer, will be duly and validly executed and delivered and will be the valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.  Neither the execution and delivery of this Agreement or the Ancillary Documents by Buyer, nor the performance by Buyer of its obligations under this Agreement, will (i) violate Buyer's charter documents, (ii) to the best of Buyer's knowledge, violate any law, statute, rule or regulation or order, writ, judgment, injunction or decree of any court, administrative agency or government body applicable to Buyer.

-7-

PATENT
REEL: 012901 FRAME: 0211

**4.3     Authorization for this Agreement.** Except those filings which are required to be made in connection with the assignment the Required Assets identified in Sections 1.2.1, 1.2.2 and 1.2.4 hereof, no authorization, approval, consent of, or filing with any governmental department, bureau, agency, public board, authority or other third party is required for the consummation by Buyer of the transactions contemplated by this Agreement.

**4.4     Litigation.** To the best of Buyer's knowledge, there is no litigation, suit, action, arbitration, inquiry, investigation or proceeding pending or, to the knowledge of Buyer, threatened, before any court, agency or other governmental body against Buyer (or any corporation or entity affiliated with Buyer) which seeks to enjoin or prohibit or otherwise prevent the transactions contemplated hereby, or have grounds to know, of any basis for any such proceedings, investigations or inquiries.

## 5.     REPRESENTATIONS AND WARRANTIES OF SELLER.

Seller represents and warrants to Buyer that all of the following statements are true, accurate and correct:

**5.1     Corporate Organization.** Seller is a corporation duly organized, validly existing, and in good standing under the laws of the State of California. As Assignee, Seller has all necessary corporate power and authority to own and use the Required Assets and to operate the Assignor's business and to enter into this Agreement and the Ancillary Documents and, pursuant to the General Assignment, Assignor has represented to Seller that it has assigned and transferred to Seller all permits, licenses, orders and approvals of all federal, state and local governmental or regulatory bodies necessary and required therefor.

**5.2     Power and Authority; No Default Upon Transfer.** Seller has all requisite power and authority to execute and deliver, as Assignee, this Agreement and the Ancillary Documents and to perform its obligations hereunder and thereunder. The execution, delivery and performance by Seller of this Agreement and the Ancillary Documents, and the consummation of all the transactions contemplated hereby and thereby, have been duly and validly authorized by Seller by all necessary corporate actions of Seller's Board of Directors. Seller is informed that the General Assignment was duly authorized by Assignor's Board. This Agreement and the Ancillary Documents, when executed and delivered by Seller, will be duly and validly executed and delivered and will be the valid and binding obligations of Seller, enforceable against Seller, as Assignor, in accordance with their respective terms. Neither the execution and delivery of this Agreement or the Ancillary Documents by Seller, nor the performance by Seller of its obligations under this Agreement, will (i) violate Seller's Articles of Incorporation or Bylaws, (ii) result in a material violation or breach of the General Assignment, or (iii) to the best of Seller's knowledge, violate any law, statute, rule or regulation or order, judgment, injunction or decree of any court, administrative agency or government body applicable to Seller or the Assignor's business.

**5.3     Title.** As far as Seller is aware, except for those Encumbrances identified in Exhibit C, Seller has good and marketable title to all of the Required Assets.

– 8 –

71340/00000/DOCS/1174942.5

PATENT
REEL: 012901 FRAME: 0212

5.4    **Litigation.** As far as Seller is aware, there is no claim, action, suit or proceeding pending or, to Seller's knowledge, threatened, against Seller (including but not limited to any claim, action, suit or proceeding relating to or affecting the Assignor's business or the Required Assets) at law, in equity, by way of arbitration or before any governmental department, commission, board or agency that might have a material adverse effect on the Required Assets or the Assignor's business, nor is Seller aware or have grounds to know of any reasonable basis therefor. As far as Seller is aware, there are no judgments, decrees, injunctions or orders of any court, governmental department, commission, agency, instrumentality or arbitrator against Seller affecting the Required Assets or the Assignor's business.

5.5    **Authorization for this Agreement.** Except those filings which are required to be made in connection with the assignment the Required Assets identified in Sections 1.2.1, 1.2.2 and 1.2.4 hereof, no authorization, approval, consent of, or filing with any governmental department, bureau, agency, public board, authority or other third party is required for the consummation by Seller of the transactions contemplated by this Agreement.

5.6    **Intellectual Property.** Seller has not granted any third party any currently effective licenses or other rights to any of the Required Assets. Seller has not received, nor is Seller aware that the Assignor has ever received, notice of any claim that any Required Assets infringe any patent, trademark or service mark, copyright, moral right, mask work, trade secret or proprietary right of any third party.

5.7    **Taxes.** At the Closing there will be no federal, state or local tax liens against any of the Required Assets to be transferred to Buyer hereunder. Any federal, state or local taxes attributable to periods prior to the Closing Date with respect to the Required Assets or the Assignor's business which, if unpaid, may result in a lien against any of the Required Assets, shall be afforded the priority to which they are legally entitled by the Seller, when making distributions to Assignor's creditors pursuant to the General Assignment. To the extent that the applicable taxing authority timely files a proof of claim, the claims of such authorities shall be paid to the extent that funds are available in the Assignment estate.

5.8    **Assignee.** All rights of Seller with regard to the ownership and possession of the Required Assets are rights held as Assignee pursuant to the General Assignment made by Assignor. Pursuant to the General Assignment, Assignor has informed Seller that it transferred all of its rights to the Required Assets to Seller. Pursuant to this Agreement, Seller sells, assigns, transfers all of its right, title and interest in and to the Required Assets to Buyer.

6.    **COVENANTS OF BUYER.**

6.1    **Taxes.** Buyer agrees to promptly pay all sales, use or other taxes imposed on the sale of the Required Assets to Buyer under this Agreement and to defend, indemnify and hold Seller harmless from and against any such taxes or claims for payment thereof by any tax authority imposed as a result of the sale of the Required Assets to Buyer under this Agreement.

- 9 -

**PATENT
REEL: 012901 FRAME: 0213**

**7.    COVENANTS OF SELLER.**

Seller covenants and agrees with Buyer as follows:

7.1    **Further Assurances.**  From and after the Closing Date, Seller shall use best efforts to promptly execute and deliver to Buyer and where necessary cooperate with Buyer to obtain from third parties any and all such further assignments, endorsements and other documents as Buyer may reasonably request for the purpose of effecting the transfer of Seller's title to the Required Assets to Buyer, the release of all Encumbrances over the Required Assets, the perfection and recordation of Buyer's title in all applicable jurisdictions and carrying out the provisions of the Agreements.

7.2    **Press Releases and Public Announcements.**  Seller shall not issue any press release or make any disclosure or public announcement relating to the terms of this Agreement without the prior written approval of Buyer.  Notwithstanding the foregoing, Seller may disclose certain information relating to this Agreement if required to do so by law or applicable governmental regulation and Seller shall be permitted, at its discretion, to prepare and distribute a tombstone regarding the General Assignment and the Agreement without mentioning the terms of the Agreement.

7.3    **Survival of Covenants.**  Each of the covenants set forth in Sections 7.1, 7.2, and this Section 7.3 shall survive the Closing.

**8.    CONDITIONS TO CLOSING.**

8.1    **Conditions to Buyer's Obligations.**  The obligations of Buyer hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Buyer may expressly waive the same in writing:

(a)    **Accuracy of Representations and Warranties on Closing Date.**  The representations and warranties made herein by Seller in Section 5 hereof (as qualified by Seller's Schedule of Exceptions) shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date;

(b)    **Compliance.**  As of the Closing Date, Seller shall have complied in all material respects with, and shall have fully performed, in all material respects, all conditions, covenants and obligations of this Agreement imposed on Seller and required to be performed or complied with by Seller at, or prior to, the Closing Date;

(c)    **Delivery of Required Assets.**  Seller shall have delivered, and Buyer shall have received, the Required Assets;

- 10 -

2165/00000/TXCS/1174942.5

(d)   Delivery of Closing Documents.  Seller shall have delivered, and Buyer shall have received, the documents described in Section 9.2 hereof; and

(e)   Bill of Sale  Seller shall have executed and delivered the Bill of Sale and Assignment Agreement to the effect and in the form of Exhibit D.

8.2   Conditions to Seller's Obligations.  The obligations of Seller hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Seller may expressly waive the same in writing:

(a)   Accuracy of Representations and Warranties on Closing Date.   The representations and warranties made herein by Buyer in Section 4 hereof (as qualified by Buyer's Schedule of Exceptions) shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing Date with the same force and effect as though such representations and warranties were made on and as of the Closing Date;

(b)   Bill of Sale.  Buyer shall have executed and delivered the Bill of Sale and Assignment Agreement to the effect and in the form of Exhibit D;

(c)   Compliance.  Buyer shall have complied in all material respects with, and shall have fully performed, the terms, conditions, covenants and obligations of this Agreement imposed thereon to be performed or complied with by Buyer at or prior to, the Closing Date; and

(d)   Delivery of Closing Documents.  Buyer shall have delivered, and Seller and shall have received, the documents described in Section 9.1 hereof.

## 9.   CLOSING OBLIGATIONS.

9.1   Buyer's Closing Obligations.  At the Closing, Buyer shall deliver to Seller the following:

(a)   A certificate signed by the President of Buyer, on behalf of Buyer, to the effect that the representations and warranties of Buyer made in the Agreement are true and correct in all material respects as of the Closing Date and that Buyer has fully performed all of its pre-closing commitments hereunder;

(b)   A certified copy of the resolutions of the Board of Directors of Buyer authorizing the execution and delivery by Buyer of this Agreement and all related agreements, and the consummation of the transactions contemplated hereby and thereby;

(c)   A certificate signed by the President of Buyer releasing to Seller the purchase price amount of $300,000 previously delivered to Seller and currently held by Seller for and on behalf of Buyer; and

- 11 -

(d)    The Bill of Sale and Assignment Agreement, in the form attached hereto as Exhibit D, signed by an authorized officer of Buyer on behalf of Buyer.

9.2    **Seller's Closing Obligations.**   At the Closing, Seller shall deliver to Buyer the following:

(a)    The Required Assets, or if Seller has delivered the Required Assets to Buyer prior to the Closing, a certificate signed by an officer of Seller, on behalf of Seller, to the effect that the Required Assets have been earlier delivered to Buyer;

(b)    A certified copy of the resolutions of the Board of Directors of Seller authorizing the execution and delivery by Seller of this Agreement, and all related agreements, and the consummation of the transactions contemplated hereby and thereby;

(c)    A certificate signed by the President or Chief Financial Officer of Seller, on behalf of Seller, to the effect that the representations and warranties of Seller made in the Agreement are true and correct in all material respects as of the Closing Date and that Seller has fully performed all of its pre-closing commitments hereunder;

(d)  --  The Bill of Sale and Assignment Agreement, in the form attached hereto as Exhibit D, signed by an authorized officer of Seller on behalf of Seller;

(e)    Agreement for Release of Liens, in the form attached hereto as Exhibit E, signed by an authorized officer of Seller on behalf of Seller and an authorized officer of Silicon Valley Bank on behalf of Silicon Valley Bank;

(f)    UCC-3 Release in the form agreed duly signed by an authorized officer of Seller on behalf of Seller; and

(g)    Form PTO-1595 in the form agreed duly signed by an authorized officer of Seller on behalf of Seller.

## 10.  SURVIVAL OF WARRANTIES AND INDEMNIFICATION.

10.1    **Survival of Warranties.**   All representations and warranties made by Seller or Buyer herein, or in any certificate, schedule or exhibit delivered pursuant hereto, shall survive the Closing for a period of one hundred twenty days (120) after the Closing.

10.2    **Indemnified Losses.**   For the purpose of this Section 10.2 and when used elsewhere in this agreement, "Loss" shall mean and include any and all liability, loss, damage, claim, expense, cost, fine, fee, penalty, obligation or injury including, without limitation, those resulting from any and all actions, suits, proceedings, demands, assessments, judgments, award or arbitration, together with reasonable costs and expenses including the reasonable attorneys'

- 12 -

21589/0000/DOCS/1174442.5

PATENT
REEL: 012901 FRAME: 0216

fees and other legal costs and expenses relating thereto; *provided, however,* that Loss shall not include punitive or exemplary damages.

10.3    **No Indemnification by Seller.**  Seller is selling to Buyer the Required Assets defined in this Agreement "as is" and does not agree to defend, indemnify or hold harmless Buyer, any parent, subsidiary or affiliate of Buyer and any director, officer, employee, stockholder, agent or attorney of Buyer or of any parent, subsidiary or affiliate of Buyer from and against any Loss which arises out of or results from the transaction described herein.

10.4    **Indemnification By Buyer.**  Subject to the provisions and limitations set forth in this Section 10, Buyer agrees to defend, indemnify and hold harmless Seller, any parent, subsidiary or affiliate of Seller and any director, officer, employee, stockholder, agent or attorney of Seller or of any parent, subsidiary or affiliate of Seller from and against and in respect of any Loss which arises out of or results from:

(a)     any breach by Buyer of any covenant, or the inaccuracy or untruth of any representation or warranty of Buyer made herein; and/or

(b)     the use of the Required Assets after the Closing;

10.5    **Procedures for Indemnification.**  If any action, suit or proceeding shall be commenced against, or any claim or demand be asserted against Seller in respect of which Seller is entitled to demand indemnification under Section 10 of this Agreement, then as a condition precedent thereto, Seller shall promptly notify Buyer in writing to that effect, and with reasonable particularity and with reference to the applicable provision(s) of this Agreement.  Buyer shall have the right to assume the entire control of the defense, compromise or settlement of such action, suit, proceeding or claim and including the selection of counsel, subject to the right of Seller to participate (at its expense and with counsel of its choice) in the defense, compromise or settlement of such action, suit, proceeding, claim or demand, and in connection therewith, Seller shall cooperate fully in all respects with Buyer in any such defense, compromise or settlement. Buyer will not compromise or settle any such action, suit, proceeding, claim or demand without the prior written consent of Seller, which consent will not be unreasonably withheld or delayed. So long as Buyer is defending in good faith any such action, suit, proceeding, claim or demand asserted by a third party against Seller, Seller shall not settle or compromise such action, suit, proceeding, claim or demand without the prior written consent of Buyer, which consent will not be unreasonably withheld or delayed.  Seller shall make available to Buyer or its agents all records and other materials in Seller's possession reasonably required for contesting any third party claim or demand.  If Buyer shall fail to promptly and adequately defend any such action, suit, proceeding, claim or demand, then Seller may defend, through counsel of its own choosing, such action, suit, proceeding, claim or demand and (so long as Seller gives Buyer at least ten (10) days' notice of the terms of the proposed settlement thereof and permits Buyer to then undertake the defense thereof if Buyer objects to the proposed settlement) to settle such action, suit, proceeding, claim or demand and to recover from Buyer the amount of such Losses.

- 13 -

2/860/DOCS/DOCS/1174942.5

07/12/02  FRI 10:59 FAX 2063822669          SPECKMAN LAW GROUP                          ☒017

10.6     Period for Making Claims.  A claim for indemnification under this Section 10 may be brought, if at all, at any time after the Closing Date, with respect to any claim or claims for indemnification under this Section 10, provided, however, that any claim under Section 10.4(a) with respect to the inaccuracy or untruth of any representation or warranty must be brought, if at all, at any time prior to the time such representation or warranty expires pursuant to Section 10.1.

10.7     Exclusive Remedy.  From and after the Closing Date, to the extent permitted by law, the foregoing provisions of this Section 10 are the sole and exclusive remedy of Seller for any and all breaches of representations, warranties, covenants or agreements of Buyer contained herein.

## 11.   MISCELLANEOUS.

11.1     Expenses.  Each of the parties hereto shall bear its own expenses (including without limitation attorneys' fees) in connection with the negotiation and consummation of the transaction contemplated hereby.

11.2     Notices.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be personally or sent by certified or registered United States mail, postage prepaid, or sent by nationally recognized overnight express courier and addressed as follows:

    (a)     If to Seller:

      Sherwood Partners, Inc.
      1849 Sawtelle Blvd., Suite 543
      Los Angeles, CA 90025-7011
      Tel: 310-477-8990
      Fax: 310-477-8402
      Email: mdp@shrwood.com
      Attention: Martin Pichinson

      With copy to:

      Sulmeyer, Kupetz, Baumann & Rothman
      300 S. Grand Avenue, 14th Floor
      Los Angeles, CA 90071
      Tel: 213-626-2311
      Fax: 213-629-4520
      Email: mhoroupian@skbr.com
      Attention: Mark S. Horoupian, Esq.

- 14 -

21368/00605/DOCS/1749347.5

**PATENT
REEL: 012901 FRAME: 0218**

(b)      If to Buyer:

Infomediary Technology Solutions Corporation
4010 Point Eden Way
Hayward, CA 94545
Tel: 510-723-5000
Fax: 510 723-5097
Email: Jacques.Clay@InfomediaryCorp.com
Attention: Jacques Clay

With copy to:

Fenwick & West LLP
Two Palo Alto Square
Palo Alto, CA 94306
Tel: 650-494-0600
Fax: 650-494 1417
Attention: Mark A Leahy, Esq.

**11.3    Entire Agreement; Captions.** This Agreement, the Schedules and Exhibits hereto (which are incorporated herein by reference) and the agreements to be executed and delivered in connection herewith, together constitute the entire agreement and understanding between the parties and there are no agreements or commitments with respect to the transactions contemplated herein except as set forth in this Agreement. This Agreement supersedes any prior offer, agreement or understanding between the parties with respect to the transactions contemplated hereby. The captions in this Agreement are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Agreement.

**11.4    Amendment; Waiver.** Any term or provision of this Agreement may be amended only by a writing signed by Seller and Buyer. The observance of any term or provision of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a writing signed by the party to be bound by such waiver. No waiver by a party of any breach of this Agreement will be deemed to constitute a waiver of any other breach or any succeeding breach.

**11.5    No Third Party Beneficiaries.** Nothing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or to give any person, firm or corporation, other than the parties hereto, any rights or remedies under or by reason of this Agreement. .

**11.6    Execution in Counterparts.** For the convenience of the parties, this Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

- 15 -

21368/00600/DOCS/1174447.6

**11.7    Benefit and Burden.** This Agreement shall be binding upon, shall inure to the benefit of, and be enforceable by and against, the parties hereto and their respective successors and permitted assigns.

**11.8    Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of California (excluding application of any choice of law doctrines that would make applicable the law of any other state or jurisdiction) and, where appropriate, applicable federal law.

**11.9    Severability.** If any provision of this Agreement is for any reason and to any extent deemed to be invalid or unenforceable, then such provision shall not be voided but rather shall be enforced to the maximum extent then permissible under then applicable law and so as to reasonably effect the intent of the parties hereto, and the remainder of this Agreement will remain in full force and effect.

**11.10   Attorneys' Fees.** Should a suit or arbitration be brought to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees to be fixed in amount by the Court or the Arbitrator(s) (including without limitation costs, expenses and fees on any appeal). The prevailing party will be entitled to recover its costs of suit or arbitration, as applicable, regardless of whether such suit or arbitration proceeds to a final judgment or award.

- 16 -

21906/00820/DOCS/1174342.5

**PATENT**
**REEL: 012901 FRAME: 0220**

IN WITNESS WHEREOF, Buyer and Seller executed and delivered this Asset Purchase Agreement by their duly authorized representatives as of the Effective Date.

**SELLER:**                                    **BUYER:**

By: _____                       By: _____

Its: _____                      Its: _____

- 17 -

**PATENT**
**REEL: 012901 FRAME: 0221**

IN WITNESS WHEREOF, Buyer and Seller executed and delivered this Asset Purchase Agreement by their duly authorized representatives as of the Effective Date.

**SELLER:**                              **BUYER:**

By: _____                    By: _____

Its: _____                   Its: _____

- 17 -

RECORDED: 07/02/2002

**PATENT**
**REEL: 012901 FRAME: 0222**