# EXHIBIT 12

```
 1                        LISA N. BENADO
 2     IN THE UNITED STATES DISTRICT COURT
 3     FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 4
 5     INTELLECTUAL VENTURES I, LLC and
       INTELLECTUAL VENTURES II, LLC,
 6     Plaintiffs,
 7     vs.                   Civil Action No. 1:14-cv-00220-MRH
 8     ERIE FAMILY LIFE INSURANCE COMPANY;
       ERIE INDEMNITY COMPANY;
 9     ERIE INSURANCE COMPANY;
       ERIE INSURANCE EXCHANGE;
10     ERIE INSURANCE PROPERTY & CASUALTY
       COMPANY; and FLAGSHIP CITY INSURANCE COMPANY
11     Defendants.
       _____
12
       INTELLECTUAL VENTURES I, LLC and
13     INTELLECTUAL VENTURES II, LLC,
       Plaintiffs,
14
       v.
15
       HIGHMARK, INC;
16     HM INSURANCE GROUP, INC;
       HM LIFE INSURANCE COMPANY;
17     HIGHMARK CASUALTY INSURANCE COMPANY;
       and HM CASUALTY INSURANCE COMPANY,
18     Defendants.
19     NOTICED VIDEOTAPED DEPOSITION OF LISA N. BENADO
       Taken on Friday, February 13, 2015
20     9:34 a.m.
21     BE IT REMEMBERED THAT, pursuant to the Washington Rules of
       Civil Procedure, the deposition of LISA N. BENADO, was taken
22     before T.B.R., a Certified Shorthand Reporter
       and a Notary Public for the State of Washington, on
23     February 13, 2015, commencing at the hour of 9:34 a.m., the
       proceedings being reported at 10885 NE 4th Street,
24     Suite 700, Bellevue, Washington.
25     Job # 90378
```

1                    LISA N. BENADO

2    BY MS. PEARLSON:

3        Q.    And do you recognize this document?

4        A.    Yes, I recognize the document.

5        Q.    And what is that document?

6        A.    It's entitled "Patent Assignments," and the

7    parties are AllAdvantage.com as assignor.

8              Sorry.

9        Q.    That's okay.

10       A.    My stomach.

11             And Alset, Inc. as assignee.

12       Q.    And turning to the page previous, you signed

13   this document on page 3; correct?

14       A.    I signed the transmittal letter, yes.

15       Q.    Thank you for clarifying.

16             And you signed the Assignment Transmittal Letter

17   on July 2nd, 2002?

18       A.    That's correct.

19       Q.    And this was while you were at Speckman Law

20   Group?

21       A.    Yes.

22       Q.    The prior two assignments that filed with the

23   PTO were also on July 2nd, 2002; is that correct?

24       A.    I can take a look.

25       Q.    I can represent to you that they were.

1            LISA N. BENADO
2  file it with the PTO.
3      A.   Oh, I'm unaware of the intention of the parties.
4      Q.   Okay.
5      A.   I wasn't involved in the parties at the time of
6  the creation of this.
7      Q.   And after the document was created, did you come
8  to learn any understanding of why the document was
9  created?
10     A.   It was presented to me as a document that
11 transfers title of the -581.
12     Q.   When was it presented to you?
13     A.   During my representation of Alset at Speckman
14 Law Group.
15     Q.   And when it was presented to you, did you review
16 the document?
17     A.   Yes, I did.
18     Q.   And what did you review the document for?
19     A.   I viewed it as an assignment --
20          MR. HURT:  Go ahead.
21          THE WITNESS:  I'm sorry.
22          MR. HURT:  No.  Go ahead.  That's fine.
23          THE WITNESS:  I viewed it as an assignment
24 that would -- that I could record at the title office to
25 show transfer of title.

1         LISA N. BENADO

2    Q.    But at the time that you reviewed this document,
3 you believed that it did transfer title of the -581
4 patent?
5    A.    Yes.  And that's why it was recorded.
6    Q.    Did you speak with anyone at AllAdvantage about
7 this document?
8    A.    No, I did not.
9    Q.    Did you speak with anyone at AllAdvantage about
10 whether they believed the -581 patent was transferred?
11    A.    No, I did not.
12    Q.    Did you speak with anyone at Alset -- I don't
13 want to get into privileged information, but did you speak
14 with anyone at Alset about this document?
15          MR. HURT:  You can answer that question.
16          THE WITNESS:  Upon my request of documents
17 that transferred title, this was provided to me, and that
18 was the extent of my recollection of anything more between
19 my client and myself on this.
20 BY MS. PEARLSON:
21    Q.    Did you request the document from Alset, or did
22 they provide it to you?
23    A.    I requested all documents that reflect the chain
24 of title.
25    Q.    And Alset provided you this document --

1           LISA N. BENADO

2     A.    That's correct.

3     Q.    -- on that request?

4           And after they provided you this document, you

5  reviewed it?

6     A.    That's correct.

7     Q.    And after reviewing it, you field it with the

8  PTO?

9     A.    That's correct.

10    Q.    Upon your belief that this document transferred

11 title between -- of the -581 patent between AllAdvantage

12 to Alset; correct?

13    A.    That's correct.

14          MR. HURT:  I'm going to -- I was going to

15 object.  Calls for a legal conclusion.

16          You can answer that question, though.

17          THE WITNESS:  Yes.  Which I've already said

18 that I recorded it as a (witness whispering).

19          THE COURT REPORTER:  A little bit louder,

20 please.

21          THE WITNESS:  I already mentioned that I had

22 recorded this as a reflection of a transfer of title

23 between those two parties.

24 BY MS. PEARLSON:

25    Q.    And as you sit here today, you cannot recall

1              LISA N. BENADO

2         THE WITNESS: What was the question, please?

3    BY MS. PEARLSON:

4       Q.   Would you agree that there is no language in the

5    patent assignment agreement between AllAdvantage to Alset

6    which would transfer the -581 patent or its application to

7    Alset?

8         MR. HURT: Same objection.

9         THE WITNESS: I would not agree with that.

10   BY MS. PEARLSON:

11      Q.   And why not?

12      A.   Because it (As read) hereby assigns all rights,

13   including common law rights, title and interest in the

14   United States of America, Canada and European Union and

15   all other countries and jurisdictions of the world, and to

16   said patents, together with goodwill and business

17   symbolized by the said patents, and applications and

18   registrations hereof.

19      Q.   And why do you believe that language assigns the

20   -581 patent to Alset?

21        MR. HURT: Objection. Calls for a legal

22   conclusion.

23        You can answer that, Ms. Benado.

24        THE WITNESS: Because the parent patent is

25   listed under the list of patents.

1                    LISA N. BENADO

2              THE WITNESS:  It was presented to me as an

3    assignment of rights of transfer of title to my client

4    Alset, and that's why -- and it was recorded as such.

5    BY MS. PEARLSON:

6         Q.    So you're relying on Alset's representations to

7    you?

8              MR. HURT:  Objection.  Form.

9              THE WITNESS:  In part.

10   BY MS. PEARLSON:

11        Q.    Are you relying on anything else for your

12   assertion that the -581 patent was transferred from

13   AllAdvantage to Alset?

14        A.    The document itself.

15        Q.    Aside from the document itself and the fact that

16   Alset presented the document to you and stated that they

17   believed that it transferred title, is there anything else

18   that you're relying on for your belief that the -581

19   patent was transferred?

20             MR. HURT:  Objection.  Form.

21             THE WITNESS:  No.

22   BY MS. PEARLSON:

23        Q.    You have no independent knowledge of whether

24   AllAdvantage intended to transfer the -581 patent;

25   correct?

Page 121

1                    LISA N. BENADO

2     A.      I have no knowledge of AllAdvantage.

3     Q.      And you had no communications with AllAdvantage

4  about their intentions to transfer the -581 patent?

5     A.      I had no communications with AllAdvantage.

6     Q.      If AllAdvantage intended to transfer the -581

7  patent to Alset, they could have listed the -581 patent in

8  the enumerated list of patents; correct?

9             MR. HURT:  Objection.  Calls for a legal

10 conclusion.

11            You can answer.

12            THE WITNESS:  There are many ways of -- and

13 many different types of language that you can use to

14 convey -- to show conveyance of an application.

15 BY MS. PEARLSON:

16    Q.      And the -581 -- strike that.

17            And listing expressly the -581 patent in the list

18 of enumerated patents was not one way that the -- that

19 AllAdvantage chose to transfer the patent?

20            MR. HURT:  Same objection.  Calls for

21 speculation.

22            THE WITNESS:  I have no understanding of the

23 intent -- of direct knowledge of AllAdvantage.

24            MS. PEARLSON:  Can we mark Exhibit 11.

25            (Whereupon, a Release of Lien was marked