**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC, | ) | Civil Action No. 1:14-cv-00220-MRH |
| | ) | |
| | ) | FILING IN LEAD CASE |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Time: 9:00 a.m. |
| ERIE FAMILY LIFE INSURANCE COMPANY; | ) | Date: April 14, 2015 |
| ERIE INDEMNITY COMPANY; | ) | Place: Courtroom No. 6A |
| ERIE INSURANCE COMPANY; | ) | |
| ERIE INSURANCE EXCHANGE; | ) | The Honorable Mark R. Hornak |
| ERIE INSURANCE PROPERTY & CASUALTY | ) | |
| COMPANY; and | ) | ELECTRONICALLY FILED |
| FLAGSHIP CITY INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC, | ) | |
| | ) | Civil Action No. 2:14-cv-01131-MRH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HIGHMARK INC.; | ) | |
| HM INSURANCE GROUP, INC.; | ) | |
| HM LIFE INSURANCE COMPANY; | ) | |
| HIGHMARK CASUALTY INSURANCE | ) | |
| COMPANY; and | ) | |
| HM CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**ERIE AND HIGHMARK DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO DISMISS DUE TO LACK OF SUBJECT MATTER JURISDICTION**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     THERE IS NO PRESUMPTION THAT THE ALLADVANTAGE PATENT
        ASSIGNMENT TRANSFERRED OWNERSHIP OF THE '581 PATENT OR ITS
        APPLICATION ......................................................................................................2

III.    IV'S ARGUMENTS THAT THE ALLADVANTAGE PATENT ASSIGNMENT
        TRANSFERRED RIGHTS IN THE '581 PATENT ARE UNAVAILING.....................4

        A.     The Language of the AllAdvantage Patent Assignment Is Not Reasonably
               Susceptible to an Interpretation that it Transferred the '581 Patent Application ....4

               1.     "Said Patents" Unambiguously Refers to the Patents and Applications
                      Listed In the AllAdvantage Patent Assignment..........................................5

               2.     The Language Transferring "Goodwill of the Business Symbolized by
                      Said Patents" Does Not Transfer Patent Applications................................7

        B.     IV Identified No Extrinsic Evidence that Renders the Language of the
               AllAdvantage Patent Assignment Ambiguous .......................................................10

        C.     The Extrinsic Evidence Offered by IV Does Not Support A Finding that
               AllAdvantage Intended to Transfer the '581 Patent Application .........................12

               1.     Paul Hurley's Declaration is Hearsay and, Even if Accepted, Does Not
                      Provide Evidence of AllAdvantage's Intent .............................................12

               2.     Prosecuting Attorney Benado Admitted She Had No Knowledge of the
                      Parties' Intent ........................................................................................12

               3.     The Evidence of Alset's Actions After the Execution of the Patent
                      Agreement Does Not Overcome the Language of the Assignment Itself..13

IV.     CONCLUSION....................................................................................................14

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Abbott Point of Care, Inc. v. Epocal, Inc.*,
  666 F.3d 1299 (Fed. Cir. 2012)....................................................................4

*Advanced Micro Devices, Inc. v. Altera Corp.*,
  Case Nos. 98-1090, 98-1111, 1999 U.S. App. LEXIS 6272 (Fed. Cir. Apr. 7, 1999) ...........11

*Bd. of Trust. of Leland Stanford v. Roche Sys.*,
  131 S. Ct. 2188 (2013)................................................................................14

*Clouding IP, LLC v. Google Inc.*,
  No. CV 12-639-LPS, 2014 WL 3767489 (D. Del. July 28, 2014) ......................................3, 4

*DDB Techs., LLC v. MLB Advanced Media, LP*,
  517 F.3d 1284 (Fed. Cir. 2008)..............................................................4, 5, 8

*Deseret Mgmt. Corp. v. United States*,
  112 Fed. Cl. 438 (2013) ............................................................................8

*Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*,
  458 Fed. App'x 910 (Fed. Cir. 2012)..........................................................3, 6

*E.I. Du Pont de Nemours & Co. v. Okuley*,
  Civ. No. C2-97-1205, 2000 U.S. Dist. LEXIS 21385 (S.D. Ohio Dec. 21, 2000) ...............6, 8

*Euclid Chem. Co. v. Vector Corrosion Techs*,
  561 F.3d 1340 (Fed. Cir. 2009)........................................................3, 4, 6, 7

*General Protecht Group, Inc. v. Leviton Mfg. Co.*,
  651 F.3d 1355 (Fed. Cir. 2011)..................................................................6

*Gerber Sci. Int'l, Inc. v. Satisloh AG*,
  Civ. No. 3:07-CV-1392, 2009 U.S. Dist. LEXIS 79690 (D. Conn. Sept. 2, 2009) ...........4,5, 8

*In re Bartleson*,
  253 B.R. 75 (B.A.P. 9th Cir. 2000)..........................................................10

*Mayfair Wireless LLC v. Celico P'ship*,
  No. cv 11-772-SLR-SRF, 2013 WL 4657507 (D. Del. Aug. 30, 2013) ................................14

*McNutt v. General Motors Acceptance Corp.*,
  298 U.S. 178 (1936).................................................................................4

*SiRF Tech., Inc. v. ITC,*
    601 F.3d 1319 (Fed. Cir. 2010)..................................................................3

*Ultra-Temp Corp. v. Advanced Vacuum Sys., Inc.,*
    189 F.R.D. 17 (D. Mass. 1999)...............................................................13

*Univ. Patents, Inc. v. Kligman,*
    762 F. Supp. 1212 (E.D. Pa. 1991) ..........................................................5

**STATE CASES**

*City of Chino v. Jackson,*
    97 Cal. App. 4th 377 (2002) ...................................................................10

*Curry v. Moody,*
    40 Cal. App. 4th 1547 (1995) ............................................................10, 11

*Tahoe Nat'l Bank v. Phillips,*
    4 Cal. 3d 11 (1971) ................................................................................11

*Winet v. Price,*
    4 Cal. App. 4th 1159 (1992) ............................................................10, 11

**FEDERAL STATUTES**

35 U.S.C. § 261.............................................................................................1, 7

**STATE STATUTES**

Cal. Civ. Code § 1638 (2015) ......................................................................2, 10

## I.    INTRODUCTION

In their opening brief, Defendants demonstrated that U.S. Patent Number 6,519,581 ("'581 Patent") was never assigned from AllAdvantage.com ("AllAdvantage") to Alset, Inc. ("Alset"), and thus it could not have subsequently been assigned to Intellectual Ventures (IV). The written 2002 Patent Assignment between AllAdvantage and Alset ("AllAdvantage Patent Assignment") explicitly identifies and transfers rights in U.S. Patent 6,236,983 ("'983 patent") and several pending patent applications, related to the '983 patent.  It does not, however, identify the application which became the '581 patent, Application Number 09/844,858 ("'581 Patent Application"), which was pending at the time of the AllAdvantage Patent Assignment, as among the property transferred.  The absence of the '581 Patent Application from the express list of transferred assets, in combination with the express language of the AllAdvantage Patent Assignment, is fatal to Intellectual Ventures I LLC's ("IV's") standing to assert the '581 patent.

In its opposition to Defendants' motion to dismiss, IV asks the Court to make a series of errors in order to conclude that the AllAdvantage Patent Assignment did transfer the '581 Patent Application, notwithstanding its clear terms.  ***First***, IV asks the Court to impose a legally erroneous burden on Defendants to prove that the intent behind the AllAdvantage Patent Assignment was ***not*** to transfer the '581 Patent Application.  This extraordinary request finds no support in the law, and IV appears to have confused the issue of an assignment's validity with the issue of an assignment's meaning and effect.

***Second***, IV asks this Court to reached the flawed conclusion that two phrases of the AllAdvantage Patent Assignment encompassed transfer of the '581 Patent Application, even though those phrases plainly do not do so.  The first phrase on which IV relies, "said patents," specifically refers to the patents enumerated in the immediately preceding list of patents and patent applications, which do not include the '581 Patent Application.  The second phrase, which

IV concedes transfers "goodwill," could not encompass the '581 Patent Application.  By definition, "goodwill" is a category of assets separate from patent rights.  And even if were not, the assignment refers to the goodwill symbolized by the specified patents and applications. The '581 Patent Application was not specified.

*Third*, IV asks the Court apply extrinsic evidence to reform the express and unambiguous language of a contract.  Doing so would be a clear misapplication of California law.  Cal. Civ. Code § 1638 (2015).

***Fourth and finally***, IV would have the Court make an unwarranted factual finding that the extrinsic evidence proves AllAdvantage's intent to transfer ownership of the '581 Patent Application in 2002.  But even if the Court admits the extrinsic evidence despite the plain language of the assignment, IV's extrinsic evidence provides no evidence of AllAdvantage's intent.

## II.  THERE IS NO PRESUMPTION THAT THE ALLADVANTAGE PATENT ASSIGNMENT TRANSFERRED OWNERSHIP OF THE '581 PATENT OR ITS APPLICATION

IV first argues that the Court should presume that the AllAdvantage Patent Assignment transferred ownership of the '581 Patent Application because it was recorded with the U.S. Patent and Trademark Office.  *See* IV's Response to Defendants' Motion to Dismiss, Dkt. 81 at 6 (arguing that Defendants have "an elevated burden to show that AllAdvantage and Alset intended something other than to transfer title to the ['581 Patent Application]); *see also id.* at 9 ("As the assignee listed on its face, Alset presumptively owned the '581 Patent when it issued.").

IV's argument confuses the distinction between the *validity* of an assignment and its *effect/meaning*.[1]  *See Clouding IP, LLC v. Google Inc.*, No. CV 12-639-LPS, 2014 WL 3767489, at *5 n.12 (D. Del. July 28, 2014) ("While recording [an assignment with the Patent and Trademark Office] creates a presumption in [Plaintiff's] favor if the *validity* of the Agreement is challenged, *it has no bearing on the question of what substantive rights were actually transferred.*") (second emphasis added); *cf., e.g.*, MPEP § 301 (9th ed. 2014) ("[R]ecording of the assignment is merely a ministerial act; it is not an Office determination of the *validity* of the assignment document *or* the *effect* of the assignment document on the ownership of the patent property.") (emphases added).

The case on which IV primarily relies, *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010), demonstrates this distinction and the misunderstanding of law upon which IV's brief in opposition is predicated.  In *SiRF* (unlike here), the parties did not dispute the meaning of the patent assignment documents on which the party asserting the patent (Global Locate) relied.  Rather, the question in *SiRF* was whether the inventor lacked legal authority to assign his rights in the patent to Global Locate at the time of the assignment.  *Id.* at 1327.  The Federal Circuit held that there was a presumption of validity that arose from recordation of the assignment document—*i.e.*, a presumption that, at the time of the assignment, the inventor had the legal ability to assign the patent.  *Id.* at 1328.

Unlike this presumption of validity, however, courts do not impose any presumption that the assignment had the *effect* of transferring a patent or patent application.  *See Clouding IP*,

---

[1] "Valid" means "having legal efficacy or force; *especially*: executed with the proper legal authority and formalities <a *valid* contract>."  Merriam-Webster's Collegiate Dictionary (11th ed. 2003).  There are many examples of assignments that courts have found to be "valid," but that did not have the meaning or effect that a party to the contract believed.  *See, e.g., Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*, 458 Fed. App'x 910, 912 (Fed. Cir. 2012); *Euclid Chem. Co. v. Vector Corrosion Techs*, 561 F.3d 1340, 1343-44 (Fed. Cir. 2009).

2014 WL 3767489 at *5 n.12.  Instead, as they do in interpreting any contract, courts look to the contractual language to determine the contractual meaning, without imposing an evidentiary burden on the party challenging ownership.  *See, e.g.*, *DDB Techs., LLC v. MLB Advanced Media, LP*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) (analysis of whether patents in suit were within the scope of an assignment performed without mention of burden of proof); *Euclid Chem. Co. v. Vector Corrosion Techs*, 561 F.3d 1340, 1348-50 (Fed. Cir. 2009) (same); *Gerber Sci. Int'l, Inc. v. Satisloh AG*, Civ. No. 3:07-CV-1392, 2009 U.S. Dist. LEXIS 79690, at *13-14 (D. Conn. Sept. 2, 2009) (same).

Thus, the premise of IV's opposition—that "[d]efendants . . . bear the burden of demonstrating . . . that the contracting parties intended something other than to transfer ownership of the ['581 Patent Application]," (Dkt. 81 at 9-10)—is wrong.  As the plaintiff, IV bears the burden of proof that it owns the asserted patent.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Abbott Point of Care, Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012).

## III.   IV'S ARGUMENTS THAT THE ALLADVANTAGE PATENT ASSIGNMENT TRANSFERRED RIGHTS IN THE '581 PATENT ARE UNAVAILING

This Court must determine whether the AllAdvantage Patent Assignment transferred ownership of the '581 Patent Application.  As set forth in Defendants' opening brief, it did not. (Defendants' Motion to Dismiss, Dkt. 76 at 12-18).  Each of IV's arguments to the contrary fails.

### A.    The Language of the AllAdvantage Patent Assignment Is Not Reasonably Susceptible to an Interpretation that it Transferred the '581 Patent Application

Contrary to IV's assertion, Defendants do not bear any burden to show that "AllAdvantage and Alset explicitly and intentionally ***excluded***" the '581 Patent Application from the AllAdvantage Patent Assignment.  (Dkt. 81 at 11 (emphasis added)).  Far to the contrary, the

question for the Court is whether IV can meet *its* burden of proving that the AllAdvantage Patent Assignment shows a "clear and unmistakable" intention to *include* the '581 Patent Application. *Univ. Patents, Inc. v. Kligman*, 762 F. Supp. 1212, 1219 (E.D. Pa. 1991) (citing 35 U.S.C. § 261) ("An assignment . . . must show a clear and unmistakable intent to transfer ownership."). Neither clause on which IV relies is reasonably susceptible to an interpretation that it encompasses the '581 Patent Application.

### 1.    "Said Patents" Unambiguously Refers to the Patents and Applications Listed in the AllAdvantage Patent Assignment

IV first contends that the words "said patents" refer not only to the patents and patent applications expressly listed in the AllAdvantage Patent Assignment, but also to other unlisted patent applications, including the '581 Patent Application.  (Dkt. 81 at 11-13).  Specifically, IV argues that because the list of enumerated patents in the AllAdvantage Patent Assignment includes the parent '983 patent, the '581 Patent Application would have "automatically" transferred as the continuation of the '983 patent.  (Dkt. 81 at 6-8).  That is incorrect.

The assignment of a parent patent application does not have the effect of "automatically" transferring a continuation application, and none of the authorities IV cites in support of this argument hold otherwise. Instead, the cases IV cites all refer to assignments that transfer "*inventions*" or "*ideas*," not assignments limited to specific patents and patent applications. *Compare* Dkt. 76-1 (AllAdvantage Patent Assignment, assigning the specifically enumerated and issued '983 *patent*), *with DDB Techs., LLC v. MLB Advanced Media, LP*, 517 F.3d 1284, 1287 (Fed. Cir. 2008) (agreement that transferred "*ideas*, *inventions* and *improvements*" automatically transferred continuation) (emphases added), *and Gerber Sci. Int'l, Inc. v. Satisloh AG*, Civ. No. 3:07-CV-1392, 2009 U.S. Dist. LEXIS 79690, at *13-14 (D. Conn. Sept. 2, 2009) (agreement assigning "the *inventions* covered thereby and any divisions, reissues, continuations and

extensions thereof" automatically transferred continuation-in-part) (emphasis added), *and E.I. Du Pont de Nemours & Co. v. Okuley*, Civ. No. C2-97-1205, 2000 U.S. Dist. LEXIS 21385, at *80 (S.D. Ohio Dec. 21, 2000) (finding that agreement assigning "all rights and title to such ***ideas*** and ***improvements***" covered the transfer of future continuation-in-part related to those ideas) (emphases added).[2]  As explained in Defendants' opening brief, this distinction—between assigning a patent or patent application and assigning rights to an invention—is well recognized in Federal Circuit cases.  (Dkt. 76 at 16-17).

Indeed, IV's opposition fails to even address the Federal Circuit's decision in *Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*, 458 Fed. App'x 910 (Fed. Cir. 2012), cited in Defendants' opening brief.  In *Dow*, the Federal Circuit found that, because the patent at issue was not included in the enumerated list of transferred patents in an assignment document, it had not been assigned.  *Id.* at 912-13.  *Dow* is far closer to the facts of this case than any decision cited by IV.

IV also ignores the relevant holding of *Euclid Chem. Co. v. Vector Corrosion Techs.*, 561 F.3d 1340 (Fed. Cir. 2009) that an assignment transferring a parent patent and four listed patent applications, and "any and all divisional applications, continuations, and continuations in part" of the parent patent did ***not*** unambiguously transfer a continuation in part patent that was not listed.  The court reasoned that "[h]ad the assignee intended, through the assignment of 'continuations in

---

[2] IV also cites to *General Protecht Group, Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1361 (Fed. Cir. 2011) for the proposition that a continuation can issue automatically from the assignment of a patent.  (Dkt. 81 at 8).  *General Protecht Group* is a case concerning licensing, not ownership, and is therefore inapposite to the issues here.  Moreover, to the extent its relevant at all, it proves that IV's position is ***wrong***.  The court in *Protecht* held that there is an ***implied license*** to use a continuation patent where there is an express license to manufacture a product under the parent patent.  Of course, if the continuation patent was "automatically" included in the license to the parent patent, there would have been no need for the Federal Circuit to find an implied license to practice that patent.  It was only because the continuation patent was ***not*** deemed to be included as part of the express, written license that the implied license analysis was necessary at all.

part' to assign other *issued* U.S. patents, it would be expected that the Assignment would have . . . recited the patent number of the issued [continuation-in-part] patent." *Euclid Chem. Co.*, 561 F.3d at 1344. Similarly here, the AllAdvantage Patent Assignment expressly lists three pending patent applications related to the '983 patent. Applying the reasoning of *Euclid* (and normal canons of contractual interpretation), the Court should conclude that had the parties intended to transfer the '581 Patent Application, they would have similarly listed it.[3]

IV further argues that the AllAdvantage Patent Assignment assigned the '581 patent because at the time of the AllAdvantage Patent Assignment, the '581 patent had not yet issued and thus "it was a future right" which would automatically transfer with the transfer of the parent patent. (Dkt. 81 at 11). This is likewise wrong. At the time that the AllAdvantage Patent Assignment was executed, the '581 Patent Application had already been filed and was pending before the Patent Office. The '581 Patent Application was therefore an existing asset, not an inchoate "future right." By statute, a patent application is assigned the same way as an issued patent. 35 U.S.C. § 261 ("Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing."). Thus, contrary to IV's suggestion, pending patent applications are treated no differently than issued patents for purposes of patent assignment.[4]

## 2.   The Language Transferring "Goodwill of the Business Symbolized by Said Patents" Does Not Transfer Patent Applications

IV also contends that the language transferring the "goodwill of the business symbolized by said patents and applications and registrations thereof" effected transfer of the '581 patent.

---

[3] IV attempts to distinguish the case by claiming that the patent at issue was a continuation-in-part rather than a continuation, but that is irrelevant to the Federal Circuit's reasoning. The assignment in *Euclid* expressly encompassed continuations in part.

(Dkt. 81 at 13).  As explained in Defendants' opening brief, as well as below, this language is also insufficient to transfer the '581 patent.

IV posits without citation that "[t]he 'goodwill' of the business 'symbolized by said patents' includes the intellectual property itself."  *Id.*  By definition, however, "goodwill" is an asset that does ***not*** include patents or patent applications.  *See, e.g.*, Ex. 1,[5] Weston Anson, The Intangible Assets Handbook 7 (ABA Section of Business Law 2007) (noting that the Financial Accounting Standards Board "distinguishes between intangible assets that are finite-lived (e.g., patents and copyrights) and those that are indefinite-lived (e.g., goodwill and many trademarks)").  The Supreme Court has likewise described goodwill as "the value 'beyond the mere value of the capital, stock, funds, or property employed therein' associated with continued patronage."  *Deseret Mgmt. Corp. v. United States*, 112 Fed. Cl. 438, 449 (2013) (quoting *Newark Morning Ledger Co. v. United States*, 507 U.S. 546, 555 (1993)).  Thus, goodwill is not the underlying intellectual property itself as IV contends.

IV provides no basis for the Court to find that the word "goodwill" is reasonably susceptible to the opposite meaning here.  The transfer of the "goodwill of the business symbolized by said patents and applications" found in the AllAdvantage Patent Assignment did not assign any additional intellectual property rights as IV claims; it merely transferred the value

---

[4] In support of this argument, IV cites only inapposite cases in which the patent assignment was drafted ***before*** the existence of the continuations which were deemed to have transferred despite not being expressly listed in the document.  *See DDB Techs., LLC v. MLB Advanced Media, LP*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) (relevant employment agreement executed prior to the filing of the patents at issue); *Gerber Sci. Int'l, Inc. v. Satisloh AG*, Civ. No. 3:07-CV-1392, 2009 U.S. Dist. LEXIS 79690, at *13-14 (D. Conn. Sept. 2, 2009) (involving assignment assigning parent patent executed prior to the filing of the continuation-in-part at issue); *E.I. Du Pont de Nemours & Co. v. Okuley*, 2000 U.S. Dist. LEXIS 21385, at *80 (S.D. Ohio Dec. 21, 2000) (relevant assignment conveying parent patent executed prior to the technology at issue, which at the date of the declaratory judgment, had not yet been applied for).  These cases do not support IV's position.

[5] All Exhibits are attached to the Declaration of Leslie Pearlson.

of the expected continued patronage of the business related to the listed patents and applications.[6]

IV further contends that concluding the '581 Patent Application was not assigned would "read out 'said patents and applications' entirely." (Dkt. 81 at 13). That is likewise incorrect. First, IV omits the full phrase, which is "said patents and applications and registrations **thereof**." These words clearly refer to "said patents" and **their** applications. *See* Dkt. 76 at 13 (explaining that the application for the '983 Patent was U.S. application No. 09/017,112). The goodwill associated with such patent applications (such as the goodwill associated with products marked as "patent pending") is separate from the goodwill associated with the issued patent.

Furthermore, there is no reasonable basis on which the Court could conclude that "said patents and applications . . . thereof" actually refers to **unenumerated** property rights separate from the listed—*i.e.*, "said"—patents and applications. This is particularly true given that the AllAdvantage Patent Assignment expressly transferred three family applications of the '983 patent by name and patent number—Australian Patent No. 24774/99; Canadian Patent Application No. 2,318,852; and European Patent Office Application No. 99904362.3—but **did not** transfer by name or patent number the '581 patent or the '858 application. When the drafters of the AllAdvantage Patent Assignment intended to transfer family applications, they did so by express enumeration—they did not rely upon inclusion of a parent patent. (Dkt. 75 at 14).

---

[6] IV mischaracterizes Defendants' argument that the "goodwill" clause relates **only** to trademark proceedings. (Dkt. 81 at 14). In their opening brief, Defendants noted in a footnote that this phrase is normally included in trademark assignment documents to connote the value of the goodwill associated with trademarks, not that such a phrase indicates trademarks **were** transferred in the AllAdvantage Patent Assignment. Nor were Defendants arguing that this phrase transferred unlisted trademarks, but rather transferred the goodwill associated with the listed patents. (Dkt. 76 at FN 5). Therefore, IV's argument that this was a concession by Defendants that "the Agreement conferred intellectual property rights not expressly enumerated" is incorrect. (Dkt. 81 at 14).

**B.     IV Identified No Extrinsic Evidence that Renders the Language of the AllAdvantage Patent Assignment Ambiguous**

Lacking a basis in the language of the AllAdvantage Patent Assignment for its position, IV incorrectly suggests that California law compels the Court to rewrite the contract based on extrinsic evidence.  Although extrinsic evidence can be used to help determine the meaning of ***ambiguous*** language under California law, that evidence ***cannot*** be used to add to or subtract from the rights expressly granted in the assignment.  *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992); *Curry v. Moody*, 40 Cal. App. 4th 1547, 1554 (1995).

IV incorrectly argues that "[t]he first step the Court should follow when determining whether the Agreement is susceptible to IV's or Defendants' proposed constructions is to consider any offered extrinsic evidence of the contracting parties' intent."  (Dkt. 81 at 15-16).  To the contrary, California law is clear that the first step in contract interpretation is to look to the language of the contract itself to identify particular terms that may be ambiguous.  Cal. Civ. Code § 1638 (2015) ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"); *City of Chino v. Jackson*, 97 Cal. App. 4th 377, 382 (2002) ("The [intention] of the parties must, in the first instance, be derived from the language of the entire contract.") (alteration in original); *see also In re Bartleson*, 253 B.R. 75, 84 (B.A.P. 9th Cir. 2000) ("The intention of the parties is to be ascertained from the language of the contract; the language is to govern the contract's interpretation, if the language is clear and explicit and does not involve an absurdity."); *Pestmaster Servs., Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. CV 13-5039-JFW MRWX, 2014 WL 3844627, at *3 (C.D. Cal. July 17, 2014) ("Such intent is to be inferred, if possible, solely from the written provisions of the contract.").

Indeed, even the cases IV cites state that the intention of the parties is to be ascertained first from the language of the contract itself.  *Pub. Storage v. Sprint Corp.*, No. CV 14-2594-GW

- 10 -

PLAX, 2015 WL 1057923, at *6 (C.D. Cal. Mar. 9, 2015) ("'When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone' if the contractual 'language is clear and explicit [and not absurd].'") (alteration in original); *Advanced Micro Devices, Inc. v. Altera Corp.*, Case Nos. 98-1090, 98-1111, 1999 U.S. App. LEXIS 6272, at *5 (Fed. Cir. Apr. 7, 1999) ("[W]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ."); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 (1992) ("It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce.").

The Court may look at (without admitting) extrinsic evidence to determine whether the meaning of a specific contract term is "reasonably susceptible" to a party's proposed interpretation—*i.e.*, whether particular words of the written contract are ambiguous. *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992). But IV overstates the role of even this use of extrinsic evidence under California law, effectively asking the Court to use extrinsic evidence to find that, in the ***absence*** of express language stating that the parties did not intend to transfer the '581 Patent Application, the Court could use extrinsic evidence to rewrite the contract to express the intent for such a transfer. California law is clear that the Court may not do so. *See, e.g.*, *Curry v. Moody*, 40 Cal. App. 4th 1547, 1554 (1995) ("[E]xtrinsic evidence cannot be used to show that when the parties said 'Bunker Hill Monument' they meant 'the Old South Church' or that when they said 'pencils' they really meant 'car batteries.'"); *Tahoe Nat'l Bank v. Phillips,* 4 Cal. 3d 11, 16-17 (1971) (reversing trial court that admitted extrinsic evidence to show an instrument was intended as a mortgage where the language of the document "cannot reasonably be construed as a mortgage"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992) ("[P]arol evidence is [not admissible] to flatly contradict the express terms of the agreement.") (internal citations omitted).

- 11 -

C.     **The Extrinsic Evidence Offered by IV Does Not Support A Finding that AllAdvantage Intended to Transfer the '581 Patent Application**

Finally, even if the Court were to admit extrinsic evidence despite the clear contractual language, none of the three pieces of extrinsic evidence IV offers (Dkt. 81 at 16) proves the parties' mutual agreement at the time of the negotiation of the contract.  At most, the evidence offered by IV indicates Alset's belief that it had received certain property after the execution of the contract, but sheds no light on AllAdvantage's intent.

1.     **Paul Hurley's Declaration is Hearsay and, Even if Accepted, Does Not Provide Evidence of AllAdvantage's Intent[7]**

First, IV relies upon a declaration from Paul Hurley, a co-founder of Alset.  (Dkt. 81-2, "Hurley Declaration").  Contrary to IV's assertion that the Hurley Declaration "confirms that *the parties* intended to transfer the '858 Application," (Dkt. 81 at 16-17) (emphasis added), the Hurley Declaration makes no mention of AllAdvantage's intent (or lack of intent) to transfer the '581 patent or the '581 patent application.  Nor could Mr. Hurley provide any evidence of AllAdvantage's intent; he has no connection to that company.  *See* Dkt. 81-2 at ¶¶ 2-3.

2.     **Prosecuting Attorney Benado Admitted She Had No Knowledge of the Parties' Intent**

IV similarly relies on prosecuting attorney Lisa Benado's deposition testimony to argue that it was Alset's intention to purchase all assets from AllAdvantage.  (Dkt. 81 at 15-19).  However, Ms. Benado repeatedly made clear in her deposition that she was not present for any of the negotiations, drafting, or execution of the AllAdvantage Patent Assignment.

> Q While prosecuting the '581 patent . . . did you have any involvement in negotiating that agreement?
> A. No, I did not.
> Q. Did you have any involvement in executing that agreement?
> A. No, I did not.

---

[7] Defendants have separately moved to strike Mr. Hurley's declaration.  (Dkt. 82).

> Q. Do you know who the parties were at AllAdvantage that were
> involved in drafting that agreement?
>
> A. I do not know.

(Ex. 2, Benado Deposition at 77:12-21).

Therefore, she **could not** have any independent, non-hearsay, knowledge of the purpose

of the Assignment.  Further, Ms. Benado stated that she never even spoke to anyone at

AllAdvantage or knew who was at their company.

> Q. Did you speak to anyone at AllAdvantage about drafting that
> document?
>
> A. No, I did not...
>
> Q. Do you have any recollection of who was involved from
> AllAdvantage in negotiating that agreement?
>
> A. No, I do not.

*Id.* at 78:2-4, 9-11.  Therefore, Ms. Benado similarly cannot provide any evidence of

AllAdvantage's intent (or lack thereof) to transfer the '581 patent.  Indeed, Ms. Benado did not

even see the AllAdvantage Patent Assignment until five months **after** it was executed, and

therefore could not have any contemporaneous knowledge of the parties' intentions before the

assignment was executed.  *Id.* at 87:2-6.

> **3.      The Evidence of Alset's Actions After the Execution of the Patent
> Agreement Does Not Overcome the Language of the Assignment Itself**

IV finally argues that Alset's post-contractual conduct confirms that AllAdvantage had

an intent to transfer.  (Dkt. 81 at 19).  It does not.  In many disputes regarding the effect of a

patent assignment, an entity's belief that it possessed patent rights that it did not possess—and

prosecution of patent applications based upon that belief—did not confer rights that did not exist

to begin with.  *See, e.g., Bd. of Trust. of Leland Stanford v. Roche Sys.*, 131 S. Ct. 2188, 2199

(2013) (finding Defendant to be proper owner of patents at issue, despite the fact that plaintiff

filed for, prosecuted, and asserted patents at issue); *Ultra-Temp Corp. v. Advanced Vacuum Sys.,*

*Inc.*, 189 F.R.D. 17, 25 (D. Mass. 1999) (finding plaintiff not to be the proper owner of the patent at issue, despite plaintiff's prosecution of the patent);  *Mayfair Wireless LLC v. Celico P'ship*, No. cv 11-772-SLR-SRF, 2013 WL 4657507, at *4-5 (D. Del. Aug. 30, 2013) (infringement action dismissed for lack of subject matter jurisdiction due to a break in the chain of title, despite the fact that alleged assignee took responsibility for the prosecution of the patent at issue).  Indeed, it would be tautological to conclude that because a party believes it is the owner of a patent, it is the owner of the patent.  Similarly, Alset's prosecution of the patent, its filing of a terminal disclaimer alleging common ownership, and its payment of maintenance fees cannot trump the unambiguous language of the contract.[8]  IV cites no case in which a court has applied this circular reasoning, and this Court should not accept IV's invitation to become the first.

## IV.    CONCLUSION

For the foregoing reasons, as well as the reasons listed in Defendants' opening brief (Dkt. 71), Defendants respectfully request that the Court grant their motion to dismiss the allegations concerning the '581 patent pursuant to Rule 12(b)(1).

---

[8] IV's assertion that "Defendants cannot explain how AllAdvantage intended to retain ownership of the ['581 Patent Application] and yet never challenged Alset's claim of ownership or took steps to record its own assignment, engage in prosecution, pay maintenance fees, or license the '581 patent" is likewise incorrect.  It appears that AllAdvantage was not being actively managed during the period of the '581 patent's prosecution, though it continued to exist until 2006.  *See*, Ex. 3, February 2, 2001 article "Just an Online Minute... All Over for AllAdvantage", http://www.mediapost.com/publications/article/10394/just-an-online-minute-all-over-for-alladvantage.html?print, (accessed April 6, 2015) announcing closing of AllAdvantage's client-facing operations, *see also* Dkt. 76-6, AllAdvantage Certificate of Dissolution on December 31, 2006.

Dated: April 6, 2015

Respectfully submitted,
 /s/ Alexander Saksen 
John G. Ebken (PA I.D. 91031)
Alexander W. Saksen (PA I.D. 86049)
GORDON & REES LLP
707 Grant Street, Suite 3800
Pittsburgh, PA 15219
Tel.: (412) 577-7400
Fax: (412) 347-5461
Email: jebken@gordonrees.com
Email: asaksen@gordonrees.com

Gregory H. Lantier
(*pro hac vice*)
DC I.D. 492043
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: gregory.lantier@wilmerhale.com

David C. Marcus
(*pro hac vice*)
CA I.D. 158704
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Ave, Suite 2100
Los Angeles, CA 90071
Tel.: (213) 443-5300
Fax: (213) 443-5400
Email: david.marcus@wilmerhale.com

Monica Grewal
(*pro hac vice*)
MA I.D. 659449
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
Email: monica.grewal@wilmerhale.com

*Counsel for Defendants Erie et al. and Highmark et al.*