# Intellectual Ventures I LLC et al.
## v.
# Erie Indemnity Co. et al. and Highmark, Inc. et al.

No. 1:14-cv-00220, 2:14-cv-01131 (W.D. Pa.)

Rule 12(b)(6) Motion to Dismiss
April 14, 2015



# Organization

- Unpatentable Subject Matter Under 35 U.S.C. § 101

    – Summary of § 101 Substantive Law

    – Summary of § 101 Procedural Law

    – '581 Patent

    – '434 Patent

- Insufficient Pleading of IV's Direct Infringement Claims

- Appendix



# Unpatentable Subject Matter Under 35 U.S.C. § 101

## Summary of Substantive Law



# *Alice Corp. v. CLS Bank International*

- Supreme Court raised the bar for establishing subject-matter eligibility under 35 U.S.C § 101 for computer-implemented inventions

- Two-step test to determine whether computer-implemented invention is eligible for patent protection

  – Are the claims at issue directed to an abstract concept?

  – Is there an inventive concept in the claim?

- "Wholly generic computer implementation" is insufficient to transform the idea into a patent-eligible invention. *Alice Corp. v. CLS Bank Int'l, 134 S. Ct. 2347, 2350, 2358 (2014)*



# *Alice* Step 1: Abstract Concept

- Are the claims at issue **directed** to an abstract concept?

- Court must determine what the underlying invention is

    – *See Alice*, 134 S. Ct. at 2356 (characterizing abstract concept as "intermediated settlement" despite claim elements reciting specific use of shadow credit and debit records and additional technology)



# *Alice* Step 1: Abstract Concept (cont.)

- Ideas embodied by "technical computer solutions," Dkt. 52, at 3, or that involve "tech-laden claims," Dkt. 62, at 2, can qualify as abstract ideas.

  - *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) (method for generating set of data elements describing camera color/spatial image qualities)

  - *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336,1345 (Fed. Cir. 2013) (system for generating task to be performed in an insurance organization based on "a set of rules that are applied to" insurance transaction information)



# *Alice* Step 2: Inventive Concept

- Is there an inventive concept in the claim separate from the abstract idea?

- Inventive concept is "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355.

- The following does not give rise to an inventive concept:

    – "[T]he mere recitation of a generic computer." *Id.* at 2358.

    – "[L]imiting the use of an abstract idea to a particular technological environment." *Id.*

    – Adding "well-understood, routine, conventional features." *Id.* at 2359.



# Unpatentable Subject Matter Under 35 U.S.C. § 101

## Summary of Procedural Law



# § 101 Determination Properly Resolved on Pleadings

- "Challenges to patentability under section 101 may be brought based solely on the pleadings[] . . . ." *Open Text S.A. v. Box, Inc.*, -- F. Supp. 3d --, 2015 WL 269036, at *2 (N.D. Cal. Jan. 20, 2015).

    – *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014) (affirming Rule 12(b)(6) dismissal)

- Section 101 dismissals have become common after *Alice*

    – The District of Delaware has granted or granted in part 7 such motions (100% grant rate), invalidating 10 patents



# Claim Construction and § 101

- Claim construction is not a prerequisite to the § 101 analysis

  – "There is no requirement that [a] district court engage in claim construction before deciding § 101 eligibility." *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014).

  – "[C]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

  – *Content Extraction*, 776 F.3d at 1349 (rejecting argument that "district court erred by declaring its claims patent-ineligible under § 101 at the pleading stage without first construing the claims or allowing the parties to conduct fact discovery").



# Claim Construction and § 101 (cont.)

- Court may adopt a construction that is most favorable to plaintiff, congruent with Rule 12(b)(6) standard

    – *CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B.*, -- F. Supp. 3d --, 2014 WL 4922349, at *6, 9 n.3 (C.D. Cal. Aug. 29, 2014) ("[c]onstruing all [c]laims in a light most favorable to Plaintiff" and holding patent invalid under § 101)

- IV has not proposed any claim construction for any term



# Analysis of Each and Every Claim

- The § 101 inquiry requires analysis of only the representative claims

  - *The Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*, 2015 WL 436160 (D. Del. Jan. 27, 2015) (Sleet, J.) (invalidating 887 claims under § 101 on a motion to dismiss based on analysis of single independent claim and collective analysis of dependent claims together)

  - *See Content Extraction*, 776 F.3d at 1349 (invalidating 242 claims in four related patents based on analysis of only two claims)

- The parties need not stipulate as to which claims are representative— court can determine which claims are in fact representative

  - *See id*. at 1348 (reviewing "all the claims of [all] asserted patents" and agreeing with defendants that the chosen representative claim, contested by plaintiff, was in fact representative of all claims)



# U.S. Patent No. 6,519,581



# '581 Patent



(12) **United States Patent**
Hofmann et al.

(10) Patent No.:     US 6,519,581 B1
(45) Date of Patent:     Feb. 11, 2003

(57)     **ABSTRACT**

A system is provided for collecting information regarding a device or a user of a device. Information is collected from a discovery agent residing on the computer system. At certain times, the agent may be activated to collect the information. A sender transmits a discovery rule across a communication link to a computer system. The discovery agent and the discovery rule are separate code sequences or separate programs. The discovery rule is then applied to the information received from the discovery agent and the resulting information is returned back to the sender. Where the sender receives a user request, such as regarding the computer system, the discovery rule may be transmitted and the sender may use the resulting information to respond to the user request.

'581 Patent



# Summary of Technology

### SUMMARY OF THE INVENTION

Embodiments of the present invention provide a system for passively and actively collecting information about a device, such as a computing device and/or the user of the device. The system uses one or more discovery agents to collect information about a device or its user. The discovery agents do not have intelligence to understand the collected information. Instead, the discovery agents communicate the collected information to a discovery engine, which receives collected data from the discovery agents and applies discovery rules to the collected data. The discovery rules determine what, if any, action is to be taken based on the collected data.

'581 Patent, 1:61-2:6




# Summary of Technology (cont.)

- Discovery Agent

  - A discovery agent is a "code sequence" residing on the system programmed to collect a particular type of information from the target device

  - "The discovery agents themselves have no intelligence regarding how to interpret or act on the collected data." '581 Patent, 3:10-12.

  - Persons of ordinary skill would know how to code the discovery agents

> The following detailed description sets forth numerous specific details to provide a thorough understanding of the invention. ==However, those of ordinary skill in the art will appreciate that the invention may be practiced without these specific details.== In other instances, well-known methods, procedures, protocols, components, algorithms, and circuits have not been described in detail so as not to obscure the invention.

'581 Patent, 2:64-3:4



# Summary of Technology (cont.)

- Discovery Rule

  - A discovery rule is a separate "code sequence" that determines what, if any, action is to be taken based on the collected data

  - The rules "may be a series of Boolean operations, mathematical equations, or other comparisons or evaluations of the collected data."
    '581 Patent, 3:18-21.

```
if {disk_space < 2 MB}

then display {"Warning: available disk space is low"};
```

# Representative Claim 1

**1.** A method of collecting information, the method comprising:

transmitting a discovery rule across a communication link to a computer system, wherein the discovery rule is to be applied to data about the computer system or a user to generate information, and wherein the data is collected by a discovery agent located in the computer system, and

receiving the information from the computer system.

'581 Patent, Claim 1




# *Alice* Step 1: Abstract Idea

- Patent is directed to the abstract idea of collecting information about a device or its user

The present invention provides a system for passively and actively collecting information about a device, such as a computing device and/or the user of the device. The system uses one or more discovery agents (implemented using individual programs or code sequences) to collect information about a device or its user. The discovery agents themselves have no intelligence regarding how to interpret or act on the collected data. Instead, the discovery agents merely communicate the collected data to a discovery engine, which is a central control module for the information collection system. The discovery engine receives collected data from the discovery agents and applies one or more discovery rules to the collected data. The discovery rules determine what, if any, action is to be taken based on the collected data. As

'581 Patent, 3:5-18




# *Alice* Step 1: Abstract Idea (cont.)

- *Parker v. Flook*, 437 U.S. 584 (1978)

  - **Patent Claims**: computer-implemented method for collecting information about a variable (e.g., temperature) associated with a catalytic chemical conversion process, and calculating an updated alarm limit based on that data (i.e., applying a rule to collected data).

  - **Held**: manipulating data by using a computer to monitor data associated with a process is unpatentable subject matter

- Collecting information about a device or its user is an abstract idea

  - "The concept of data collection" is "undisputedly well-known." *Content Extraction*, 776 F.3d at 1347.



# *Alice* Step 1: Abstract Idea (cont.)

- Collecting information is not patentable even if it uses mathematical equations to do so:

  - 2015 Patent Office Guidance on Patent Eligible Subject Matter 14 (noting that patent is directed to abstract idea where "the claimed method simply describes the concept of gathering and combining data by reciting steps of organizing information through mathematical relationships." (citing *Digitech*, 758 F.3d 1344)).



# *Alice* Step 2: No Inventive Concept

• Claims recite well-known technology and do not improve the functioning of such technology

| Claim Term | Patent Disclosure | |
|---|---|---|
| "computer system" | for particular implementations of the invention. The computer system shown in FIG. **7** may be any type of computer, including a general purpose computer. | '581 Patent, 10:13-15 |
| "discovery rule" | any, action is to be taken based on the collected data. As discussed below, the discovery rules may be a series of Boolean operations, mathematical equations, or other comparisons or evaluations of the collected data. | '581 Patent, 3:18-21 |
| "communication link" | link **22**. Communication link **22** can be any type of communication link using any type of communication medium. | '581 Patent, 5:20-21 |
| "discovery agent" | computing device and/or the user of the device. The system uses one or more discovery agents (implemented using individual programs or code sequences) to collect information about a device or its user. The discovery agents themselves have no intelligence regarding how to interpret or act on the collected data. Instead, the discovery agents merely | '581 Patent, 3:7-12 |



# Claims Need Not Be Construed

- The claim terms identified by IV as needing construction are defined in the specification

| Claim Term | Patent Disclosure | |
|---|---|---|
| "computer system" | for particular implementations of the invention. The computer system shown in FIG. **7** may be any type of computer, including a general purpose computer. | '581 Patent, 10:13-15 |
| "discovery rule" | any, action is to be taken based on the collected data. As discussed below, the discovery rules may be a series of Boolean operations, mathematical equations, or other comparisons or evaluations of the collected data. | '581 Patent, 3:18-21 |
| "communication link" | link **22**. Communication link **22** can be any type of communication link using any type of communication medium. | '581 Patent, 5:20-21 |
| "discovery agent" | computing device and/or the user of the device. The system uses one or more discovery agents (implemented using individual programs or code sequences) to collect information about a device or its user. The discovery agents themselves have no intelligence regarding how to interpret or act on the collected data. Instead, the discovery agents merely | '581 Patent, 3:7-12 |



# Analysis of Each Claim

- Defendants analyzed each and every claim in their opening brief

| Claim | Analysis in Erie/Highmark's Opening Brief (Dkt. 46-1) |
|---|---|
| Independent Claim 1 | Pages 10-11 |
| Independent Claims 11, 20, 29, 39 | Pages 11-12 |
| Dependent Claims 3, 5, 13, 15, 21, 22, 31, 33, 41, 43 | Page 12, Footnote 6 |
| Dependent Claims 2, 6, 10, 19, 24, 28, 30, 34, 38, 47 | Page 12, Footnote 7 |
| Claims 4, 7, 14, 16, 23, 25, 32, 35, 42, 44 | Page 12, Footnote 8 |
| Claims 8, 9, 12, 17, 18, 26, 27, 36, 37, 40, 45, 46 | Page 12, Footnote 9 |

# U.S. Patent No. 6,510,434



# '434 Patent



(12) **United States Patent**
Anderson et al.

(10) Patent No.:     US 6,510,434 B1
(45) Date of Patent:        Jan. 21, 2003

(57)                    **ABSTRACT**

Retrieving information from a database using an index of XML (eXtensible Markup Language) tags and metafiles. The index includes XML tags that correspond to domains and categories. The domains and categories are selected to facilitate searching of the database. An XML tag can have a

* * *

correspond to those tags are identified. The metafiles can be used to identify additional tags that are relevant to the search. The identified tags are combined to create a unique key. The key is used to search the database to locate records that include the tags in their index component.

'434 Patent



# Summary of Technology

The present invention meets the needs described above by providing a method for locating information stored in a database using an index that includes tags and metafiles to locate the desired information. In general, an index is

'434 Patent, 2:35-38



# "Database" and "Index"

- Database
  - A database is a collection of records. '434 Patent, 2:66.

    - *e.g.*, a collection of "classified advertising or e-commerce information" about automobiles, restaurants, physicians, etc. *Id.* 13:29-32.

- Index
  - An index is "a guide that is used to locate information stored in a database." *Id.* 4:14-18.



# "Terms," "Categories," and "Domains"

- **Term:** users search the database by selecting words and phrases, or *terms*, that describe what they are looking for (*e.g.*, "Downtown," "American"). *See* '434 Patent, 12:11-15.

- **Category**: "a group of terms." *Id.* at 2:42-43.

- **Domain**: "a grouping of categories." *Id.* at 2:48-49.



# "Record"

```
                                                          406
   ┌──────────────────────────────────────────────┐
   │                                          408   │
   │  Terrace   Restaurant                          │
   │  125  Poplar  Street                           │
   │  Atlanta,  GA  30303                           │
   │                                                │
   │                                          410   │
   │  <Restaurant_Tag>    (Domain)    412           │
   │  <Catering_Tag>    (Domain)   414              │
   │  <Downtown_Geography_Tag>     (Category)   416 │
   │  <American_Cuisine_Tag>     (Category)   418   │
   │  <Valet_Parking_Amenity_Tag>     (Category)  420│
   │  <AMERICAN_EXPRESS_Payment_Tag>   (Category) 422│
   │  <VISA_Payment_Tag>  (Category)  424           │
   │  <MASTERCARD_Payment_Tag>   (Category)   426   │
   └──────────────────────────────────────────────┘
```

**Alpha Component**

**XML Index Component**

**Tags** (Written in XML)

'434 Patent, Fig. 4B

- Each record in the database includes an **Alpha Component** written in English, and an **XML Index Component** comprising a list of **tags** written in XML computer language. '434 Patent, 10:15-24.



# "Tags"

- Tags are terms written in a computing language such as XML that provide information about a record



'434 Patent, Fig. 4B

- A tag is generally "associated with data or text and conveys information about the data or text." '434 Patent, 2:55-56, 7:20-22.

# "XML Tags"

- XML inherently includes tags
  - "XML is a syntax for creating a markup language that uses a set of tags." '434 Patent, 8:67-9:1.

- XML is inherently hierarchical
  - XML supports the description of information in a hierarchical, structured manner. *Id.* at 9:12-14.

- XML was developed by a working group between 1996 and 1998



W3C, Extensible Markup Language (XML) 1.0 (Feb. 1998), http://www.w3.org/TR/1998/REC-xml-19980210



# "Category Tags" and "Domain Tags"

**Category tags** are used to associate individual search terms with a database record. Each category tag includes a search **term** and also identifies the **category** to which that term belongs.



'434 Patent, Fig. 4B

– Categories correspond to categories of information, like "Cuisine, Geography, Price, and Amenities." '434 Patent, 9:49-50.

**Domain tags** are used to identify the **domains** to which a database record belongs.



'434 Patent, Fig. 4B

– Domains represent general classes of products or services, such as "Restaurant" and "Automobile." *Id.* 7:57-58.



# "Metafiles"

- Metafiles are lists of related tags, and can arrange the tags hierarchically. '434 Patent at 2:63-65, 7:22-31; *see also* 4:42-43, 8:1-2, 8:55-57, 11:64-65.

  - *e.g.*, in a metafile, the "Pittsburgh" and "Erie" domain tags could be arranged as subservient to the "Restaurant" domain tag.

- Purpose:  if the search term "restaurant" results in a very large number of records, the search can be narrowed by adding related tags from the metafile (e.g., narrowing search to restaurants in Pittsburgh or Erie).  *See id.* at 13:62-14:11.

- Metafiles are created by the database designer and are generated and stored before any searching of the database takes place. *Id.* at 3:22-30, 7:22-31.



# "Key"

- The "key" is the combination of tags used in a search. '434 patent, 3:34-26

- "Once the query has been conducted to identify one of the XML tags, then that XML tag is combined with the other XML tags identified by the metafile and any other queries to create a unique key." '434 Patent, 3:30-34.



'434 Patent, Fig. 6A



# Representative Claim 1

**1**. A method for creating a database and an index to search the database, comprising the steps of:

creating the index by defining a plurality of XML tags including domain tags and category tags;

creating a first metafile that corresponds to a first domain tag; and

creating the database by providing a plurality of records, each record having an XML index component.

'434 Patent, Claim 1



'434 Patent, Fig. 5



# Searching



'434 Patent, Fig. 8



# Representative Claim 7

**7.** A method for searching a database of records using an index including a plurality of tags, comprising the steps of:

receiving a request for information;

identifying a first tag that is associated with the request;

determining whether a first metafile comprising a second tag corresponds to the first tag;

if the first metafile corresponds to the first tag, then determining whether the second tag is relevant to the request;

if the second tag is relevant to the request, then combining the first tag and the second tag to create a key; and

using the key to search the database to locate at least one record that includes the first tag and the second tag.

'434 Patent, Claim 7



# *Alice* Step 1: Abstract Idea

- Patent is directed to the abstract idea of creating an index by associating information with categories and using it to search a database

The present invention meets the needs described above by providing a method for locating information stored in a database using an index that includes tags and metafiles to locate the desired information. In general, an index is essentially a guide that is used to locate information stored in a database. Preferably, the index includes tags that cor-

'434 Patent, 2:35-41




Defendants' Rule 12(b)(6) Motion to Dismiss Presentation

39

# *Alice* Step 1: Abstract Idea (cont.)

- Organizing and searching for data in a database is abstract

    – *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (affirming invalidity of patent claiming computer systems comprising a database that "stores, retrieves and manipulates data."

    – *Enfish, LLC v. Microsoft Corp.*, -- F. Supp. 3d --, 2014 WL 5661456, at *1 (C.D. Cal. Nov. 3, 2014) (invalidating patent related to "an information management and database system" and "index structure . . . for searching")

    – *Wolf v. Capstone Photography, Inc.*, 2014 WL 7639820, No. 2:13-cv-09573 (C.D. Cal. Oct. 28, 2014) (invalidating patent directed to organizing, storing, and retrieving images using a database).

    – *Cyberfone*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (confirming that "using categories to organize, store, and transmit information" is abstract)



# *Alice* Step 2: No Inventive Concept

| Claim Term | Patent Disclosure | |
|---|---|---|
| XML tagging | and metafiles. XML is a syntax for creating a markup language that uses a set of tags. XML is a subset of the Standard Generalized Markup Language (SGML). The XML standard is maintained by the World Wide Web Consortium (W³C). | '434 Patent, 8:67-9:4 |
| Indexing or organizing data | The index **37** is essentially a guide to the records of the database **40**. The index includes a number of tags and | '434 Patent, 7:18-19 |
| No other computer hardware or software added | Referring now to FIG. **1A**, an exemplary computer system for implementing the present invention includes a conventional computer **20**, including a processor **21**, a system memory **22**, and a system bus **23** that couples the system memory **22** to the processor **21**. Although not shown in FIG. | '434 Patent, 5:5-9 |
| | As with most conventional computer systems, a user may enter commands and information into the computer **20** through a keyboard (not shown) and an input or pointing device, such as a mouse (not shown). These and other input | '434 Patent, 5:61-64 |



Defendants' Rule 12(b)(6) Motion to Dismiss Presentation          41

# *Alice* Step 2: No Inventive Concept (cont.)

- Invention does not alter or improve upon the preexisting database technology

- XML tagging existed previously

- Indices existed previously



# Claims Need Not Be Construed

- The claim terms identified by IV as needing construction are defined in the specification.

| Claim Term | Patent Disclosure |
|---|---|
| "XML tags" | In the exemplary embodiment discussed herein, the index includes a set of eXtensible Markup Language (XML) tags and metafiles. XML is a syntax for creating a markup language that uses a set of tags. XML is a subset of the<br><br>'434 Patent, 8:65-9:1 |
| "metafile" | many of the tags have an associated metafile. A metafile includes a list of related tags, such as related domain tags, category tags and hierarchy tags. A hierarchy tag establishes<br><br>'434 Patent, 4:40-42 |



# Claims Need Not Be Construed (cont.)

| Claim Term | Patent Disclosure |
|---|---|
| "XML index component" | Component and an XML Index Component. The Alpha Component contains identifying information for the record and the XML Index Component includes XML tags that are associated with the record. When a search request is<br><br>'434 Patent, 3:2-3 |



# Claims Need Not Be Construed (cont.)

| Claim Term | Patent Disclosure |
|---|---|
| "key to search the database" | associated with the record. **When a search request is received, a set of tags that correspond to the request are identified. The set of tags is compiled as a key and is used to search the database to locate records that include the set of tags.**<br><br>'434 Patent, 3:3-7 |
| "query code" | the server in step 702. The client then receives XML tags and metafiles that correspond to the search request, as well as query code from the server in step 704. In one embodiment, the query code is written in the JAVA programming language and prompts the user for additional information via pop-up windows. **The query code uses the XML tags and the metafiles received from the server to formulate the necessary queries to the user.** The query code is executed on the client in step 706. Once the query code is executed, the query<br><br>'434 Patent, 14:38-46 |



# Analysis of Each Claim

- Defendants analyzed each and every claim in their opening brief

| Claim | Analysis in Erie/Highmark's Opening Brief (Dkt. 46-1) |
|---|---|
| Independent Claim 1 | Page 15 |
| Independent Claims 7, 14, 19, 25, 27 | Pages 16-17 |
| Dependent Claims 4, 13, 18, 26 | Page 17, Footnote 11 |
| Dependent Claims 8, 9, 10, 11, 15, 16, 17, 24, 28 | Page 17, Footnote 12 |
| Claims 2, 3, 5, 6, 12, 20, 21, 23 | Page 17, Footnote 13 |

# Insufficient Pleading of Direct Infringement Claims

# IV's Complaint Is Insufficient

- Rather than identify accused products—as required by Rule 8 and Form 18—IV's complaint merely parrots back language from the patent.

| Products Accused of Infringing |
| --- |
| the United States, without Intellectual Ventures I's authority, their computer systems that use the patented systems and methods for identifying and characterizing errant electronic files. By way |
| Erie Matter, Complaint ¶ 42 |

| Title of '298 Patent |
| --- |
| **METHOD AND APPARATUS FOR IDENTIFYING AND CHARACTERIZING ERRANT ELECTRONIC FILES** |
| '298 Patent, Title |



# IV's Complaint Is Insufficient (cont.)

- Form 18 Does Not Relax the *Iqbal* and *Twombly* Standard
  - "Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013).

Form 18. Complaint for Patent Infringement.

(Caption – See Form 1.)

1.  (Statement of Jurisdiction — See Form 7.)

2.  On ____date____, United States Letters Patent No. _____ were issued to the plaintiff for an invention in an *electric motor*. The plaintiff owned the patent throughout the period of the defendant's infringing acts and still owns the patent.

3.  The defendant has infringed and is still infringing the Letters Patent by making, selling, and using *electric motors* that embody the patented invention, and the defendant will continue to do so unless enjoined by this court.

4.  The plaintiff has complied with the statutory requirement of placing a notice of the Letters Patent on all __*electric motors*__ it manufactures and sells and has given the defendant written notice of the infringement.

Therefore, the plaintiff demands:

(a)  a preliminary and final injunction against the continuing infringement;

(b)  an accounting for damages; and

(c)  interest and costs.




# '581 Allegations

| Highmark Complaint | Erie Complaint | Old Republic Complaint |
|---|---|---|
| "computer systems that use the patented systems and methods for configuration management," including Highmark's "implementation and use of its back-end configuration management and distribution software and services."  Dkt. 1, ¶ 28. | "computer systems that use the patented systems and methods for configuration management," including Erie's "implementation and use of its back-end configuration management and distribution software and services."  Dkt. 1, ¶ 30. | "computer systems that use the patented systems and methods for configuration management," including Old Republic's "implementation and use of its back-end configuration management and distribution software and services."  Dkt. 1, ¶ 29. |

# '002 Allegations

| Highmark Complaint | Erie Complaint | Old Republic Complaint |
| --- | --- | --- |
| "computer systems that use the patented systems and methods for displaying user specific resources on a mobile interface," including Highmark's "implementation and use of its HM QuickQuote application." Dkt. 1, ¶ 32. | "computer systems that use the patented systems and methods for displaying user-specific resources on a mobile interface," including Erie's "implementation and use of its ERIEmobile [sic] application." Dkt. 1, ¶ 34. | "computer systems that use the patented systems and methods for displaying user specific resources on a mobile interface," including Old Republic's "implementation and use of its OR Mobile application." Dkt. 1, ¶ 33. |



# '434 Allegations

| Highmark Complaint | Erie Complaint | Old Republic Complaint |
|---|---|---|
| "computer systems that use the patented systems and methods for searching databases with metafiles," including Highmark's "implementation and use of database services and systems that return information based on the content of metafiles." Dkt. 1, ¶ 36. | "computer systems that use the patented systems and methods for searching databases with metafiles," including Erie's "implementation and use of database services and systems that return information based on the content of metafiles." Dkt. 1, ¶ 38. | "computer systems that use the patented systems and methods for searching databases with metafiles," including Old Republic's "implementation and use of database services and systems that return information based on the content of metafiles." Dkt. 1, ¶ 37. |

# '298 Allegations

| Highmark Complaint | Erie Complaint | Old Republic Complaint |
|---|---|---|
| NA | "computer systems that use the patented systems and methods for identifying and characterizing errant electronic files," including Erie's "implementation and use of software and services that search and identify potentially malicious information." Dkt. 1, ¶ 42. | NA |

# IV's Complaint Is Insufficient (cont.)

- This circular pleading strategy is insufficient under the Federal Rules:

  - *Fifth Mkt., Inc. v. CME Grp., Inc.*, 2009 WL 5966836, at *1 (D. Del. May 14, 2009)

  - *Interval Licensing LLC v. AOL, Inc.*, 2010 WL 5058620, at *2 (W.D. Wash. Dec. 10, 2010)

  - *Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538, 539, 543 (E.D. Tex. 2010)

  - *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014)



# IV's Complaint Is Insufficient (cont.)

- Local Patent Rules Disclosure Schedule

    - 14 days after Rule 26(f) conference (LPR 3.1):

        - Initial Disclosures

        - Production of documents

        - Production of source code

        - Production of schematics

        - All prior art

    - 30 days after Rule 26(f) conference (LPR 3.2):

        - IV's disclosure of asserted claims and infringement contentions

February 1, 2013

Local Rules of Court
Western District of Pennsylvania

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**LOCAL PATENT RULES**

**1. SCOPE OF RULES**

**LPR 1.1     AUTHORITY**

The Local Patent Rules for the United States District Court for the Western District of Pennsylvania are promulgated as authorized by and subject to the limitations of Federal Rule of Civil Procedure 83.

**LPR 1.2     CITATION**

These are the Local Rules of Practice for Patent Cases before the United States District Court for the Western District of Pennsylvania.  They should be cited as "LPR," followed by the applicable rule number and subsection.

**LPR 1.3     APPLICATION AND CONSTRUCTION**

These rules apply to all civil actions filed in or transferred to this Court which allege infringement of a utility patent in a complaint, counterclaim, cross-claim or third party claim, or which seek a declaratory judgment that a utility patent is not infringed, is invalid or is unenforceable.  The Court may accelerate, extend, eliminate, or modify the obligations or deadlines set forth in these Local Patent Rules based on the circumstances of any particular case, including, without limitation, the complexity of the case or the number of patents, claims, products, or parties involved.  If any motion filed prior to the Claim Construction Hearing provided for in LPR 4.4 raises claim construction issues, the Court may, for good cause shown, defer the motion until after completion of the disclosures, filings, or ruling following the Claim Construction Hearing.  The Local Civil Rules of this Court shall also apply to these actions, except to the extent that they are inconsistent with these Local Patent Rules.

95



# Appendix



# '581 Patent Claims



# Independent Claim 11

**11**. In a computer system, method of collecting information comprising:

receiving a discovery rule across a communication link from a sender,

applying the discovery rule to data about the computer system or a user to generate information, and wherein the data is collected by a discovery agent located in the computer system when the discovery agent is activated and without requiring action by the user; and

communicating the information across the communication link back to the sender of the discovery rule.

'581 Patent, Claim 11




# Independent Claim 20

**20**. A method of collecting information, the method comprising:

receiving a user request regarding the computer system;

transmitting a discovery rule across a communication link to a computer system, wherein the discovery rule is to be applied to data about the computer system or a user to generate information, and wherein the data is collected by a discovery agent located in the computer system when the discovery agent is actuated and without requiring action by the user;

receiving the information from the computer system; and

providing the user with a response to the user request.

'581 Patent, Claim 20




# Independent Claim 29

**29**. A computer readable medium having stored therein a plurality of sequences of executable instructions, which, when executed by a processor, cause the system to:

transmit a discovery rule across a communication link to a computer system, wherein the discovery rule is to be applied to data about the computer system or a user to generate information, and wherein the data is collected by a discovery agent located in the computer system, and

receive the information from the computer system.

'581 Patent, Claim 29




# Independent Claim 39

**39.** A computer readable medium having stored therein a plurality of sequences of executable instructions, which when executed by a processor, cause the system to:

> receive a discovery rule across a communication link from a sender, apply the discovery rule to data about the computer system or a user to generate information, and wherein the data is collected by a discovery agent located in the computer system when the discovery agent is activated and without requiring action by the user; and

communicate the information across the communication link back to the sender of the discovery rule.

'581 Patent, Claim 39



# Dependent Claims

- "Partial Automation" Limitations

  - Dependent claims 2, 6, 10, 19, 24, 28, 30, 34, 38, and 47

  - Discovery rules automatically transmitted to computer system being monitored (e.g., claims 2, 6)

  - Discovery agents automatically collect data (e.g., claim 10)

  - Automation of a process is insufficient to transform that process into a patent-eligible application of the underlying idea. *See Accenture*, 800 F. Supp. 2d 613, 616, 621 (D. Del. 2011), *aff'd*, 728 F.3d 1336.

  - Computers are, by definition, "automatic electronic device[s] for performing mathematical or logical operations." *Bancorp Servs.*, 687 F.3d at 1277.



# Dependent Claims (cont.)

- "Technical Assistance" Limitations

  – Dependent claims 3, 5, 13, 15, 21-22, 31, 33, 41, and 43

  – Using invention to obtain "assistance regarding the computer system" (e.g., claim 3)

  – "Technical assistance" is provided after receiving collected information (e.g., claim 5)

  – "[L]imiting an abstract idea to one field of use" or application does "not make the concept patentable." *Bilski v. Kappos*, 561 U.S. 593, 612 (2010).



# Dependent Claims (cont.)

- "Origin of Rule" Limitations

    – Dependent Claims 4, 14, 23, 32, and 42

    – Rule originates from "a remote individual" receiving a request (e.g., claim 4)

    – These limitations are token pre-solution activities, which are "normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012).

    – Limitations do not provide any additional detail about the rules themselves



# Dependent Claims (cont.)

- "Discovery Rules as Separate Code Sequences" Limitations

  – Dependent claims 7, 16, 25, 35, and 44

  – A "computer [that] receives and sends . . . information over a network—with no further specification—is not even arguably inventive." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).



# Dependent Claims (cont.)

- "Collect Data When it is Needed" Limitations

    – Dependent Claims 8-9, 12, 17-18, 26-27, 36-37, 40, and 45-46

    – Data collected in response to user request (claims 12, 40)

    – Data collected when discovery rule requires such data (claims 8, 17, 26, 36, 46)

    – Data collected according to schedule (claims 9, 18, 27, 37, 46)

    – Collecting information in response to a request or when the computer system requires such information does not give rise to an inventive concept. *See buySAFE*, 765 F.3d at 1355.



'434 Patent Claims



# Independent Claim 14

**14**. A computer-readable medium having stored thereon computer-executable instructions for searching a database of records using an index including a plurality of tags, comprising the steps of:

  receiving a request for information;

  identifying a first tag that is associated with the request;

  identifying a second tag that is associated with the request by determining that the second tag is included in a metafile associated with the first tag;

  combining the first tag and the second tag to create a key; and

  using the key to search the database to locate records including the first tag and the second tag.

*'434 Patent, Claim 14*




# Independent Claim 19

**19**. A method for searching a database of information, comprising the steps of:

receiving a request for information from a client, the request having a first term;

identifying a first XML tag that is associated with the first term;

determining whether a first metafile corresponds to the first XML tag;

if the first metafile corresponds to the first XML tag, then transmitting the first XML tag, the first metafile and query code to the client;

once the client conducts a query by executing the query code using the first XML tag and the first metafile, then receiving query results including a first set of XML tags from the client;

combining the first set of XML tags into a key;

using the key to search the database to locate records including the first set of XML tags; and

delivering the records including the first set of XML tags to the client.

'434 Patent, Claim 19




# Independent Claim 22

**22**. A method for identifying a record from a database of records that satisfies a request for information, comprising the steps of:

receiving the request for information;

sending the request to a server;

receiving a first XML tag and a first metafile that are associated with the request and query code from the server;

executing the query code to determine a first set of XML tags that are associated with the request;

sending the first set of XML tags to the server;

receiving the record from the server; and

delivering the record.

'434 Patent, Claim 22




# Independent Claim 25

**25**. A method for creating a metafile that can be used to locate records in a database that are related to a trade name, comprising the steps of:

selecting an XML tag that is associated with the trade name; and

creating a metafile that is associated with the first domain tag by:

selecting a first XML tag that is associated with an authorized dealer of a product associated with the trade name;

selecting a second XML tag that is associated with an authorized service provider for the product;

selecting a third XML tag that is associated with an authorized parts provider for the product,

so that the metafile can be used to locate records in the database that are related to the trade name.

'434 Patent, Claim 25




# Independent Claim 27

**27**. A method for locating records related to a trade name, comprising the steps of:

receiving a request for information that includes the trade name;

identifying a first tag that is associated with the trade name;

identifying a metafile that is associated with the trade name;

determining whether the metafile identifies additional tags that are associated with the trade name;

if the metafile identifies additional tags that are associated with the trade name, then conducting a query to determine which of the additional tags are relevant to the request;

if the query determines that a second tag is relevant to the request, then combining the first tag and the second tag to create a key;

using the key to search a database to locate records that include the first tag and the second tag.

'434 Patent, Claim 27



# Dependent Claims

- "Field-of-Use" Limitations

  - Dependent claims 4, 13, 18 and 26

  - Domain tags must "identify products" that are marketed to a user (e.g., claim 4)

  - Category tags must "include a brand tag, a cuisine tag, a payment option tag, and an amenity tag" (e.g., claim 13)

  - Category tags must "identif[y] a group of terms providing business information" (e.g., claim 18)

  - Identifying tags "in response to a request for information about authorized service providers of the product associated with the trade name" (e.g., claim 26)

  - "[L]imiting an abstract idea to one field of use" or application does "not make the concept patentable." *Bilski*, 561 U.S. at 612 (citing *Flook*, 437 U.S. 584).



# Dependent Claims (cont.)

- "Relational" Limitations

  – Dependent Claims 8-11, 15-17, 24, 28

  – Parsing user search term to identify relevant tags (e.g., claim 8)

  – Determining whether search terms are ambiguous, and if so, suggesting more appropriate tags (e.g., claims 9-11, 15, 17, 24)

  – Matching first search term with first tag (e.g., claim 16) and creating key based on tag (e.g., claim 28)

  – These limitations are token pre-solution activities, which "is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law." *Mayo*, 132 S. Ct. at 1298.



# Dependent Claims (cont.)

- "Organizational Structuring" Limitations

    – Dependent Claims 2-3, 5-6, 12, 20-21, and 23

    – Describes the organizational structure of data in the metafiles or type of tags

    – These limitations are token pre-solution activities, which "is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law." *Mayo*, 132 S. Ct. at 1298.

