# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
:                                                                    **PROVISIONAL ORDER**
INTELLECTUAL VENTURES I LLC, et al.,        :            **REGARDING CLAIM**
:                                                                    **CONSTRUCTION AND**
Plaintiffs,          :            **PATENT SUMMARIES**
:
-against-                            :            14 Civ. 4638 (AKH)
:
CITIGROUP, INC., et al.                              :
:
Defendants.     :
:
---------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

On March 26, 2015, the Court held a hearing in accordance with *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 516 U.S. 370 (1996), regarding the five patents asserted in this case: U.S. Patent Nos. 6,819,271 (the "'271 Patent"), 7,984,081 (the "'081 Patent"), 6,546,002 (the "'002 Patent"), 7,634,666 (the "'666 Patent"), and 5,745,574 (the "'574 Patent").

I.   **Applicable Law**

The purpose of a *Markman* hearing is to allow a court to examine and resolve disputes over the scope and meaning of the claim language in the patent. "[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." *Markman*, 52 F.3d at 970–71.

"The words of a claim are generally given their ordinary and customary meanings as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Entm't Am., LLC*, 699 F.3d 1362, 1365 (Fed. Cir. 2012). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little

1

more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). "Claims are interpreted with an eye toward giving effect to all terms in the claim." *Digital-Vending Servs. Int'l v. University of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012).

To determine how a "person of ordinary skill in the art" would interpret the claim language, a Court looks at the claims in the context of the patent as a whole, to wit, the patent specification and the prosecution history (*i.e.*, the "intrinsic record"). *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005). "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims. Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314-15. The patent specification is also "highly relevant" and often "dispositive" because it is the "single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. Similarly, the prosecution history, if in evidence, "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* at 1317.

When it comes to providing a jury with instructions, the trial court should provide adequate guidance that "can be understood and given effect by the jury once it resolves the issues of fact which are in dispute." *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004). "[T]he district court must instruct the jury on the meanings to be attributed to all disputed terms used in the claims in suit so that the jury will be able to intelligently determine the questions presented." *Id.*

II. **Rulings**

The Court's rulings regarding the disputed claim terms and summaries of the patents follow. The summaries may be subject to future revision.

A. **The '271 Patent**

1. **Summary of the Patent**

The '271 Patent, entitled "Parallel Compression and Decompression System and Method Having Multiple Parallel Compression and Decompression Engines," claims a method for compressing data to be stored in memory in order to reduce its size and increase the effective capacity of installed memory. Prior art compressed data serially and, as a result, was a slow process. The '271 Patent claims a compression (and decompression) method that uses "parallel compression engines" that compress (or decompress) different portions of the data in parallel. Each "parallel compression engine" implements a "parallel data compression algorithm" to the respective portions of data in order to compress it.

2. **Disputed Terms**

| | Claim Term | Court's Construction |
|---|---|---|
| 1. | Parallel data compression algorithm | *An algorithm implemented by a parallel compression engine to compress more than one unit, or stream, of uncompressed data at a time* |
| 2. | Parallel data decompression algorithm | *An algorithm implemented by a parallel decompression engine to decompress one or more units of compressed data at a time* |

B. **The '081 Patent**

1. **Summary of the Patent**

The '081 Patent, entitled "System and Method for Non-Programmer to Dynamically Manage Multiple Sets of XML Document Data," claims a system for organizing and modifying data in XML documents to make the document compatible and readable by a recipient user. XML

3

documents are sometimes difficult to exchange between companies because XML document formats differ. The '081 Patent purports to solve this problem by (1) organizing XML components into data objects, (2) mapping the components of the data objects to a "record type," and (3) organizing those record types into a hierarchy, readable in the recipient company's XML format. The '081 Patent also claims to allow users unfamiliar with the specifics of XML document formatting to modify components of XML documents by displaying the XML information in a familiar format, rather than XML text.

### 2. Disputed Terms

| | Claim Term | Court's Construction |
|---|---|---|
| 1. | Primary record type | *A unit of information, as a subset of a more general category of information, extracted from business documents and arranged for a user* |
| 2. | Management record type | *Collection of primary record types organized into a hierarchy* |

### C. The '666 Patent

#### 1. Summary of the Patent

The '666 Patent, entitled "Crypto-Engine for Cryptographic Processing of Data," claims a co-processing crypto-engine (also referred to as a "chip" or "processor"), designed to assist a host processor in the encryption and decryption of data. The engine can use two protocols for encrypting and decrypting data: RSA (which bases computations on the multiplication of large prime numbers) and ECC (which bases computations on an elliptic curve). Both protocols use modular multiplication.

#### 2. Disputed Terms

| | Claim Term | Court's Construction |
|---|---|---|
| 1. | Multiplication unit | *A unit that performs multiplication* |

4

|   | Claim Term | Court's Construction |
|---|---|---|
| 2. | Addition unit | *A unit that performs addition* |
| 3. | Sign inversion unit | *A unit that changes positive numbers to negative numbers and negative numbers to positive numbers* |
| 4. | Host processor | *A processor, such as a network or personal computer, that delivers signals or information to the cryptographic coprocessor for accelerated encryption or decryption* |
| 5. | High frequency manipulated data | *Data operated on at a higher rate* |
| 6. | Lower frequency manipulated data | *Data operated on at a lower rate* |

### D. The '002 Patent

#### 1. Summary of the Patent

The '002 Patent, entitled "System and Method for Implementing an Intelligent and Mobile Menu-Interface Agent," claims a method permitting users to access data located on various computer-related devices on their mobile devices. Typically, in order to send documents from one device to another, users must manually generate the document in a format that is compatible with the browser, operating system, or program installed on the recipient device. The '002 Patent purports to solve this problem by way of a "mobile interface," enabling users to access user-specific information from any computer connected to a network.

#### 2. Disputed Terms

|   | Claim Term | Court's Construction |
|---|---|---|
| 1. | Mobile interface | *An interface, accessible on various computing devices, allowing a user to access files and other data from various computing devices* |
| 2. | Retrieving / retrieved | Interpretation of terms not required |

5

E.   The '574 Patent

   1.   Summary of the Patent

This patent covers a method of using "Trusted Entities" to ensure that encryption keys are authentic. Public/private key encryption (which existed prior to this patent) is used to encrypt data. A public key matches a private key: something encrypted by a public key can only be decrypted by the private key and vice versa. This patent makes sure that public keys are authentic by using a Trusted Entity, which holds keys and issues public key certificates, to vouch for keys. The patent claims various methods associated with these public key certificates including a method for issuing these certificates, for updating a certificate, and for authenticating a public key certificate using a chain of valid certificates.

   2.   Disputed Terms

|    | Claim Term | Court's Construction |
|----|------------|----------------------|
| 1. | [Public key] certificate | *A certificate that vouches for the trustworthiness of a public key. The certificate is a specially constructed data structure which is signed by a certification authority and contains a user's public key, the user's identity, and some additional parameters related to the validity of the certificate.* |
| 2. | Policy certification authority | *Certification authority that defines a particular set of certification policies* |
| 3. | Revocation list | *A list identifying revoked certificates* |
| 4. | Certifying and returning the data structure | *Vouching for the identity of the public key owner by signing the certificate and returning it to the owner/requestor* |
| 5. | Common point of trust | *A point that is trusted by both the sender and the receiver* |
| 6. | Point of trust in common with | *Point of trust also trusted by* |

6

|   | Claim Term | Court's Construction |
|---|---|---|
| 7. | Validated / validating / validation / verified / verifying / verification | Interpretation of terms not required |
| 8. | Data items required for a public key certificate | *A public key and the requestor's identity* |

### III. Conclusion

The preceding constructions and summaries shall become final on June 12, 2015 unless either party, prior to that date, makes a submission seeking revision of the constructions or summaries, and giving reasons for any such revisions. All arguments made by the parties in submissions made prior to the *Markman* hearing held March 26, 2015 have been considered and the parties shall not make duplicative arguments in their submissions. If a supplemental submission is made by June 12, 2015, the opposing party shall make a single opposing submission by June 19, 2015. Replies will not be accepted.

SO ORDERED.

Dated: New York, New York
May 19, 2015

ALVIN K. HELLERSTEIN
United States District Judge

7