**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ERIE FAMILY LIFE INSURANCE COMPANY;<br>ERIE INDEMNITY COMPANY;<br>ERIE INSURANCE COMPANY;<br>ERIE INSURANCE EXCHANGE;<br>ERIE INSURANCE PROPERTY & CASUALTY<br>COMPANY; and<br>FLAGSHIP CITY INSURANCE COMPANY,<br><br>　　　　　Defendants. | Civil Action No. 1:14-cv-00220-MRH<br><br>**FILING IN LEAD CASE**<br><br>Time: 9:00 a.m.<br>Date: April 14, 2015<br>Place: Courtroom No. 6A<br><br>The Honorable Mark R. Hornak<br><br>ELECTRONICALLY FILED<br>JURY TRIAL DEMANDED |
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>HIGHMARK INC.;<br>HM INSURANCE GROUP, INC.;<br>HM LIFE INSURANCE COMPANY;<br>HIGHMARK CASUALTY INSURANCE<br>COMPANY; and<br>HM CASUALTY INSURANCE COMPANY,<br><br>　　　　　Defendants. | Civil Action No. 2:14-cv-01131-MRH |

**Old Republic Defendants' Notice of Supplemental Authority
Regarding *Internet Patents Corp. v. Active Network, Inc.*,
No. 2014-1048, *et al*. (Fed. Cir. June 23, 2015)**

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC,<br><br>          Plaintiffs,<br><br>     v.<br><br>OLD REPUBLIC GENERAL<br>INSURANCE GROUP, INC.;<br>OLD REPUBLIC INSURANCE COMPANY;<br>OLD REPUBLIC TITLE<br>INSURANCE GROUP, INC.; and<br>OLD REPUBLIC NATIONAL TITLE<br>INSURANCE COMPANY,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 2:14-cv-01130-MRH |

**Old Republic Defendants' Notice of Supplemental Authority Regarding**
*Internet Patents Corp. v. Active Network, Inc.*,
<u>**No. 2014-1048,** *et al.* **(Fed. Cir. June 23, 2015**</u>)

    The Court has heard oral argument on defendants's pending motions to dismiss.[1] At that hearing, the Court invited the parties to submit a Notice of Supplemental Authority when precedent issued. The Court directed that such Notices identify the issues to which new authority was relevant and briefly explain why the new authority was relevant to such issues.

    The United States Court of Appeals for the Federal Circuit issued such authority yesterday: its unanimous, precedential opinion in *Internet Patents Corp. v. Active Network, Inc.*, No. 2014-1048, *et al.* (Fed. Cir. June 23, 2015). The new authority is attached as Appendix 1. It affirmed a district court's pre-*Alice* decision to void on §101 grounds all 24 claims of U.S. Patent

---

[1] Case No. 2:14-cv-1130 ("14-1130 Case"), Dkt. 31; *see also* Case No. 1:14-cv-220, Dkt. 46-1 (co-defendants's motion).

1

No. 7,707,505.[2]  The new authority is relevant to the pending motion to dismiss all three patents asserted against the Old Republic defendants, as follows.[3]

1.  *Whether a district court can or should decide §101 patent-eligibility motions on the pleadings.* The opposition urged that determining patent-eligibility can't (or at least shouldn't) be decided on the pleadings, and that must (or should) be delayed until later in the case.[4] In *Internet Patents*, the circuit again affirmed a district court's resolution of the §101 patent-eligibility issues at the pleadings stage.[5]

2.  *Whether §101 patent-eligibility is a question of law.* The opposition brief urged that patent-eligibility under §101 wasn't an issue of law.[6] In *Internet Patents*, the affirmed district court opinion specifically noted "[w]hether a claim recites patent-eligible subject matter is a question of law."[7]

---

[2] Appendix 2 hereto is the voided '505 patent at issue in *Internet Patents*. The first 8 of its 24 claims were method claims; its claims 9 through 16, computer-system claims; and its claims 17 through 24, computer-readable medium claims. The patentee applied for it in March 2000, and it issued in April 2010.

[3] *Internet Patents*, Slip Opn. at 1. In particular, it's relevant to Old Republic's motion to dismiss, Dkt. 31 in Case No. 2:14-cv-01130, which the Court provisionally consolidated for pretrial purposes with the earlier-filed, and thus lead, Case No. 2:14-cv-00220-MRH.

[4] *E.g.*, Dkt. 52 at 1. The references to "Dkt. 52 at zot" are to the page numbers of the document itself, not to the page numbers that the ECF system generated.

[5] The underlying district court §101 opinion was *Internet Patents Corp. v. General Auto. Ins. Services, Inc.,* 29 F. Supp. 3d 1264 (N.D. Cal. 2013) (dismissing the case on 12(b)(6) grounds). That was one of several cases, including against Active Networks, that the patentee had brought. After the patentee lost its case against General Automobile Insurance, the district court dismissed the others. http://ir.internetpatentscorporation.net/releasedetail.cfm?releaseid=795317 (patentee's press release after the district court loss). The Federal Circuit consolidated all of the cases in the appeal, and Active Network was the first named party in caption of the Federal Circuit's opinion. *Internet Patents Corp. v. Active Network, Inc.*, *et al.*, Nos. 2014-1048, 2014-1061, 2014-1062, & 2014-1063. (Fed. Cir. Jun. 23, 2015).

[6] Dkt. 52 at 6.

[7] *Internet Patents Corp.*, 29 F. Supp. 3d at 1268, *aff'd sub nom.*, *Internet Patents Corp. v. Active Network, Inc.*, *et al.*, Nos. 2014-1048, 2014-1061, 2014-1062, & 2014-1063. (Fed. Cir. Jun. 23, 2015).

3.      *Whether patent-eligibility can be determined based on a representative claim.* The opposition disputed whether patent-eligibility could be determined based on a representative claim.[8] *Internet Patents* voided all 24 claims of the patent-in-suit based on its analysis of representative claim 1 (the independent method claim) and its similarity to claims 9 (the independent computer system claim) and 17 (the independent computer-readable storage medium claim).[9]

4.      *Whether, in step one of Alice's two-part framework, the patent's claim limitations must be part of the identified abstract idea.* The opposition contended that the patent's specific claim limitations must be part of the abstract idea identified in step one of *Alice*'s two-part framework.[10] In *Internet Patents*, the voided patent's claims included such limitations as "furnishing a plurality of icons on a web page displayed to a user of a web browser, wherein each of said icons is a hyperlink to a dynamically generated on-line application form set, and wherein said web browser comprises Back and Forward navigation functionalities" and "displaying said dynamically generated on-line application form set in response to the activation of said hyperlink, wherein said dynamically generated on-line application form set comprises a state determined by at least one user input."[11] Despite those and other detailed limitations, the Federal Circuit concluded that the claims were directed to the abstract "idea of retaining information in the navigation of online forms."[12]

5.      *Whether a patent avoids patent-ineligibility because it purports to claim specific, concrete, and detailed computer technology.* The opposition likewise defended the patent-

---

[8] *E.g.*, Dkt. 52 at 1.
[9] *Internet Patents*, slip op. at 3-4 & 11.
[10] Dkt. 52 at 14-17 (the '581 patent), at 17-19 (the '434 patent), & 19-21 (the '002 patent).
[11] '505 patent, claim 9, 1st & 2nd limitations, respectively.
[12] *Internet Patents*, slip op. at 10.

3

eligibility of each of IV's three asserted patents by arguing that each of the claims concerned specific, concrete, and detailed computer technology.[13] It argued, for example, that the claims "cannot be cleaved from a computer environment."[14] In *Internet Patents*, the patent likewise stated that it arose in a computer environment. Its Field of Invention stated "[t]he present invention relates generally to computers and, more particularly, to computer-implemented systems for interfacing with application forms over on Internet [*sic*] or intranet."[15] Its Abstract described the invention as "[a] dynamic, intelligent user interface for an on-line, virtual application whereby user input customizes the subsequent display of application data and queries presented to the user/applicant."[16] Its Description of Related Art section explained various supposed problems with automated insurance quoting systems that are accessible directly over the web or an intranet, and asserted that

> [w]hat is needed is an intelligent on-line application form set that automatically configures itself, the questions it asks, and the data it displays in response to user/applicant input. Such an intelligent on-line application must also properly trap and handle user errors. Such trapping should include alert the user [*sic*] in a timely manner and provide an easy way to correct all errors."[17]

Despite that computer-specific environment, a computer-specific problem, and a computer-specific solution, and despite the language of the claims themselves, the panel unanimously concluded that the limitations of all 24 claims recited well-understood, routine, and conventional software or computer network technologies and thus didn't add significantly more to the patent's abstract idea for patent-eligibility purposes.[18] Technologies such as the following:

---

[13] Dkt. 52 at 14-17 (the '581 patent), at 17-19 (the '434 patent), & 19-21 (the '002 patent).
[14] *Id*. at 16.
[15] '505 patent, Col. 1:15-18.
[16] *Id*., Abstract.
[17] *Id*., Col. 2:45-51.
[18] *Internet Patents*, slip op. at 10-12.

4

- "The method of claim 1, wherein said displaying said dynamically generated on-line application form set comprises combining information from a template file and either a database or a conditional merge file or both to form said dynamically generated on-line application form set";[19]

- "furnishing a plurality of icons on a web page displayed to a user of a web browser, wherein each of said icons is a hyperlink to a dynamically generated on-line application form set, and wherein said web browser comprises Back and Forward navigation functionalities";[20]

- "displaying said dynamically generated on-line application form set in response to the activation of said hyperlink, wherein said dynamically generated on-line application form set comprises a state determined by at least one user input";[21]

- "The method of claim 1, wherein said dynamically generated on-line application form set comprises data and queries presented as part of a process for applying for a service";[22] and

- "The computer-readable storage medium of claim 17, wherein said plurality of icons displayed on said web page is determined in part by said user input."[23]

The full set of that voided patent's 24 claims are in Appendix 2 hereto.

6.   *Whether a patent's description of its claimed technologies as being implementable with conventional, common, or generic computer technologies establishes lack of patent-eligibility.* Finally, the opposition likewise defended the patent-eligibility of its claimed technologies with litigation counsel's arguments that its claims were "novel"[24] and represented "foundational advances in computer and mobile technology."[25] But in *Internet Patents*, the circuit treated as dispositive the *patent's statements* that the claimed technologies could be implemented with computer functionalities that were "conventional" or the like.[26] So do the patents asserted against the Old Republic defendants.

---

[19] '505 patent, claim 2.

[20] *Id.*, claim 1, 1st limitation.

[21] *Id.*, claim 1, 2nd limitation.

[22] *Id.*, claim 3.

[23] *Id.*, claim 24.

[24] Dkt. 51 at 15 ('581 patent).

[25] *Id.* at 2.

[26] *Internet Patents*, slip op. at 10.

5

The '581 patent states that Figure 7 "illustrates an embodiment of a computer system that can be used with the present invention," and concedes that "[t]he computer system shown in FIG. 7 may be *any type of computer, including a general purpose computer*."[27] The '581 patent further acknowledges that its Figure 1 "illustrates an embodiment of a client and server capable of implementing the teachings of the present invention"; Figure 1 is a mere block diagram of generic computer components and functionalities.[28] The '581 patent notes that for its computer-readable medium claims, the "computer-readable medium may be any type of magnetic, optical, or electrical storage medium . . . ."[29] The '581 patent's specification closes with the observation that its claimed inventions can be implemented in ways not specifically described in the patent.[30]

For the '434 patent, not only will a general-purpose computer suffice—the patent prefers one: "[a]n *exemplary* computer system for implementing the present invention includes a *conventional computer* . . . ."[31] The '434 patent further states that its Figure 1 "is a block diagram of a personal computer illustrating an exemplary operating environment for an embodiment of the present invention"; as with the '581 patent, the referenced Figure contains mere generic computer components and functionalities.[32] The '434 patent's specification finishes with a lengthy admonition that its claimed inventions can be implemented in a variety of "[a]lternative embodiments."[33]

---

[27] '581 patent, Col. 10:7-14 (emphasis supplied); *see also* 14-1130 Case, Dkt. 31 at 9, 1st full ¶ (discussing the '581 patent's implementation with generic computer technology); Dkt. 56 at 13-14 (same).

[28] '581 patent, Col. 2:39-41 & Fig. 1; *see also id.*, Col. 4:8-32 (explaining Figure 1).

[29] *Id.*, Col. 10:52-54.

[30] *Id.*, Col. 10:56-64.

[31] '434 patent, Col. 5:5-7 (emphasis supplied); *see also* 14-1130 Case, Dkt. 31 at 11, 2nd full ¶ (discussing the '434 patent's preference for generic computer technology); Dkt. 56 at 13 (same).

[32] '434 patent, Col. 3:46-48 & Fig. 1A.

[33] '434 patent, Col. 15:5-36.

The '002 patent was brewed in the same kind of barrel. It states that its systems and methods can be implemented "using any computer."[34] The specification underscores this point with statements that its systems and methods can be implemented using an existing Windows (Microsoft)-based operating system, a Mac (Apple)-based operating system—or even a Sony Playstation.[35] Like the other two patents, the '002 patent closes with the admonition that the ordinary artisan could implement the claimed inventions using computer technologies other than those that the patent's specification specifically describes.[36]

Dated: June 24, 2015

Respectfully submitted,

*s/ Vernon M. Winters*
Vernon M. Winters (*pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street, 20th Floor
San Francisco, CA 94018
Tel.: (415) 772-7441
Email: vwinters@sidley.com

*s/ Arthur H. Stroyd, Jr.*
Arthur H. Stroyd, Jr.
PA ID No. 15910
Justin T. Romano
PA ID No. 307879
DEL SOLE CAVANAUGH STROYD LLC
The Waterfront Building 200 First Avenue,
Suite 300 Pittsburgh, PA 15222
Tel.: (412) 261-2393
Email: astroyd@dscslaw.com
Email: jromano@dscslaw.com

*Counsel for Defendants Old Republic General Insurance Group, et al.*

---

[34] '002 patent, Col. 3:61-63; *see also* 14-1130 Case, Dkt. 31 at 12 (discussing the '002 patent's statements about implementation using conventional computer technology); Dkt. 56 at 10 (same).

[35] '002 patent, Col. 13:5-14 & 13:38-42; *see also id*. at Col. 16:37-39 (asserted invention "is running on a Windows 95 PC **1520** connected to the Internet **1510**") (emphasis in original).

[36] '002 patent, Col. 16:66 – 17:8.