**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and | ) | |
| INTELLECTUAL VENTURES II LLC, | ) | Civil Action No. 1:14-cv-00220-MRH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | U.S. District Judge Mark R. Hornak |
| | ) | |
| ERIE FAMILY LIFE INSURANCE COMPANY; | ) | ELECTRONICALLY FILED |
| ERIE INDEMNITY COMPANY; | ) | |
| ERIE INSURANCE COMPANY; | ) | |
| ERIE INSURANCE EXCHANGE; | ) | |
| ERIE INSURANCE PROPERTY & CASUALTY | ) | |
| COMPANY; and | ) | |
| FLAGSHIP CITY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' COMPLAINT AS TO U.S. PATENT NO. 7,757,298
UNDER 35 U.S.C. § 101**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT ......................................................................................................2

       A.     IV Fails to Rebut Erie's Showing that the '298 Patent Is Invalid
              Under *Alice*. ..........................................................................................2

              1.     *Alice* Step 1: IV's Argument that the '298 Patent Is Not Directed to an
                     Abstract Idea Cannot Be Squared with the Unambiguous Text of
                     the '298 Patent. .........................................................................3

                     i.     IV Improperly Characterizes the '298 Patent as Directed Toward
                            Detecting Malicious Code or Computer Viruses. ...........................4

                     ii.    IV's Attempt to Analogize the Claims of the '298 Patent to
                            Inventions Solving Computer-Specific Problems Fails. .................5

              2.     *Alice* Step 2: The Text of the '298 Patent Conclusively Shows that Its
                     Claims Do Not Add Any Inventive Concept to the Abstract Idea..............9

                     i.     The '298 Patents' Claims Lack an Inventive Concept...................10

                     ii.    The "File Identification Application" Does Not Make the '298
                            Patent Subject Matter Eligible Under § 101. ...............................11

       B.     IV's Procedural Arguments Are Likewise Incorrect—the Court Should Rule on
              Erie's Motion on the Merits at this Time...........................................................13

III.   CONCLUSION...................................................................................................15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)...................................................................11

*Alice Corp. v. CLS Bank International*,
  134 S. Ct. 2347 (2014)..................................................................... *passim*

*Allvoice Developments US, LLC v. Microsoft Corp.*,
  612 F. App'x 1009 (Fed. Cir. 2015) ..........................................................13

*Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012)...................................................................14

*Bilski v. Kappos*,
  561 U.S. 593 (2010)........................................................................................4

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014)...................................................................13

*Collarity, Inc. v. Google Inc.*,
  2015 WL 7597413 (D. Del. Nov. 25, 2015) .................................................9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  2013 WL 3964909 (D.N.J. July 31, 2013)...................................................14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014)...................................................................13

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*,
  558 F. App'x 988 (Fed. Cir. 2014) ..............................................................14

*DataTern, Inc. v. MicroStrategy, Inc.*,
  2015 WL 5190715 (D. Mass. Sept. 4, 2015) ............................................ 7-8

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014).............................................................1, 3, 5

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2015)...............................................................3, 13

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
  2015 WL 7351450 (N.D. Cal. Nov. 20, 2014) .............................................7

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)................................................................13

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
   2015 WL 5165442 (D. Md. Sept. 2, 2015) ...............................................5

*Intellectual Ventures I LLC v. Symantec Corp.*,
   100 F. Supp. 3d 371 (D. Del. 2015)....................................................... 7-8

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)................................................................13

*Joao Bock Transaction Systems, LLC v. Jack Henry & Associates, Inc.*,
   2014 WL 7149400 (D. Del. Dec. 15, 2014)............................................15

*Market Track, LLC v. Efficient Collaborative Retail Marketing, LLC*,
   2015 WL 3637740 (N.D. Ill. June 12, 2015) ..........................................12

*Mikkilineni v. Stoll*,
   410 F. App'x 311 (Fed. Cir. 2010) ...........................................................6

*OIP Technologies, Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015)................................................................13

*Parus Holdings, Inc. v. Sallie Mae Bank*,
   -- F. Supp. 3d --, 2015 WL 5886179 (D. Del. Oct. 8, 2015) ....................3

*Planet Bingo, LLC v. VKGS LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014) .........................................................13

*PNC Bank NA v. Parus Holdings, Inc.*,
   CBM2015-00109, -00149, Paper No. 10 (P.T.A.B. Nov. 9, 2015) ...........3

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014).........................................................13, 15

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*,
   -- F. App'x --, 2015 WL 9461707 (Fed. Cir. Dec. 28, 2015) .................13

*Versata Development Group, Inc. v. SAP America, Inc.*,
   793 F.3d 1306 (Fed. Cir. 2015)................................................................13

## Statutes

Leahy-Smith America Invents Act § 18(d)....................................................3

Leahy-Smith America Invents Act § 18(e)....................................................3

35 U.S.C. § 101................................................................................. *passim*

35 U.S.C. § 102.................................................................................................. 10-11

**Other Authorities**

37 C.F.R. § 42.53(a)..................................................................................................15

2014 Interim Guidance on Patent Subject Matter Eligibility, Request for Comments,
    79 Fed. Reg. 74,618 (Dec. 16, 2014) ........................................................................6

## I.     INTRODUCTION

As explained in Erie's opening brief, the '298 patent, "Method and Apparatus for Identifying and Characterizing Errant Electronic Files," is directed to the abstract idea of identifying and characterizing electronic files.  *See, e.g.*, '298 patent at 2:48-51 ("[A] method and apparatus are provided for identifying and characterizing files electronically stored on a computer storage device.").  The patent focuses on the identification of pornographic, copyrighted, or other unintended ("errant") files from among a larger set of electronic files, using a set of known criteria.  *See, e.g.*, *id.* at 11:35-39; *see also* Dkt. 133, at 2 ("The '298 patent purports to solve the problem of the proliferation of illicit files on the Internet, such as pornographic material or illegally copied software, music, or graphics.").  It expressly states that a human could individually open each such file and determine for her or himself whether it is an errant file, but asserts that using computer software to perform that function is less expensive. *See* '298 patent at 1:57-59, 8:10-12.

In an attempt to shoehorn this case into the holding of *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), IV's opposition asserts that the '298 patent is akin to a patent on the detection of **malicious computer code**—i.e., antivirus technology.  *See* Dkt. 134, at 1-3, 9-10, 12, 14.  The Court should reject IV's argument; nowhere in the '298 patent do the words "malicious" or "virus" appear, nor is there any disclosure—much less any claim—regarding the identification of computer code.  Instead, the face of the '298 patent clearly and unambiguously demonstrates that it is directed to identifying and characterizing undesirable "errant" **files** (e.g., text documents or images).  Unlike computer viruses, which would not exist but for computers and which are undetectable by humans, the errant files described in the '298 patent—i.e., pornographic images and copyrighted documents—have existed and been detectable long before the advent of the computer.

Next, seeking to persuade the Court that the claims contain an "inventive concept" that would render claims directed to an abstract concept patent eligible, IV asserts that "[t]he Patent provides for novel software—a technological improvement—that executes the claimed operations and creates a new machine as a result." *Id.* at 12. But this argument, too, is incompatible with the text of the '298 patent. Computers have long been used to select files based on a variety of criteria, including size, name, and type, as well as to perform mathematical operations, and the '298 patent does not purport to describe a new technology for performing such basic computing functions. Instead, the claim limitations recite only conventional and well-known hardware and software functionality.

Finally, IV attempts to persuade the Court to defer ruling until after claim construction and expert testimony. But because the text of the '298 patent is clear in all relevant respects, the patent's basic character can be determined without the need for either claim construction or expert testimony. *See* Dkt. 117, at 46 (noting that claim construction "is generally desirable only when needed to understand the basic character of the claimed subject matter" and that, "[i]f the Court can divine the requisite understanding without claim construction, . . . claim construction is not required"). Thus, the Court should rule on Erie's motion and invalidate the '298 patent because it claims patent ineligible subject matter.

## II.   ARGUMENT

### A.   IV Fails to Rebut Erie's Showing that the '298 Patent Is Invalid Under *Alice*.

As the Court is aware, the Supreme Court's *Alice* analysis requires the Court to determine (1) whether the claims of the '298 patent are directed toward an abstract idea and, if so, (2) whether they recite an "inventive concept" in addition to the abstract idea that renders the claims patent eligible. *See Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014); Dkt.

117, at 27-29.  Erie's opening brief demonstrated that the claims of the '298 patent describe ineligible subject matter under that analysis.

In its opposition, IV seeks to have the Court focus instead on the pre-*Alice* "machine-or-transformation" test used during prosecution of the '298 patent to argue that the patent claims eligible subject matter.  *See* Dkt. 134, at 6-9.  But the Federal Circuit has held that "the machine-or-transformation test, by itself, is not sufficient to render a claim patent-eligible, as not all transformations or machine implementations infuse an otherwise ineligible claim with an 'inventive concept.'"  *DDR Holdings*, 773 F.3d at 1256.  IV's reliance on that test thus cannot save this patent because IV fails to persuasively rebut Erie's arguments that the '298 patent is invalid under the governing *Alice* analysis.

> ### 1. *Alice* Step 1: IV's Argument that the '298 Patent Is Not Directed to an Abstract Idea Cannot Be Squared with the Unambiguous Text of the '298 Patent.

At *Alice* Step 1, IV primarily argues that the '298 patent is not directed to an abstract idea because it purportedly solves a problem rooted in computer technology.[1]  *See* Dkt. 134, at 1, 5, 9.

---

[1]   IV argues that the Patent Office's determination in a third-party post-grant proceeding that the '298 patent is not a "covered business method" ("CBM") patent proves that the patent is not directed to a longstanding business method or economic practice, and that the patent should therefore survive § 101 scrutiny.  *See* Dkt. 134, at 9.  This argument is incorrect.  The standard as to whether a patent qualifies as a CBM is entirely separate and distinct from the standard for patentability under § 101.  *See* Leahy-Smith America Invents Act § 18(d)(1) ("'[C]overed business method patent' means a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service[.]"); *id.* § 18(e) ("Nothing in this section shall be construed as amending or interpreting categories of patent-eligible subject matter set forth under Section 101 of title 35, United States Code.").  Thus, non-CBM patents have frequently been found invalid under § 101.  *See, e.g.*, *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2015) (invalidating patent directed toward profiles for digital images); *Parus Holdings, Inc. v. Sallie Mae Bank*, -- F. Supp. 3d --, 2015 WL 5886179 (D. Del. Oct. 8, 2015) (invalidating patent under § 101 one month before the Patent Office determined that the patent did not qualify for CBM review in *PNC Bank NA v. Parus Holdings, Inc.*, CBM2015-00109, -00149, Paper No. 10 (P.T.A.B. Nov. 9, 2015)).  Indeed, the Supreme Court has consistently rejected a rule that an idea is abstract only if it falls within a particular category of

According to IV, the problem solved by the '298 patent is analogous to the problem of searching for malicious computer code, such as computer viruses.  *See id.* at 1, 3, 9; *id.* at 10 ("[T]he '298 Patent claims are directed to using a file identification application to determine[] if a file is unauthorized (*e.g.*, malicious) based on the digital attributes of that file (*i.e.*, its 'code')[.]").

The face of the '298 patent demonstrates conclusively, however, that it is not directed toward searching for malicious code, nor is it directed to a computer-centric problem.  To the contrary, as explained in Erie's opening brief, the '298 patent is directed toward identifying and characterizing electronic files, *see* Dkt. 133, at 8-11, and addresses the problem of sharing of illicit content such as pornography or pirated music, *see id.* at 2, 10-11.  **That** problem existed long before the advent of computers, as did the type of solution—evaluating each file based on pre-set criteria—described in the '298 patent.

### i.     IV Improperly Characterizes the '298 Patent as Directed Toward Detecting Malicious Code or Computer Viruses.

The '298 patent is directed to "identifying and characterizing **errant** electronic **files** stored on computer storage devices."  '298 patent at 1:30-31 (emphasis added).  The patent makes clear that "errant" files are those that have been uploaded to a server in contravention of the web owner's policies and include pornographic material or illegally copied software, music, or graphics.  *Id.* at 1:41-46 (noting the "widespread abuse of Web server space in which users upload files that are offensive, illegal, unauthorized, or otherwise undesirable"), 1:47-49 ("Many such files may contain pornography in violation of the terms of use of the Web hosting service.").  When describing these files, the patent does not suggest that they pose any harm to the computer.  Instead, the '298 patent notes the "great **legal risks** to . . . **corporation[s]**" whose

---

abstract ideas—e.g., an economic practice.  *See Alice*, 134 S. Ct. at 2356 (rejecting argument that abstract ideas are limited to "preexisting, fundamental truths"); *Bilski v. Kappos*, 561 U.S. 593, 609 (2010) (declining to adopt "categorical rules").

servers unknowingly store such content, *id.* at 1:53-56 (emphasis added), and each and every description of the problem purportedly solved by the '298 patent involves protecting human users or business interests from illegal or unwanted content.[2]

Yet IV attempts to avoid the § 101 issue by characterizing the '298 patent as solving a problem akin to detecting malicious computer code. According to IV, that problem is unique to computers and therefore its solution is patent eligible under *DDR Holdings*. *See* Dkt. 134, at 5-6, 9, 14. But *DDR Holdings* itself notes that not all claims that are directed to computers are eligible for patent protection. *See DDR Holdings*, 773 F.3d at 1258; *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 2015 WL 5165442, at *11 (D. Md. Sept. 2, 2015) ("The *DDR Holdings* Court cautioned that 'not all claims purporting to address Internet-centric challenges are eligible for patents,' as they still may address abstract ideas and only offer 'routine additional steps.'"). And, although the '298 patent generally relates to detecting electronic files stored on a computer or server, it does not solve the problem of identifying malicious code.

### ii.       IV's Attempt to Analogize the Claims of the '298 Patent to Inventions Solving Computer-Specific Problems Fails.

Because the '298 patent is directed toward searching for illegal or errant files, it teaches the age-old activity of policing unwanted and illicit materials using pre-set criteria for detecting them. The fact that such content now appears on the Internet does not mean that the underlying problem or solution is rooted in the Internet or computer technology. IV nevertheless insists that

---

[2]       Indeed, in its Preliminary Response filed in the CBM proceeding challenging the validity of the patent, IV stated that "[t]he '298 Patent describes and claims a system and method of identifying and characterizing unauthorized electronic files" such as "pornography and pirated music, video, software, or graphics." *PNC Fin. Servs., Grp., Inc. v. Intellectual Ventures I LLC*, CBM2014-00032, Paper No. 11, at 5-6 (P.T.A.B. Feb. 26, 2014), *available at* https://ptabtrials. uspto.gov/.  Nowhere in that submission did IV suggest that the patent is directed to malicious code or computer viruses.

the patent solves "a problem unique to computer systems" and attempts to analogize the '298 patent claims to those addressed by the Patent Office and district courts.  Dkt. 134, at 1, 9.  Each of these analogies fails due to IV's mischaracterization of the '298 patent.

*First*, IV argues that the claims of the '298 patent are similar to the "'isolating and removing malicious code from electronic messages' claims" described in the Patent Office's post-*Alice* Interim Guidelines, which state that such claims are not invalid under § 101.[3]  *Id.* at 1, 10.  But comparison of the hypothetical claim on which IV relies to the claims of the '298 patent underscores the reason that the '298 patent claims ineligible subject matter.  The hypothetical patent claim recited in the Guidelines recites "[a] computer-implemented method for ***protecting a computer*** from an electronic communication ***containing malicious code.***"  Dkt. 134-1, at 2 (emphasis added).  But the '298 patent does not reference malicious code.  Unlike the '298 patent, therefore, the example in the Guidelines is directed to improving computer technology by isolating and removing computer code that could never be detected by a human being and that could harm the computer.  That, as the Guidelines note, "is a concept inextricably tied to computer technology and distinct from the types of concepts found by the courts to be abstract." *Id.* at 3.

---

[3]     The Interim Eligibility Guidelines "do[] not constitute substantive rulemaking and do[] not have the force and effect of law."  2014 Interim Guidance on Patent Subject Matter Eligibility, Request for Comments, 79 Fed. Reg. 74,618, 74,619 (Dec. 16, 2014); *see also Mikkilineni v. Stoll*, 410 F. App'x 311, 313 (Fed. Cir. 2010) (noting that Patent Office guidelines "do not have the force and effect of law" and holding that previous § 101 guidance was interpretive rather than substantive and thus exempt from the notice-and-comment requirements). The Court must apply the binding decisions from the Supreme Court and the Federal Circuit, and cannot rely on the Guidelines as authority.

Notably, Chief Judge Stark already rejected IV's identical Patent Office Guideline-based argument in *Intellectual Ventures I LLC v. Symantec Corp.*, 100 F. Supp. 3d 371 (D. Del. 2015).[4] In that case, Chief Judge Stark noted that "[t]he PTO's example is necessarily rooted in computer technology because malicious code or 'viruses' have no significance outside the realm of computer technology."  *Id.* at 385.  By contrast, the patent invalidated in *Symantec*—similar to the '298 patent—"is directed to abstract steps that could generally be performed outside of a computing context."  *Id.*

**Second**, IV employs the same flawed reasoning to argue that the '298 patent is similar to patents upheld in numerous district court cases.  For example, IV relies on *Finjan, Inc. v. Blue Coat Systems, Inc.*, 2015 WL 7351450 (N.D. Cal. Nov. 20, 2014).  *See* Dkt. 134, at 10.  But that case addressed a patent claim directed to "identifying suspicious or **malicious code**" rather than simply unwanted files.  *Finjan*, 2015 WL 7351450, at *10 (emphasis added).  IV's reliance on *DataTern, Inc. v. MicroStrategy, Inc.*, 2015 WL 5190715 (D. Mass. Sept. 4, 2015), is similarly misplaced.  In *DataTern*, the court determined that the patent at issue was "directed at solving a problem that specifically arises in the realm of computing"—i.e., "interfacing an object oriented software application with a relational database."  *Id.* at *1, *8.  For that reason, the court upheld

---

[4]     IV's argument that this Court should discount the persuasive value of *Symantec* merely because that case is on appeal, *see* Dkt. 134, at 11, is incorrect.  Given the developing case law in this field, many § 101 decisions have been appealed to the Federal Circuit.  It would be inefficient and impractical for this Court to delay its decision here for the benefit of the Federal Circuit's ruling in each of those cases.

the claims of the patent.  Here, by contrast, the '298 patent solves a pre-Internet problem that has intensified on the Internet—detecting and identifying illegal or untoward content.[5]

*Third*, and relatedly, IV cursorily argues that the *Symantec* case "does not apply to [the '298 patent] claims."  Dkt. 134, at 11.  But *Symantec* is directly applicable—that case draws the *same* distinction between malicious code and unauthorized files at issue here.  In *Symantec*, Chief Judge Stark assessed the patentability of three separate patents, two of which are relevant here.  The first, the '050 patent to which Erie analogized the '298 patent in its opening brief, *see* Dkt. 133, at 9-10, is directed to the concept of "receiving identifying information, comparing it to other information, and outputting an indication based on the identifying information," *Symantec*, 100 F. Supp. 3d at 385.  Similar to the '298 patent, the '050 patent makes no mention of viruses or malicious code, but rather references the identification of information generally.  Chief Judge Stark invalidated the '050 patent, as described in Erie's opening brief.  *See* Dkt. 133, at 9-10.

By contrast, Chief Judge Stark **upheld** the claims of a second patent, the '610 patent, directed to "[a] virus screening method."  *Symantec*, 100 F. Supp. 3d at 396-403.  The court noted that, in contrast to the invention claimed in the '050 patent, "[t]he concept of detecting a computer virus in installed data (and doing so in a telephone network)," as claimed in the '610 patent, "does not make sense outside of a computer context."  *Id.* at 402-03.  That same distinction holds true here—while claims directed to detecting malicious code could be patentable, the actual claims recited in the '298 patent are not.  Indeed, the '298 patent's solution

---

[5]     Due to its same flawed mischaracterization of the '298 patent, IV's page-long string citation to cases "declin[ing] to hold ineligible computer-rooted software-drawn patent claims," Dkt. 134, at 14-15, also fails to support a finding of patent eligibility.  While the cases to which IV cites are drawn to computer-rooted patents, the '298 patent is directed to the long-known human activity of identifying and characterizing documents and other files.

could be performed outside of the computing context—a fact that the '298 patent itself acknowledges.  *See* '298 patent at 1:61-64 ("A manual review of the content of the files stored on the storage resource is usually not economically feasible, and is also not entirely effective at identifying undesirable files."); *see also* Dkt. 117, at 68 ("There are manual processes that could achieve the same result—the fact that they would be slower and less accurate does not change the analysis.").

*Finally*, IV argues that, because the Patent Office issued a notice of allowance after *Alice* for a related patent application, the '298 patent must be valid.  *See* Dkt. 134, at 8-9.  But this argument should be given no weight.  IV did not ask the patent examiner to consider the impact of *Alice* on the pending patent claims during prosecution of that patent application, and there is no indication that the examiner ever did so before issuing the patent.  Moreover, even if there were evidence that the examiner considered *Alice* (which there is not), pre-*Alice* patents are not "inoculated" from findings of invalidity merely because related applications issue into patents after *Alice*.  *See Collarity Inc. v. Google Inc.*, 2015 WL 7597413, at *11 (D. Del. Nov. 25, 2015) (finding patent invalid under § 101 where a continuation patent was subsequently issued *under the Alice guidelines*).

The concept of detecting errant electronic files, which is the concept *actually* claimed in the '298 patent, is distinguishable from the concept of detecting computer malware, which is not claimed.  The former is abstract, and the '298 patent therefore fails step 1 of the *Alice* analysis.

> ### 2.    *Alice* Step 2: The Text of the '298 Patent Conclusively Shows that Its Claims Do Not Add Any Inventive Concept to the Abstract Idea.

The '298 patent claims also fail at *Alice* step 2.  The claim limitations recite only conventional and well-known hardware and software and do not add any inventive concept to the claimed abstract idea.

i.    **The '298 Patents' Claims Lack an Inventive Concept.**

Without identifying any support, IV argues that the claim limitations amount to "a technological improvement" "that executes the claimed operations and creates a new machine as a result." Dkt. 134, at 12. The text of the '298 patent itself, however, demonstrates that the remaining claim limitations refer to routine and well-understood uses of computer hardware and software, and therefore do not transform the claims into patent eligible subject matter. Computers have long been used to select files based on a variety of criteria, including size, name, and type. They have also long been used to perform mathematical operations and make comparisons between two files. The patent acknowledges that the computer uses generic hardware and software to accomplish these basic tasks. '298 patent at 3:44-48 ("The user computer 120 may be any type of computing device that allows a user to interactively browse websites[.]"), 8:41-43 (referring to a "simple file deletion program" that may be used in conjunction with invention), 9:10-11 ("There are numerous possible algorithms that may be utilized to generate a checksum[.]"). As this Court has acknowledged, "[p]atent claims cannot simply address a problem on a computer, ***but must somehow change or improve the computer itself***." Dkt. 117, at 59 (emphasis added). The '298 patent does not purport to change or improve the computer, and thus fails *Alice* step 2.

IV's arguments to the contrary are unavailing. IV argues, for example, that during prosecution of the '298 patent, the applicant "added a number of computer-specific limitations to the claims, including the three specific and narrow computer-implemented 'selection' limitations," and that these limitations transform the claim into a patentable invention sufficient to overcome a pending § 101 rejection. *See* Dkt. 134, at 7-8. But IV mischaracterizes the applicant's amendments and the significance of these particular limitations to the § 101 analysis. The three selection limitations were imported from then-existing dependent claims to overcome a

10

rejection *under 35 U.S.C. § 102* (i.e., to overcome invalidating prior art), *not* to overcome the pending § 101 rejection.  *See* Dkt. 132-2, at 14.  The applicant made no mention of these limitations when responding to the examiner's § 101 rejection.  Instead, the applicant stated only that the claim was "amended specifically to state that the elements of the claimed method are[] 'under control of one or more configured computer systems,'" and that, as a result of *that* amendment, "the method recited in [the claim] is tied to a particular machine."  *Id.* at 13.  IV's argument that the added selection limitations have patentable significance is therefore unsupported.

> ii.      The "File Identification Application" Does Not Make the '298
>          Patent Subject Matter Eligible Under § 101.

IV also argues that the patent claims contain an inventive concept separate from the abstract idea because the recited "file identification application" qualifies as "novel software." Dkt. 134, at 11-12.  Yet IV provides no explanation as to *why* this software is novel other than to cursorily argue that the software's complexity and inventiveness is evidenced by source code submitted with the patent application during prosecution.  IV is wrong for three reasons.

*First*, IV's contention that the submission of source code embodying the patent claims is relevant to the § 101 analysis has already been rejected in substance by the Federal Circuit.  In *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013), the court rejected the patentee's argument that the specification's "detailed software implementation guidelines" rendered the patent valid under § 101.  *Id*. at 1345.  The Federal Circuit held that "the complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method."  *Id*.  The court's ruling makes sense—a patentee cannot immunize his or her software patent from a § 101 challenge merely by appending source code to the application.

Under such a rule, the patentee in *Alice* could have overcome the § 101 challenge by attaching source code that performed the abstract concept of intermediated settlement.  There is no indication in any Supreme Court or Federal Circuit decision that doing so would have changed the outcome of that or any other case.

***Second***, the '298 patent itself states that the source code is merely one "preferred embodiment of a file identification application" described in the patent.  *See* '298 patent at 4:27-29.  But the patent describes the claimed file identification application broadly to include ***any*** program that "analyzes the data files stored on the database . . . to identify errant files in accordance with the present invention," and that "[t]he file identification application tests various attributes of the files stored on the database to determine whether they satisfy a particular profile that corresponds to an errant file."  *See id.* at 4:19-27.  This broad description evidences that the file identification application preempts the use of ***any*** software designed to select and characterize files based on their attributes.  *See* Dkt. 117, at 29 ("Preemption concerns are a central factor, as the second step is geared toward weeding out claims that would monopolize, or preempt, use of the abstract idea itself through artful drafting."); *Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, 2015 WL 3637740, at *9 (N.D. Ill. June 12, 2015) (holding that patent claims directed to a method of creating an output file from images "would preempt the use of any database software to output images in virtually any format. Such meaningless limitations do not bring the [patent] claims within the ambit of patentable subject matter under § 101.").

***Third***, the file identification application is recited only in independent claim 10 and its dependent claims 11-15.  Thus, to the extent that the source code allegedly embodying the file

identification application influences the § 101 analysis at all (which it does not), it would only be relevant to claims 10-15.

Thus, IV's argument that the submission of source code or the inclusion of a "file identification application" saves the '298 patent at *Alice* Step 2 fails.

### B.   IV's Procedural Arguments Are Likewise Incorrect—the Court Should Rule on Erie's Motion on the Merits at this Time.

Seeking to convince the Court to postpone its decision, IV makes several boilerplate procedural arguments as to why it would be premature to rule on Erie's motion, many of which this Court has already rejected. *See* Dkt. 117, at 44-48. Specifically, IV argues that (1) Erie has not met its high burden of proof, and (2) the Court should defer its ruling until after claim construction and expert discovery. *See* Dkt. 134, at 4-5. Each of IV's arguments fails.

*First*, the burden of proof that IV alleges governs this issue is far from dispositive, as evidenced by post-*Alice* case law. To date, in ***every case but one*** in which the Federal Circuit has addressed § 101 on the merits since *Alice*, the court has invalidated claims of the software-related patents at issue.[6] For the reasons stated in its opening brief and this reply, Erie has met its burden.

*Second*, IV's contention that the Court must engage in claim construction prior to ruling on the subject matter eligibility of IV's patent claims, *see id.* at 2, 17-18, is incorrect. The

---

[6]      *See Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, -- F. App'x --, 2015 WL 9461707 (Fed. Cir. Dec. 28, 2015) (per curiam); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306 (Fed. Cir. 2015); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015); *Allvoice Devs. US, LLC v. Microsoft Corp.*, 612 F. App'x 1009 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005 (Fed. Cir. 2014); *Digitech*, 758 F.3d 1344.

Federal Circuit has held that "[t]here is no requirement that [a] district court engage in claim construction before deciding § 101 eligibility." *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014); *see also Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) (similar).  Moreover, the "basic character" of the '298 patent is "clearly evident," such that claim construction is not required in this particular case. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 2013 WL 3964909, at *5 (D.N.J. July 31, 2013), *aff'd*, 776 F.3d 1343 (Fed. Cir. 2014).

IV's argument that the '298 patent is a "technically complex patent," and that claim construction is required for that reason, Dkt. 134, at 16-18, is not supported by the text of the '298 patent or its claims.  IV identifies several terms—such as "selecting," "generating," "comparing," "characterizing," "file identification application," and "identification value," *see id.* at 17—but does not propose any construction for those claim terms, much less a construction that would transform the claims into patent eligible subject matter.  The meaning of these terms is plainly evident from the face of the '298 patent.  IV's position in the prior CBM proceeding involving the '298 patent was that claim construction was not necessary to decide the § 101 issue.  *See PNC Fin. Servs., Grp., Inc. v. Intellectual Ventures I LLC*, CBM2014-00032, Paper No. 11, at 57 (P.T.A.B. Feb. 26, 2014), *available at* https://ptabtrials.uspto.gov/ ("Patent Owner does not believe that the determination of the threshold issues that it has raised in this Preliminary Response depend upon claim construction.").  Even if this Court were to construe these terms in a manner most favorable to IV, those constructions would have no bearing on a § 101 analysis, and thus, any determination by this Court should not be delayed for this reason.

IV also argues that expert testimony is necessary to determine the contours of the patent before the Court can rule on Erie's motion on the merits.  *See id.* at 16-18.  But that argument,

too, lacks any support.  As demonstrated in Erie's opening brief and in this reply, the text of the '298 patent is clear in all relevant respects on its face—there is no content that the Court cannot comprehend without expert testimony.  Critically in this regard, IV fails to point to any aspect of the patent that it claims cannot be fairly understood without such expert assistance.  Further, as with claim construction, expert testimony is not required before ruling on § 101.  "Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a threshold inquiry to be determined as a matter of law."  *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 2014 WL 7149400, at *2 (D. Del. Dec. 15, 2014).

IV's contention that a third party's submission of an expert declaration in a CBM petition challenging the '298 patent proves that expert testimony is required here, *see* Dkt. 134, at 16-17, is a red herring.  Expert testimony by another party in a post-grant Patent Office proceeding is irrelevant to the present § 101 analysis.  Expert testimony is used as a matter of course in a CBM trial—regardless of whether any expert opinion is needed to understand the patent.  That testimony must be proffered through a declaration.  *See* 37 C.F.R. § 42.53(a) ("Uncompelled direct testimony must be submitted in the form of an affidavit.").  Thus, the submission of a standard declaration by a third party in a Patent Office proceeding has no bearing on the issues before this Court.

## III.   CONCLUSION

The '298 patent is invalid under § 101 because it claims patent-ineligible subject matter. That defect is evident from the plain language of the claims and specification, and the determination under § 101 should be made at this juncture.  Indeed, "resolving subject matter eligibility at the outset provides a bulwark against vexatious infringement suits," like this one. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring). Erie therefore respectfully requests that the Court grant its motion to dismiss.

Dated: December 30, 2015                Respectfully submitted,

          By:  */s/ Gregory H. Lantier*
             John G. Ebken (PA I.D. 91031)
             Alexander W. Saksen (PA I.D. 86049)
             GORDON & REES LLP
             707 Grant Street, Suite 3800
             Pittsburgh, PA 15219
             Tel.: (412) 577-7400
             Fax: (412) 347-5461
             Email: jebken@gordonrees.com
             Email: asaksen@gordonrees.com

Gregory H. Lantier
(*pro hac vice*)
DC I.D. 492043
Email: gregory.lantier@wilmerhale.com
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania, Ave NW
Washington DC, 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363

David C. Marcus
(*pro hac vice*)
CA I.D. 158704
Email: david.marcus@wilmerhale.com
WILMER CUTLER PICKERING HALE AND
DORR LLP
350 South Grand Ave, Suite 2100
Los Angeles, CA 90071
Tel.: (213) 443-5300
Fax: (213) 443-5400

Monica Grewal
(*pro hac vice*)
MA I.D. 659449
Email: monica.grewal@wilmerhale.com
WILMER CUTLER PICKERING HALE AND
DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000

*Counsel for Defendants Erie et al.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 30, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.


Dated:  December 30, 2015                    <u>By:  /s/ Gregory H. Lantier</u>
                                                                    Gregory H. Lantier